UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
Milwaukee Division

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
2015 DEC 18  A 10 37
JON W. SANFILIPPO
CLERK

WILLIAM M. SCHMALFELDT, SR
3209 S. Lake Drive, Apt. 108
Saint Francis, WI 53235

                    *Pro Se Plaintiff*        Case No.    15-C-1516

v.

PATRICK G. GRADY
1103 N. Chesapeake Ct.
Palatine, IL 60074

        and

ERIC P. JOHNSON
240 Boulton Lane
Paris, TN 38242

        and

SARAH "ROSE" PALMER
501 Redd St.
Reidsville, NC 27320

        and

DIANNA M. DEELEY
235 Montgomery St., Ste. 711
San Francisco, CA 94104

        and

THE WILLIAM G. IRWIN CHARITABLE FOUNDATION
235 Montgomery St., Ste. 711
San Francisco, CA 94191

        and

NANCY GILLY
34 North Rd.
Groton, CT 06340

        and

**JOHN DOES and JANE ROES**
**And other anonymous bloggers who may**
**be identified in discovery**

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2015 DEC 18 A 10: 37

1J5—LU SAMELIP20
CLERK

15-C-1516

*Defendants*

---

## ORIGINAL COMPLAINT FOR DAMAGES, STATE LAW TORTS, UNLAWFUL USE OF COMPUTERIZED COMMUNICATIONS EQUIPMENT, HARASSMENT, INVASION OF PRIVACY/RIGHT TO PUBLICITY, STALKING, DEFAMATION PER SE, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

-------------------------------------------------------------------------------------------------

Plaintiff William M. Schmalfeldt brings this complaint against the Defendants, Patrick G. Grady of Palatine, IL; Eric P. Johnson of Paris, TN; Sarah "Rose" Palmer or Reidsville, NC, and John Doe and Jane Roe anonymous bloggers who may be identified in discovery. In support of this complaint, Plaintiff alleges as follows:

*Introduction*

1.     On April 23, 2014, Defendant Grady launched the Thinking Man's Zombie blog. (http://thinkingmanszombie.com) Rather than use his own name, he employed the pseudonym "Paul Krendler."

2.     Defendant Grady was already blogging as "Paul Krendler" on April 18, 2014 when he wrote details of a specific event that were known only to Plaintiff and Defendant Grady. There are several other examples of "cross-pollination" between Grady and "Krendler."

3      The entire scope of Defendant Grady's blog was to ridicule and defame Plaintiff, cause as much emotional damage as possible, and to do it under cover of anonymity to avoid having to pay the price for his defamation per se. In fact, the very first post on Defendant Grady's blog was a long and rambling diatribe devoted to publicly defaming Plaintiff, Plaintiff's wife, and Plaintiff's family. Using Plaintiff's actual name, he portrayed the Plaintiff as having enjoyed oral sex with his dead twin brother, and depicted Plaintiff's wife as an alcoholic

prostitute. Apparently defendant Grady was so happy with this post, he reposted it in its entirety on November 24, 2015. **(EXHIBIT 1)**

4.      In early 2015, when Plaintiff made his wife's terminal illness public on his blog, Defendant Grady turned his attentions to mocking Plaintiff's wife's suffering and accusing Plaintiff of neglecting her.

5.      Defendant Grady smeared the memory of Plaintiff's late wife by portraying her on blogs as a truck stop prostitute and alcoholic. He posted photoshopped pictures of Plaintiff's wife to make her look like a decomposing corpse. These inflammatory posts were placed online where they could be seen by anyone searching for her by name.

6.      Plaintiff sent a photo of his wife in the last two weeks of her life to a third party with strict instructions that the photograph was registered with the US Copyright Office and was not for publication. Plaintiff wished to demonstrate that the person being mocked was a flesh and blood, suffering human being, frail and beautiful and vulnerable. On information and belief, the third party gave a copy of the photo to Defendant Grady who plastered it all over the Internet.

7.      On April 29, 2015, Plaintiff filed suit in the US District Court for the District of Maryland, Northern Division, against Defendants Grady and Johnson as well as several others. **(docket://gov.uscourts.mdd.1-15-cv-01241)** After Plaintiff decided to move to Wisconsin, he understood the impracticality of trying a case in Maryland from Wisconsin and moved the court to dismiss his suit with prejudice. The motion was granted on August 20, 2015. Plaintiff moved to Saint Francis, Wisconsin on August 22, 2015.

8.      Ever since his move to Wisconsin from Maryland, Defendants have engaged in and carried out a conspiracy to attempt to get Plaintiff evicted from his new apartment and they

have ramped up the defamation, infliction of emotional distress, cyber harassment, harassment and stalking, apparently unwilling to allow Plaintiff to move on with his life.

*Jurisdiction and Venue*

9.      This court has subject matter jurisdiction as a diversity question under 28 U.S.C. § 1332 as Plaintiff lives in Wisconsin, Defendant Grady lives in Illinois, Defendant Palmer lives in North Carolina, Defendant Johnson lives in Tennessee, Defendant Deeley lives in California, and Defendant Gilly in Connecticut.. Also, the amount in controversy is more than $75.000.01.

10.      This Court has supplemental jurisdiction over the causes of action based on state law pursuant to 28 USC 1367(a), as the state law claims arise out of the same nucleus of operative facts.

11.      Venue is appropriate under 28 U.S.C. § 1391 as the actions of these multiple defendants in multiple states and the harm caused by those actions was experienced by the Plaintiff in Wisconsin.

*The Parties*

12.      Plaintiff William M. Schmalfeldt, Sr., is a 60-year old widower, totally disabled and retired Federal employee, hobbled to a degree by his 16-years with Parkinson's disease, living alone in Saint Francis, Wisconsin.

13.      Defendant Patrick G. Grady lives in Palatine, IL. On information and belief, he is employed at an Office Max near his home

14.      Defendant Eric P. Johnson lives in Paris, Tennessee. He has given several accounts of what he does for a living.

15.      Defendant Sarah Palmer lives in Reidsville, NC.

16. Defendant Dianna M. Deeley is the Grants Assistant, Office Manager, Executive Assistant and Assistant to the Executive Director for Defendant William G. Irwin Charitable Foundation.

17. The William G. Irwin Charitable Foundation is a charitable foundation in San Francisco, CA, which states as its mission, "Giving primarily for the physical improvement of humanity."

18. Defendant Nancy Gilly is a failed political candidate and, by information and knowledge, an unemployed librarian.

*Statement of Facts*

19. There are three blogs on the Internet that exist entirely for the purpose of defaming the plaintiff, intentionally inflicting extreme emotional distress causing a worsening of his Parkinson's disease symptoms, violating the plaintiff's right to privacy and right to publicity by using his name and likeness without his permission. The activities conducted on these blogs also consist of cyberstalking, harassment, and unlawful use of electronic equipment.

**THE THINKING MAN'S ZOMBIE**

20. Hosted on the free WordPress.com blog platform, http://thinkingmanszombie.com (TMZ) was created in April 2014. Since then, the blog has consisted of nearly daily defamation of plaintiff.

21. The fact that Defendant Grady is the pseudonymous blogger "Paul Krendler," proprietor of the Thinking Man's Zombie Blog (http://thinkingmanszombie.com) is demonstrated by a post made before Grady created the TMZ blog.

22. The fact that Defendant Grady is the pseudonymous blogger "Paul Krendler" was also very strongly suggested in an e-mail exchange with Defendant Palmer in June 2015, when she believed she was chatting with a third party **(EXHIBIT 2)**

23. On April 13, 2014, writing as "Paul Krendler," Defendant Grady wrote about an incident that occurred between Grady and the Plaintiff, sharing details that only Grady and the Plaintiff would know about. **(EXHIBIT 3)**

24. On July 22, 2014, there was a blog post on the TMZ blog titled "Chapter 1. (http://thinkingmanszombie.com/2014/07/22/chapter-i/) It matches up nearly word for word with a blog post on a self-improvement blog called "48 Days", posted on November 19, 2011 by Defendant Grady. (http://48daysnet.ning.com/group/writeforprofit/forum/topics/chapter-i-and-the-question-is-would-you-read-more) **(EXHIBIT 4)**

25. On July 30, 2014, there was a post on the TMZ blog titled "Chapter II". (http://thinkingmanszombie.com/2014/07/30/chapter-ii/). It matches a blog post on the "48 Days" blog titled "Chapter 2, Would You or Your Teen Keep Reading?" by Defendant Grady, dated December 13, 2011. (http://www.48days.net/group/writeforprofit/forum/topics/chapter-2-would-you-or-your-teen-still-keep-reading) **(EXHIBIT 5)**

26. On August 27, 2014, there was a post on the TMZ blog titled "Timeless Truth." It matches nearly word for word a blog post published by Grady on November 12, 2010. (https://magnapolar.wordpress.com/2010/11/12/timeless-truth/) **(EXHIBIT 6)**

27. On On June 3, two weeks before her death, Plaintiff's wife gave Plaintiff her permission to take her picture in her hospital bed to be used to demonstrate to the people who were mocking her that they were mocking the suffering of a flesh and blood human being. After

her death, Plaintiff sent a copy of the photo to a third party, as well as to several law enforcement officials. area. In the email, Plaintiff wrote:

**As your husband was one of the people suggesting that my wife's death was a scam I was trying to pull on people, I felt you deserve to see this picture. If it gets published anywhere, I will know who did it as it hasn't been published anywhere else.**
**(EXHIBIT 7)**

28.    The third party submitted a copy of the photo to Defendant Grady, despite the fact that plaintiff asked that the photo remain unpublished. Defendant Grady who posted the photo all over the internet with accompanying text both obscene and profane. **(EXHIBIT 8)**

## BILLY SEZ – ADVENTURES IN THE BILLOGICALNESS OF BEING BILL SCHMALFELDT

29.    Also hosted on the free WordPress.com blog platform, http://billysez.wordpress.com appeared online in April 2015. It was created by Defendant Palmer.

30.    Defendant Palmer excuses her actions by saying that all she is doing is reprinting direct quotes of things Plaintiff has printed on Twitter or his blog. This is true in a technical sense, but Defendant Palmer uses portions of quotes, out of context, and applies a unique twist to what Plaintiff wrote, turning what the Plaintiff intended into something defamatory, proving Plaintiff's evil nature in the mind of her readers. **(EXHIBIT 9)**

31.    Defendant Palmer admits on her blog that she sometimes uses portions of quotes out of context, changing their meaning, to entertain her readers. On Dec. 11, 2015, she wrote:

**I usually try my best to keep them in a reasonable amount of context, although some things just need to be pull-quoted to stand on their own because they are just that LULZY. [1]**

---

[1] (LULZ is Internet slang, an extension of LOL – laugh out loud – used as plural variant of lol, Lulz was originally an exclamation but is now often used as a noun meaning interesting or funny internet content.)

## TURDSRFOOD.WORDPRESS.COM

32.     This vile and obscene blog, created by Defendant Grady, consists entirely of the image of Plaintiff's wife in her hospital bed with an image of the Plaintiff's face screaming at her from the upper left corner of the photo. This is the conceit of each blog post. In this blog, Defendant Grady intimates that Plaintiff has "assraped" his wife, that he killed her, and other equally untrue and obscene utterances. **(EXHIBIT 8)**

### ACTIONS COMMENCED BEFORE THE INSTANT SUIT

33.     In early July Plaintiff had a lawsuit in place against Defendants Grady and Johnson as well as several others. However, he decided to move from Elkridge, Maryland, to Milwaukee, WI – the city where he met his wife, where he still has family. He moved on Aug.22, but not before asking the court to dismiss his lawsuit with prejudice as it would be impractical for him to prosecute a case in Maryland while living in Wisconsin.

### DEFENDANT JOHNSON'S ACTIVITIES

34.     Defendant Eric Johnson, also known as "BusPassOffice," "EPWJ" and "Mayberryville" had been spreading a vicious lie about two of the comedy bits Plaintiff had recorded, calling them "kiddie porn," although no children were involved, there was no sex in the bits, and according to law enforcement who have heard the bits, clearly were not kiddie porn. Yet, Defendant Johnson was bound and determined to portray Plaintiff's work as such.

**(EXHIBIT 10)**

35.     When Plaintiff arrived at his new location, Defendant Grady somehow learned and posted online Plaintiff's new address, his apartment number, and an overhead map of the complex. (**EXHIBIT 11**) This was posted the day before Plaintiff signed the lease.

36.     In a comment on the anonymous blogger's website, Defendant Johnson published the names, addresses, phone numbers and other personally-identifying information about the President and Board of Directors of the Cardinal Capital Management Group, the corporation that manages this apartment complex, owned by the Sisters of St. Francis of Assisi. (**EXHIBIT 10 p. 6**)

37.     Defendants Johnson began a harassment campaign with letters and phone calls to the president of the Cardinal Capital Management board, and to Cindy Lopez, the apartment manager. In mid-November, Ms. Lopez was so concerned about my safety after a phone call from Defendant Johnson that she called St. Francis Police – not to evict the Plaintiff, but to make him aware of what Defendant Johnson was up to so he could increase his level of personal security.

38.     E-mails from Defendant Johnson to Ms. Lopez were threatening and disturbing. She received two e-mails from him in a 10-minute span on November 19.

**"Since the Catholics have had so much trouble with pedophiles, you'd think you might think twice before housing a disgusting man who blogged rape fantasies about children.[2] Schmalfeldt is a chronic stalker and harasser with an explosive temper. When he victimizes more people, we will make sure their lawyers know that YOU knew all about him but FAILED to sever ties with him."**
**"Beware of Juniper resident William M. Schmalfeldt. He has a record of chronic stalking of his imagined "enemies."[3] Sooner or later, that will include you, and he will victimize, harass and stalk you and your family. Just google Bill Schmalfeldt for his record of 6 restraining orders, lengthy criminal complaints in the Maryland State Courts, and**

---

[2] Not true.
[3] Not true

getting fired for blogging a child-rape fantasy on the internet.[4] **Needless to say, now that you have been warned of Schmalfeldts criminal tendencies, you will be held responsible in the press and the civil courts when Schmalfeldt harasses innocent people using Juniper's shelter and internet connections." (EXHIBIT 12)**

39.     According to Ms. Lopez, Defendant Johnson did not limit his harassment to e-mails. He called her twice, identifying himself by name and told Ms. Lopes that, in addition to manufacturing child pornography in his apartment, Plaintiff is a "domestic terrorist" due to his friendship with Brett Kimberlin, who did a long stint in prison in the 1980's-90s for a series of bombings in the late 70s.

40.     Even though the Plaintiff had discussed his harassment by these stalkers with management before he even moved to Wisconsin, this terroristic onslaught put him in real fear of being forced out of his apartment with no place to go.

41.     The harassment, conspiracy, defamation and intentional infliction of emotional distress continues unabated. Defendant Hoge has attempted twice to claim ownership of a copyright-registered book written by Plaintiff. Defendant Hoge is also attempting to get the Microsoft E-mail service Outlook.com to revoke Plaintiff's account.

42.     The anonymous blogger's "Thinking Man's Zombie" blog is completely dedicated to stalking and harassing the Plaintiff.

### JOHN DOES AND JANE ROES

43.     Plaintiff plans to see John Doe subpoenas to submit to WordPress.com to determine the identities of the following anonymous commenters for their defamatory comments on the above named blogs. Defamatory comments from each are submitted as **EXHIBIT 13.**

**TECHNO JINXX**
**MJ**

---

[4] Plaintiff has never been fired for "blogging child rape fantasies".

ROY SCHMALFELDT[5]
VIGILANS VINDEX
PABLO
NEAL N. BOB
THIS OTHER LATIN F*CKER
PERRY MASON
HOWARD EARL
A.B.
TAO
JANE
GRACE
DR_MIKE
KATIE SCARLETT
ROB CRAWFORD
THE 13TH DUKE OF WYMBORNE
KOBYASHI MARU
AJ FORNICARIOUS HOC
JEFFM
GUS BAILEY
COLONEL VICTOR TROLLPOKER

44.    As these John Does and Jane Roes are identified, they may or may not be added

in an amended complaint at a later date.

## FIRST CLAIM FOR RELIEF
## UNLAWFUL USE OF COMPUTERIZED COMMUNICATION SYSTEMS, STALKING AND HARASSMENT IN VIOLATION OF WISCONSIN STATUTES 947.0125, 940.32 AND 947.013

45.    Plaintiff re-alleges and incorporates every paragraph above.

46.    According to Wisconsin law, unlawful use of computerized communications

systems, a.k.a. "cyber stalking", is a criminal offense. Wis. Stats § 947.0125 reads in relevant

part:

**(1)   In this section, "message" means any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature, or any transfer of a computer program, as defined in s. 943.70 (1) (c).**
**(2)   Whoever does any of the following is guilty of a Class B misdemeanor:**

---

[5] Falsely identifies himself as Plaintiff's cousin.

(c) With intent to frighten, intimidate, threaten or abuse another person, sends a message to the person on an electronic mail or other computerized communication system and in that message uses any obscene, lewd or profane language or suggests any lewd or lascivious act.

(d) With intent to frighten, intimidate, threaten or abuse another person, sends a message on an electronic mail or other computerized communication system with the reasonable expectation that the person will receive the message and in that message uses any obscene, lewd or profane language or suggests any lewd or lascivious act.

(e) With intent to frighten, intimidate, threaten or abuse another person, sends a message to the person on an electronic mail or other computerized communication system while *__intentionally preventing or attempting to prevent the disclosure of his or her own identity.__*

(f) *__While intentionally preventing or attempting to prevent the disclosure of his or her identity__* and with intent to frighten, intimidate, threaten or abuse another person, sends a message on an electronic mail or other computerized communication system with the reasonable expectation that the person will receive the message.

47.     Cyber Stalking is also a crime in Defendant Grady's home state of Illinois.

**720 ILCS 5/12-7.5-** Defines cyber stalking and makes it a class 4 felony, a second or subsequent felony conviction for cyberstalking is a class 3 felony.

**720 ILCS 135/1-3-** Includes a definition for harassment through electronic communications.

48.     In Defendant Palmer's state of North Carolina:

**Gen Stat. § 14-196.3-** Addresses cyberstalking by making it unlawful to use electronic mail or communication to inflict harm onto a person, electronically mail or communicate repeatedly for purposes of harassing or to make a false statement about another with intent to harass, knowingly allow this sort of electronic harassment happen.

49.     In Defendant Johnson's home state of Tennessee:

**Code Ann. §39-17-308-**Describes harassment as including electronic communication, electronic mail, and internet services. In mid 2009, the Governor signed SB 0133which makes communications (including electronic communication) which have "malicious intent to frighten, intimidate or cause emotional distress" a Class A misdemeanor punishable by up to a year in jail and a fine of up to $2,500.

50.     According to Wisconsin law, stalking is a criminal offense. According to Wis.

Stats. 940.32, which reads in relevant part:

**940.32 (1)(a)(6m)** Photographing, videotaping, audiotaping, or, *through any other electronic means, monitoring or recording the activities of the victim*. This subdivision applies regardless of where the act occurs. (Emphasis added).

51.     In Defendant Grady's state of Illinois:

**Ch. 720 §5/12-7.3** Stalking is defined as knowingly and without lawful justification follows or surveils another on at least 2 separate occasions and threatens or places in reasonable apprehension; Aggravated stalking is stalking in conjunction with causing bodily harm, confining or restraining victim or violating court order or injunction

52.     In Defendant Palmer's state of North Carolina:

**§ 14-277.3A. (c)     Offense. - A defendant is guilty of stalking if the defendant willfully on more than one occasion harasses another person without legal purpose or willfully engages in a course of conduct directed at a specific person without legal purpose and the defendant knows or should know that the harassment or the course of conduct would cause a reasonable person to do any of the following:**

**(1)     Fear for the person's safety or the safety of the person's immediate family or close personal associates.**

**(2)     Suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.**

53.     In Defendant Johnson's home state of Tennessee:

**39-17-315 (c)     Offense. - A defendant is guilty of stalking if the defendant willfully on more than one occasion harasses another person without legal purpose or willfully engages in a course of conduct directed at a specific person without legal purpose and the defendant knows or should know that the harassment or the course of conduct would cause a reasonable person to do any of the following:**

**(1)     Fear for the person's safety or the safety of the person's immediate family or close personal associates.**

**(2)     Suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.**

54.     According to Wisconsin law, harassment is a criminal offense according to Wis.

Stats. § 947.013, which reads:

**(1)** In this section:

(a) "Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose.

(b) "Credible threat" means a threat made with the intent and apparent ability to carry out the threat.

(c) "Personally identifiable information" has the meaning given in s. 19.62 (5).

(d) "Record" has the meaning given in s. 19.32 (2).

(1m)  Whoever, with intent to harass or intimidate another person, does any of the following is subject to a Class B forfeiture:

(a) Strikes, shoves, kicks or otherwise subjects the person to physical contact or attempts or threatens to do the same.

*(b) Engages in a course of conduct or repeatedly commits acts which harass or intimidate the person and which serve no legitimate purpose.*

(1r)  Whoever violates sub. (1m) under all of the following circumstances is guilty of a Class A misdemeanor:

(a) The act is accompanied by a credible threat that places the victim in reasonable fear of death or great bodily harm.

(b) The act occurs while the actor is subject to an order or injunction under s. 813.12, 813.122 or 813.125 that prohibits or limits his or her contact with the victim.

(1t)  Whoever violates sub. (1r) is guilty of a Class I felony if the person has a prior conviction under this subsection or sub. (1r), (1v), or (1x) or s. 940.32 (2), (2e), (2m), or (3) involving the same victim and the present violation occurs within 7 years of the prior conviction.

*(1v)  Whoever violates sub. (1r) is guilty of a Class H felony if he or she intentionally gains access to a record in electronic format that contains personally identifiable information regarding the victim in order to facilitate the violation under sub. (1r).*

(1x)  Whoever violates sub. (1r) under all of the following circumstances is guilty of a Class H felony:

(a) The person has a prior conviction under sub. (1r), (1t) or (1v) or this subsection or s. 940.32 (2), (2e), (2m), or (3).

(b) The person intentionally gains access to a record in order to facilitate the current violation under sub. (1r).

(2)  This section does not prohibit any person from participating in lawful conduct in labor disputes under s. 103.53. (EMPHASIS ADDED)


55.     Under federal law, cyber harassment can be prosecuted under 47 U.S. Code §

223, Communications Decency Act (CDA) that was recently rephrased to include any

telecommunications device. The CDA prohibits certain acts that generally use communication

devices to create and transmit obscene material or child pornography or to abuse, threaten, or

harass another person.

56.     As soon as Plaintiff moved from Maryland to Wisconsin with the expressed intent to put all this behind him, Defendant Grady somehow learned and published Plaintiff's new address and provided an overhead shot of the apartment complex on his TMZ blog.

57.     Plaintiff alleges the actions of the Defendants amount to cyber stalking and harassment as they consisted of systematic and/or continued unwanted and annoying actions of one party or a group, including threats and demands using computerized equipment.

58.     On numerous occasions, Plaintiff would respond to plaintiffs harassing blog posts with cease and desist demands, which were ignored.

59.     The Defendants would meet in the open, either at Defendant Grady's TMZ website, on Defendant Palmer's "BillySez" blog, or a secret "members-only" website, http://fairuseparodyproductions.wordpress.com to compare notes and plot further actions.

60.     The repeated phone calls and messages to Plaintiff's landlord constitute continued harassment.

61.     The use of the copyrighted image of the Plaintiff's late wife and its being plastered all over the Internet with accompanying obscene text constitutes harassment and cyber harassment.

62.     As a direct result of this ongoing harassment by Defendants, Plaintiff has been injured, including embarrassment, damage to his reputation among his new circle of friends and associates, and public humiliation.

63.     Plaintiff is entitled to recover compensatory and punitive damages in an amount proven at trial.

**SECOND CLAIM FOR RELIEF**
**DEFAMATION PER SE AND GIVING FALSE INFORMATION FOR PUBLICATION**
**IN VIOLATION OF WISCONSIN STATUTES 942.01 AND 942.03**

64.    Plaintiff re-alleges and incorporates every paragraph above.

65.    Defamation is a criminal offense in the State of Wisconsin, according to Wis.

Stats. § 942.01, which reads in relevant part:

**(1)   Whoever with intent to defame communicates any defamatory matter to a 3rd
person without the consent of the person defamed is guilty of a Class A misdemeanor.
(2)   Defamatory matter is anything which exposes the other to hatred, contempt,
ridicule, degradation or disgrace in society or injury in the other's business or occupation.**

66.    Giving false information for publication is a criminal offense in the State of

Wisconsin, according to Wis. Stats. § 942.03, which reads:

**Whoever, with intent that it be published and that it injure any person, and with
knowledge that it is false, communicates to a newspaper, magazine, or other publication
any false statement concerning any person or any false and unauthorized advertisement is
guilty of a Class A misdemeanor.**

67.    Published comments by the defendants are clearly defamatory in nature. Public

information shared by defendants for publication on each other's blogs was patently false.

68.    Defendant Grady has begun and persists in repeating that the Plaintiff has an

alcohol problem. Plaintiff does not drink because of the combination of clonazepam and Ambien

he takes every day, a fact that has been made clear to Defendant Grady on numerous occasions.

On November 23, Grady posted:

**UPDATE – DUMBFUCK is up late this morning.  What do you think,
Horde?  TWO empty bottles of Johnnie rolling around the floor from last night?  Needed a
little extra shut-eye to sleep off the hangover today?  That's what I think.
http://thinkingmanszombie.com/2015/11/23/red-judicata/**

69.    This defamatory post also indicates the level to which Defendants are engaged in

stalking the Plaintiff as they are aware of when he goes to bed and when he gets up.

70.    Defendant Grady insists on spreading the false belief that Plaintiff was negligent in his wife's death as well as his mother's death in 2013. The allegations are untrue and defamatory.

**We may have lost our souls, but when our loved ones get sick, we don't congratulate them on losing half their body weight "the hard way." We take them to the hospital to figure out what's wrong. And when they're in the hospital, looking like a zombie because they're past saving, we don't take gruesome, ghoulish photos of them and email them to our enemies, and then cry victim when those photos go viral. We just sit with them and worry about far more important things. We may have lost our souls, but when our parents lay dying, you can bet your ass that we were FULLY PRESENT IN THE MOMENT, out of respect and love, and not firing off insults at an ex-wife on Twitter for not offering condolences to the asshole she wisely gave up on almost 30 years before. We may have lost our souls, but we probably won't miss the death of WIFE#3 (but hey, respect to the DUMBFUCK for finally finding a wife weak enough to stay with a non-hateful pig like IT) because we were checking our email and raging over anonymous comments from one of the thousands of uncivil anonymous netizens we NEVERDIDNOTHING to piss off so why do we get beat down like a rented mule every single day, amirite? We may have lost our souls, but we'll always have Podcast, Ilsa. On second thought, our souls are just fine. At least as healthy as a DUMBFUCK'S talent for projection.**
*(http://thinkingmanszombie.com/2015/11/20/good-morning-dumbfuck-120/)*

71.    Defendant Grady seems to take some sort of perverse delight in taunting Plaintiff and stoking his grief over the recent death of his wife.

**You see, dear Zombies, I warned it. Time and time again, with great patience and forbearance, allowing for its genetically ingrained mendacity, its boundless stupidity and its tiny skull full of bull spunk, I explained how my wrath could be turned away. I insisted that I had been treating it with the softest of kid leather gloves. I noted that I am possessed of *unfathomable* depths of foul vileness in which I bathe daily as in deLeon's Fountain of Youth. It didn't listen. So, I gave up. I'm done being nice. Now, I state, and not without a certain amount of glee, that this DUMBFUCK deserves to be called a yeast-encrusted, cheese-dripping c-word...but I won't do that. First, it's a few levels away yet. Second, it's**

very offensive and disrespectful…to decent, yeast-encrusted, cheese-dripping c-words…like SGotCU.[6]

72.     As vile as Defendant Grady's libelous, defamatory comments are, he promises to get even worse.

**We will no longer use our talents of parody, satire, mockery, pointage and laughery as tools to persuade DUMBFUCK to leave the Internet in peace. From now on, we will employ these tools for nothing but personal satisfaction and entertainment. If we think it's funny, it gets published. It does not matter what anyone else thinks…most of all, DUMBFUCK. We will no longer leave the Internet when DUMBFUCK does. We will mock and abuse him for LULZ and LULZ alone. Whether he stays online or not, we will mock and abuse him and his family. We will not stop. Ever. Not for $2000. Not even for $10,000. We call his late wife a whore because she no longer cares and can do nothing about it. We have such plans for when the same fate as befalls all men catches up with a DUMBFUCK. (http://thinkingmanszombie.com/2015/11/16/rebranding/)**

73.     As many of the defamatory comments deal with alleged sexual offenses, they rise to the level of defamation per se.

74.     According to Wisconsin law, Giving False Information for Publication is a criminal offense under Wis. Stats. 942.03, which reads:

**Whoever, with intent that it be published and that it injure any person, and with knowledge that it is false, communicates to a newspaper, magazine, or other publication any false statement concerning any person or any false and unauthorized advertisement is guilty of a Class A misdemeanor.**

75.     On February 4, 2015, Defendant Johnson commented on Defendant Grady's TMZ blog:

---

[6] SGofCU is an abbreviation for "Saint Gail of the Clock Urn." Defendants seem unnaturally amused by the fact that Plaintiff chose an urn that has a small clock and a nameplate on the front.

**MY sources for all my information comes from – wait for it – Bill Schmalfeldt – he admitted online that his child audio rape fantasies were "explicit." He also said numerous times that they had to meet a penetration standard and in subsequent child rape fantasies even said hey no anal that would be against the law – so to speak – but fondling and oral were okay. So not only did he admit to making child rape pornography he said it was legal child rape pornography because there was no penetration.**

76.    Plaintiff vehemently denies making any such statement to Defendant Johnson or anyone else. Defendant Johnson made the statement for publication knowing it to be false.

77.    Defendant Johnson's statements and phone calls to the management at Juniper Court, Plaintiff's new residence, were clearly harassing in nature and resulted in defamation per se.

78.    Defendant Deeley, sometimes during office hours at the William G. Irwin Charitable Foundation where she serves as the highest paid employee of the foundation, took time away from her duties to send defamatory and false comments for publication to the TMZ and BillySez blogs. **(EXHIBIT 14)**

79.    As defendant William G. Irwin Charitable Foundation either willfully or negligently allowed their employee to utilize their office equipment for the purspose of defaming Plaintiff.

80.    Defendant Gilly is a frequent commenter on the above mentioned blogs. She frequently posts false, defamatory information for publication. **(EXHIBIT 15)**

81.    As a direct, proximate and foreseeable result of Defendants' knowing, willing, intentional and/or negligent actions, Plaintiff has been injured, including significant pecuniary, reputational, and other damages.  The statements have caused and continue to cause deep embarrassment, humiliation, opprobrium, emotional distress and mental suffering to Plaintiff.

82.     Defendants' false and defamatory statements and the implications drawn from them concerning Plaintiff are defamatory *per se* because they allege crimes and make Plaintiff appear odious, infamous, and/or frightening.

83.     Defendants published these false and defamatory statements to third parties who reasonably understood the published statements to be defamatory.

84.     Defendants were aware of the defamatory implication of their statements about Plaintiff, and intended and endorsed the defamatory implication.

85.     Defendants published these false and defamatory statements about Plaintiff even though they knew that they were not based on fact or truth.

86.     Defendants published these false and defamatory statements about Plaintiff with knowledge of their falsity and/or reckless disregard for their truth.

87.     Alternatively, Defendants published these false and defamatory statements about Plaintiff negligently with no regard as to the truth or falsity of what they were saying.

88.     Each of the Defendants was directly involved and responsible for the false and defamatory statements that were published about Plaintiff.

89.     Defendants published these false and defamatory statements with both common law and actual malice, and with the intent of harming Plaintiff.

90.     Defendants published these false and defamatory statements day after day, week after week, with the attacks becoming more coordinated, aggressive and nastier as time progressed.

91.     Defendants' defamatory statements were repeated and republished by other media and bloggers, thereby compounding the harm to Plaintiff.

92.     None of the Defendants has retracted their defamatory statements or removed them from their websites, blogs or media outlets.

93.     Defendants also published these defamatory and false statements in order to increase traffic to their blogs and to raise money from unsuspecting readers who believed their statements.

94.     Defendants' false and defamatory statements have caused Plaintiff to sustain damages.

95.     Defendants' actions against Plaintiff were willful, wanton and malicious, were intended to deliberately harm Plaintiff, and were made with a callous indifference to Plaintiff.

96.     Thus, in publishing the numerous false and defamatory statements about Plaintiff, Defendants acted with an improper and outrageous motive or callous indifference to Plaintiff's rights and interests. As a result of Defendants' outrageous and repeated conduct, Defendants should be ordered to pay substantial compensatory and punitive damages.

## THIRD CLAIM FOR RELIEF

## INVASION OF PRIVACY/RIGHT TO PUBLICITY

97.     Plaintiff re-alleges and reincorporates all paragraphs above.

98.     The right to privacy, while not mentioned in the US Constitution, has come to be seen as a cherished right in the United States.[7]

99.     Wisconsin's Right to Privacy statute states, in relevant part:

(1)   The right of privacy is recognized in this state. One whose privacy is unreasonably invaded is entitled to the following relief:

---

[7] "The right to be left alone—the most comprehensive of rights, and the right most valued by a free people."—Supreme Court Justice Louis Brandeis, Olmstead v. U.S., 277 U.S. 438 (1928)

(a) Equitable relief to prevent and restrain such invasion, excluding prior restraint against constitutionally protected communication privately and through the public media;

(b) Compensatory damages based either on plaintiff's loss or defendant's unjust enrichment; and

(c) A reasonable amount for attorney fees.

**(2)** In this section, "invasion of privacy" means any of the following:

(a) Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass.

(b) The use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian.

(c) Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

(d) Conduct that is prohibited under s. 942.09, regardless of whether there has been a criminal action related to the conduct, and regardless of the outcome of the criminal action, if there has been a criminal action related to the conduct.

**(3)** The right of privacy recognized in this section shall be interpreted in accordance with the developing common law of privacy, including defenses of absolute and qualified privilege, with due regard for maintaining freedom of communication, privately and through the public media.

**(4)** Compensatory damages are not limited to damages for pecuniary loss, but shall not be presumed in the absence of proof.

100.    Plaintiff is not a public person in any reasonable use of the term.

101.    The private details of Plaintiff's life are his to discuss online as he wishes.

102.    Defendants are not free to speculate and assign defamatory intent to the private actions of Plaintiff, either self-published or not.

103.    Opinions supported by fact and provability are acceptable. But one cannot have an opinion that I produce child pornography, that I murdered my wife, that I am a pedophile, or any other defamatory thing, the truth of which can be easily ascertained.

104.     Wisconsin right of publicity statute requires a plaintiff to prove (1) use of plaintiff's name, portrait or picture; (2) use that is for advertising purposes or for purposes of trade, and (3) use without written consent.

105.     The TMZ blog is almost entirely about Plaintiff. It has a donation button, and Defendant Grady has boasted of making money off of Plaintiff's name and likeness.

106.     The BillySez blog does not have a donation button, but uses my name and likeness to draw readership.

107.     Plaintiff has given none of the above-mentioned blogs my permission or license to use his name and likeness,

## FOURTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

108.     Plaintiff re-alleges and reincorporates all paragraphs above.

109.     The State of Wisconsin has adopted Section 46 of the Restatement (Second) of Torts, which reads in relevant part:

> **One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm**

110.     Defendants' defamatory and false statements, intentional misrepresentations and wide publication of false statements about Plaintiff's alleged involvement in child pornography constitute extreme and outrageous conduct that places Plaintiff and every resident and employee of the Juniper Courts apartment complex in extreme physical danger should someone believe the false, ludicrous allegations and decide to take some sort of aggressive, violent action.

111.    Defendant Grady's use of a copyrighted picture of Plaintiff's dying wife and its being spread around the internet replete with obscene constitute extreme and outrageous conduct.

112.    Defendant Johnson's continuing attempt to bully the Juniper Court apartment manager and the Cardinal Capital Management Board to kick Plaintiff out of his apartment on false pretenses constitutes extreme and outrageous conduct. Taken together and separately, these actions demonstrate malice with an intent to cause maximum harm to Plaintiff.

113.    Defendants' actions were done intentionally and/or recklessly in conscious disregard of the high probability that Plaintiff's mental distress would follow.

114.    As a result of Defendants' actions, Plaintiff has suffered severe emotional distress and mental anguish, which combined with the grief over losing his wife of 25 years has severely exacerbated Plaintiff's Parkinson's disease symptoms.

## PUNITIVE DAMAGES

115.    The actions or omissions of Defendants set forth in this Complaint demonstrate malice, egregious conduct, insult, and a perverse gratification from harm caused to Plaintiff. Such actions or omissions by Defendants were undertaken with either (1) maliciousness, spite, ill will, vengeance or deliberate intent to harm Plaintiff, or (2) reckless disregard of the profound wrongfulness of their actions or omissions, and their harmful effects on Plaintiff and his new elderly, disabled neighbors as well as the staff of Juniper Court.  Accordingly, Plaintiff requests an award of punitive damages beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct and to serve as a deterrent for anyone else contemplating the same sort of activity in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

- Compensatory damages and consequential damages in an amount exceeding $75,000.01;

- Punitive damages as determined by the Court to punish Defendants' reprehensible conduct and to deter future occurrence;

- An order enjoining Defendants from engaging in future tortious conduct against Plaintiff;

- An order requiring Defendants to remove any defamatory statements about Plaintiff from blogs or media over which they have control;

- For equitable relief as appropriate pursuant to applicable law, including but not limited to issuing a temporary restraining order, a preliminary injunction and a permanent injunction that bars Defendants from retaliating against Plaintiff in any way for bringing this action.

- Costs and fees incurred in the prosecution of this action, and

- Further relief as this Court deems just and appropriate

## JURY DEMAND

Plaintiff William M. Schmalfeldt hereby demands a jury trial of all issues in this action triable as of right by a jury.

December 17, 2015

Respectfully Submitted,

William M. Schmalfeldt, Sr., Pro Se
3209 S. Lake Dr., Apt. 108
Saint Francis, WI 53235
414-249-4379
Email: bschmalfeldt@twc.com