UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

WILLIAM SCHMALFELDT,

        Plaintiff,

    v.

SARAH PALMER, ET AL.,

        Defendants.

Case No. 2:15-cv-01516-NJ

---

**MEMORANDUM OF LAW IN SUPPORT OF THE JOINT MOTION TO DISMISS AND OPPOSITION TO LEAVE TO AMEND FILED BY DEFENDANTS SARAH PALMER AND ERIC JOHNSON**

---

**INTRODUCTION**

As noted in the accompanying "Joint Motion for Extension of Time to File a Motion to Dismiss Under Rule 12(b)(6) and Motion for Leave to File a Separate Rule 12(b)(6) Motion to Dismiss," the Plaintiff has filed two complaints: the original complaint (ECF No. 1) and a proposed amended complaint (ECF No. 6) that has not yet been accepted by this Court. Accordingly, at this stage of the litigation, these Defendants ask for the original complaint to be dismissed, that leave to amend be refused, and that, consequently, this entire case be dismissed.

The original complaint should be dismissed by this Court for three reasons. First, this Court lacks subject matter jurisdiction because the Plaintiff has chosen to include multiple unknown parties, making it impossible for him to prove there is complete diversity of citizenship. Second, there is no personal jurisdiction over Mr. Johnson and Mrs. Palmer (or any other defendant). Third, the Plaintiff has failed to properly serve either Mr. Johnson or Mrs.

Palmer. For each of these reasons, the original complaint should be dismissed under Fed. R. Civ. P. 12(b)(1), (2), and (5).

Meanwhile, on February 4, 2016, the Plaintiff submitted an alleged amended complaint. The Plaintiff clearly believed he was using his one "free" amendment under Fed. R. Civ. P. 15(a)(1)(A). However, as explained in the accompanying "Joint Motion for Extension of Time to File a Motion to Dismiss Under Rule 12(b)(6) and Motion for Leave to File a Separate Rule 12(b)(6) Motion to Dismiss" in paragraphs 3-6, the Plaintiff has not met the conditions to amend the complaint as a matter of course under 15(a)(1)(A) or (B). Therefore, that amendment can only be accepted by this Court if it grants leave to amend.

Such leave to amend should be denied. As stated in *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993): "[w]hile Rule 15(a) states that 'leave shall be freely given when justice so requires,' the court should not allow the plaintiff to amend his complaint when to do so would be futile." The proposed amended complaint suffers from exactly the same failures of subject matter and personal jurisdiction as the original complaint, and, therefore, if that proposed amendment was accepted, it would inevitably be dismissed. Accordingly, this Court should deny leave to file the proposed amended complaint because it is futile, and—having dismissed the original complaint—dismiss the entire case.

**I.
THE AMENDED COMPLAINT SHOULD BE DISMISSED AND LEAVE TO AMEND SHOULD BE DENIED BECAUSE THERE IS NO SUBJECT MATTER JURISDICTION**

The Plaintiff has failed to allege that subject matter jurisdiction exists. Indeed, his allegations destroy subject matter jurisdiction because he has included unknown defendants in a diversity of citizenship suit.

First, there is no federal question jurisdiction in this case, as is obvious on the face of the original complaint. Every alleged cause of action—and many are not actually causes of action in the first place—are based on either state common law or state statutory law. Therefore, subject matter jurisdiction can only exist if there is diversity of citizenship, and that, in turn, requires the Plaintiff to show there is complete diversity of citizenship. *See, e.g., Howell by Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997).

Complete diversity of citizenship, however, can't be proven by the Plaintiff unless he actually knows the names and whereabouts of every defendant. He does not, describing many as simply as "John Does and Jane Roes." Such ignorance is fatal to jurisdiction. "[B]ecause the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits." *Id.* at 218. Thus, his inclusion of unknown defendants in the original complaint destroys diversity jurisdiction, justifying dismissal of that complaint.

Further, the Plaintiff has replicated his error in his proposed Amended Complaint. He has again named several "John Does and Jane Roes" as defendants in his proposed complaint. Therefore, for the same reason that the original complaint should be dismissed, accepting the amendment is futile. As noted *supra* page 2, this Court can deny leave to amend based on such futility.

Another difficulty the Plaintiff has in relationship to subject matter jurisdiction in the original complaint is that the Plaintiff has failed to properly allege that the amount in controversy exceeds $75,000 as required by 28 U.S.C. §1332 for each Defendant. In the original complaint, the only attempt to put a monetary value on his damages is found a series of conclusory allegations found in his Prayer for Relief (pp. 24-25), which cannot be credited by this Court.

3

Further, the Defendant inappropriately aggregates those amounts. As stated in *Middle Tennessee News Co. v. Charnel of Cincinnati*, 250 F.3d 1077, 1081 (7th Cir. 2001):

> In diversity cases, when there are two or more defendants, plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement only if the defendants are jointly liable; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant.

The Plaintiff has only presented conclusory allegations suggesting any kind of aggregation is appropriate. Such conclusory allegations are insufficient. The failure to allege more than $75,000 against any one of these Defendants, therefore, is an additional reason to dismiss the original complaint for lack of subject matter jurisdiction.

Once again, this mistake was also replicated in the proposed amended complaint. The allegations that the Plaintiff has faced any damages at all are purely conclusory (to the extent that they exist at all), rending this proposed amendment futile. For instance, in paragraph 31 of the proposed complaint the Plaintiff asks for $100,000 for something called "assumed damages," apparently believing that in a libel per se case that not only he is entitled to presumed damages, but they should be presumed to be over $75,000—a position not supported by law. In the same paragraph, he asks for $500,000 of punitive damages without having made any allegations showing that he is entitled to such damages. The Plaintiff's only other attempt to claim damages in the proposed amended complaint is found in paragraph 40, which relates to false light invasion of privacy. Besides the fact that the claim of damages is conclusory, "Wisconsin does not recognize false light invasion of privacy." *Ladd v. Uecker*, 323 Wis. 2d 798, 780 N.W.2d 216, 221 (Wis. App. 2010); *see also Zinda v. Louisiana Pacific Corp.*, 149 Wis.2d 913, 928-29 (Wis. 1989) (noting that the tort of invasion of privacy was created statutorily and that false light was omitted from the statute). Therefore, the Plaintiff has failed to properly allege damages equaling

4

more than $75,000 as required for subject matter jurisdiction. For all of these reasons, this Court should dismiss the original complaint, deny leave to amend, and, consequently, dismiss the entire case.

## II.
## THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Wisconsin's long-arm statute does not authorize the extension of personal jurisdiction over Mrs. Palmer or Mr. Johnson in Wisconsin, and the extension of jurisdiction over these Defendants would violate the Due Process clause of the Constitution. Accordingly, this Court should dismiss the original complaint, deny leave to amend on the basis of futility, and dismiss the entire matter.

First, as noted above, subject matter jurisdiction can only exist under diversity of citizenship jurisdiction (or not at all), with the Plaintiff claiming residence in Wisconsin and correctly alleging that Mrs. Palmer resides in North Carolina and Mr. Johnson lives in Tennessee. In a diversity case, whether this Court can exercise personal jurisdiction any defendant is determined by exactly the same standards as it would in any Wisconsin state court. In other words, where Wisconsin state law controls the cause of action, it also controls jurisdiction:

> A federal court sitting in Wisconsin has personal jurisdiction over the parties in a diversity case only if a Wisconsin state court would have such jurisdiction. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir.1995), cert. denied, [518 U.S. 1004], 116 S.Ct. 2523, 135 L.Ed.2d 1047 (1996). Therefore, this court must resolve two questions. First, it must determine whether the Wisconsin long-arm statute, WIS. STAT. § 801.05, applies to Mr. Bulso [the defendant]. *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1358-59 (7th Cir.1996); *see In re All-Star Ins. Corp.*, 110 Wis.2d 72, 76, 327 N.W.2d 648 (1983). Second, if the long-arm statute does apply, the court must then decide whether its exercise of jurisdiction over Mr. Bulso comports with the due process requirements of the Fourteenth Amendment. *Mid-America Tablewares*, 100 F.3d at 1359; see *In re-All Star*, 110 Wis.2d at 76, 327 N.W.2d 648.

5

*Nelson v. Bulso*, 979 F.Supp. 1239, 1242 (E.D. Wis., 1997). Further, the Plaintiff, as the party seeking to establish personal jurisdiction, bears the burden of showing that such jurisdiction exists. *Lincoln v. Seawright*, 104 Wis. 2d 4, 9 (Wis. 1981) (*citing Schmitz v. Hunter Machinery Co.*, 89 Wis. 2d 388, 396, (Wis. 1979)); *see also Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 548 (7th Cir. 2004) ("Once a defendant moves to dismiss for lack of personal jurisdiction ... the plaintiff bears the burden of demonstrating the existence of jurisdiction"). Neither the original complaint, nor the proposed amended complaint cites to any provision of WIS. STAT. § 801.05 supporting the Plaintiff's assertion of jurisdiction, and there are no facts in either complaint supporting such jurisdiction. Further, even if jurisdiction was authorized by WIS. STAT. § 801.05, it would violate the due process clause. Accordingly, the original complaint should be dismissed for lack of personal jurisdiction, leave to file the proposed amended complaint should be denied, and the entire case should be dismissed.

**A.     This Court Doesn't Have Personal Jurisdiction Over the Defendants Under WIS. STAT. § 801.05**

As noted in *Nelson*, the first step in determining whether a court sitting in a diversity case has personal jurisdiction is to determine if any state law enables such jurisdiction. Plaintiff has not designated—either in the original complaint or the proposed amended complaint—any part of WIS. STAT. § 801.05 that this case allegedly meets, and he has not alleged facts that would allow this Court to determine that the statute had been met.

The only provision of § 801.05 that are worth examining at all is § 801.05(1)(d), which states the following:[1]

> (1) LOCAL PRESENCE OR STATUS. In any action whether arising within or without this state, against a defendant who when the action is commenced ...
>
> (d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise.

The case law has established that whether such "substantial ... activities" exist is determined by examining the following factors:

> (1) the quantity of defendant's contacts; (2) the nature and quality of defendant's contacts; (3) the source and connection of the cause of action with those contacts; (4) the interests of Wisconsin in the action; and (5) the convenience to the parties of employing a Wisconsin forum.

*Rasmussen v. Gen. Motors Corp.*, 335 Wis.2d 1, 15-16 (Wis. 2011).

---

[1] None of the other subsections appear to be implicated even slightly on the facts as Plaintiff has alleged. For instance, neither of these Defendants were present in Wisconsin when they were allegedly served, as required under § 801.05(1)(a). Neither them are domiciled in Wisconsin as required by § 801.05(1)(b). Neither of them are corporations as required by § 801.05(1)(c). No special jurisdiction statutes apply under § 801.05(2). There is no allegation of a local act or omission required under § 801.05(3), because Plaintiff never alleges where anyone is when he or she allegedly committed these alleged torts. *See, e.g., Jefferson Electric, Inc. v. Torres*, 09-C-465, 2009 WL 4884379 (E.D. Wis. Dec. 10, 2009) ("Neither the receipt of communications within Wisconsin from a remote defendant, nor the sending of communications from Wisconsin to a remote defendant, constitute acts or omissions within this state by that defendant"); *see Pavlic v. Woodrum*, 169 Wis.2d 585, 486 N.W.2d 533 (Wis. App., 1992) (holding that the act of sending allegedly fraudulent letters into Wisconsin from out-of-state did not constitute a "local act" under § 801.05(3)); *see also Rasmussen v. Gen. Motors Corp.*, 335 Wis.2d 1, 22 (Wis., 2011) (citing *Woodrum* with approval). Likewise, the Plaintiff has not alleged any "solicitation or service activities" carried on within Wisconsin as required by § 801.05(4)(a), or that any "[p]roducts, materials or things processed, serviced or manufactured by the defendant were used or consumed" in Wisconsin as required by § 801.05(4)(b). He is complaining about words, not tangible things. Similarly, there is no allegation related to local property that satisfies § 801.05(6), there is no allegation of a deficiency judgment as required by § 801.05(7), there is no allegation related to the Defendants allegedly being the director, officer or manager of a corporation, or an LLC as required by § 801.05(8); this case doesn't relate to taxes, insurance, marriage, or a personal representative of a deceased under § 801.05(9)-(12), respectively.

7

In the case of Mrs. Palmer, there are no alleged contacts whatsoever with Wisconsin—all of her alleged activities consist of writing on the Internet to a general audience, *see* Declaration of Sarah Palmer attached as Exhibit A—and, therefore, the first two factors counsel against recognizing jurisdiction. Further, since there are no contacts with Wisconsin, there is no connection between such non-contacts and the cause of action, and, therefore, the third factor counsels against personal jurisdiction. Likewise, Wisconsin has no valid interest in regulating the expression of persons that occur outside its borders, and, therefore, the fourth factor favors Mrs. Palmer.

Finally, convenience favors Mrs. Palmer. Mrs. Palmer lives in North Carolina. Mr. Johnson lives in Tennessee. The Plaintiff lives in Wisconsin. The location of every other party is unknown. Any courthouse in either Tennessee or North Carolina is more convenient to the majority of the known parties in this case, so the balance of convenience does not favor Wisconsin.

Turning to Mr. Johnson, the Plaintiff alleges five total contacts in the original complaint: three emails, two phone calls, one voice mail message, and an unknown number of letters. Even if we presume this is true, it is insufficient. For instance, in *Vermont Yogurt Co. v. Blanke Baer Fruit and Flavor Co.*, 107 Wis.2d 603 (Wis. App. 1982), the defendant corporation (1) had a regional sales representative whose territory included Wisconsin, (2) employed a part-time salesperson, a resident of Wisconsin, to sell its products in Wisconsin, (3) used Wisconsin firms to distribute its products, (4) advertised in national trade magazines, (5) did direct mailing to Wisconsin firms, (6) sent technical personnel to Wisconsin to assist customers trying new products, (7) attended trade shows in Wisconsin and reimbursed its Wisconsin distributors for expenses incurred in attending such trade shows, and (8) derived 3% of its total nationwide sales

8

Case 2:15-cv-01516-NJ   Filed 03/01/16   Page 8 of 15   Document 12

from Wisconsin despite not being licensed to do business in Wisconsin or having any offices, warehouses or manufacturing plants or owning any property in Wisconsin. However, these contacts, which greatly dwarf the contacts in this case, were found to be insufficient in *Vermont Yogurt* to support an assertion of jurisdiction under § 801.05(1)(d).

Other examples of greater contacts being found to be insufficient abound in the case law. In *Commercial Financial Corp. v. McCaffrey*, 197 Wis.2d 116 (Wis. App., 1995), that court found that Wisconsin didn't have personal jurisdiction over a law firm that provided legal services to some Wisconsin clients (while operating out of state). Surely that involved, at a minimum, communications equivalent to three emails, two phone calls, a voice mail message and an unstated number of letters. Likewise, in *U.S. Venture Inc. v. McCormick Transp. LLC,* Case No. 15-C-990 (E.D. Wis., Nov. 3, 2015), this Court found that it didn't have jurisdiction under § 801.05(1)(d) over defendants who made three or four phone calls to Wisconsin, sent three emails, and made an "unspecified number of payments," *id.* at 9, to the plaintiff in that case, a Wisconsin corporation. Similarly, a single visit to Wisconsin, and approximately $6,500 of sales in Wisconsin (in 1971 dollars) was insufficient in *Nagel v. Crain Cutter Co.*, 50 Wis.2d 638 (Wis., 1971), while in *Towne Rlty., Inc. v. Bishop Enterprises Inc.*, 432 F.Supp. 691 (E.D. Wis., 1977) an unspecified number of telephone conversations and meetings in Wisconsin, combined with signing an agreement in Wisconsin, was not sufficient to create jurisdiction in the state. Finally, in *Ricoh Co., Ltd. v. Asustek Computer, Inc.*, 481 F.Supp.2d 954, 963 (W.D. Wis., 2007), the court found that a "handful of local sales [of computers] does not qualify as 'substantial' activity,'" when neither defendant is alleged to have ever set foot in Wisconsin. These are only a few of the many cases where a greater degree of contact was found to be insufficient to trigger jurisdiction under WIS. STAT. § 801.05(1)(d).

9

Further, this Court doesn't have to assume the truth of every allegation in the complaint when determining whether the Plaintiff's assertion of jurisdiction is appropriate. Attached as Exhibit B is the Declaration of Eric Johnson, which states that he did not send any of the complained-of emails or letters, that he only made one phone call, and that he only left one voice mail message. Such allegations can be considered to rebut the complaint and, therefore, this Court should consider Mr. Johnson as only having those two contacts with the state. Thus, the allegations in the original complaint are not sufficient on their face, and when one considers only those communications that have not been rebutted by Mr. Johnson, the basis of the Plaintiff's assertion of jurisdiction becomes even weaker.

To apply the five factors to these facts, the quality and quantity of contacts is slight, the source and connection of the cause of action with those contacts is anemic,[2] the interests of Wisconsin in the action is as slight as it is with Mrs. Palmer, and the balance of conveniences favor Mr. Johnson for the same reason that they favor Mrs. Palmer. For all of these reasons, this Court should hold that it lacks personal jurisdiction over both Mrs. Palmer and Mr. Johnson.

Moreover, the proposed amended complaint does nothing to cure these faults—in fact, it alleges even less on the subject of jurisdiction in relation to Mr. Johnson than the original complaint while continuing to allege no contacts in relationship to Mrs. Palmer. Indeed, the Plaintiff fails to allege facts supporting an assertion of personal jurisdiction over a single defendant. Therefore, it would be futile to accept this proposed amendment and, accordingly, leave to amend should be denied. Instead, the entire case should be dismissed.

---

[2] Indeed, as noted *infra* 11, neither of those communications were defamatory as a matter of law.

10

Case 2:15-cv-01516-NJ   Filed 03/01/16   Page 10 of 15   Document 12

**B. This Court Doesn't Have Personal Jurisdiction Over the Defendants Under the Due Process Clause**

Even if WIS. STAT. § 801.05 were interpreted to allow jurisdiction over these Defendants, the allegations are not sufficient to meet the standards of the due process clause.

In regards to Mrs. Palmer, the Plaintiff appears to believe that the mere allegation that she wrote about him on the Internet to a general audience is sufficient to confer jurisdiction. It is not.

For instance, *Young v. New Haven Advocate,* 315 F.3d 256 (4th Cir. 2002) presents facts similar to this case in nearly every relevant respect. That case involved two Connecticut newspapers (and members of their respective staffs) that ran a corresponding website which published articles that allegedly defamed a Virginia prison warden. That plaintiff attempted to argue that Virginia could exercise jurisdiction over these Connecticut residents as follows:

> the [defendants], knowing that [the plaintiff, the warden of a Virginia prison] was a Virginia resident, intentionally discussed and defamed him in their [newspaper] articles, (2) the newspapers posted the articles on their websites, which were accessible in Virginia, and (3) the primary effects of the defamatory statements on [the plaintiff's] reputation were felt in Virginia.

*Id.* at 261-62. However, the *Young* court found this was insufficient because there was no evidence of any intent to target a Virginia audience:

> As we recognized in *ALS Scan*, "a person's act of placing information on the Internet" is not sufficient by itself to "subject[] that person to personal jurisdiction in each State in which the information is accessed." [*ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002)]. Otherwise, a "person placing information on the Internet would be subject to personal jurisdiction in every State," and the traditional due process principles governing a State's jurisdiction over persons outside of its borders would be subverted. *Id.*

315 F.3d at 263. By the *Young* standard, there is nothing before this Court allowing it to determine that the posts at issue were meant specifically for a Wisconsin audience, compared to a national or even a global audience.

11

Further, this standard has been adopted as the law of the Seventh Circuit. In *Mobile Anesthesiologists Chicago, LLC. v. Anesthesia Assocs. of Houston Metroplex*, 623 F.3d 440 (7th Cir., 2010), the Seventh Circuit faced a claim that a harmful website, visible in Illinois, subjected out-of-state-defendants to Illinois jurisdiction. The Seventh Circuit rejected this claim in part by citing *Young* as follows:

> A plaintiff cannot satisfy the *Calder* [*v. Jones*, 465 U.S. 783 (1984)] standard [for personal jurisdiction] simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website. See, *e.g., Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998) ("We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another."); Young v. New Haven Advocate, 315 F.3d 256, 264 (4th Cir.2002) (no express aiming where the defendant newspapers' only contacts with the forum state were through websites aimed at an out-of-state audience).

Id. at 446. The act of writing on the Internet does not subject one to personal jurisdiction in every state of the union. Indeed, a contrary ruling would likely create an inappropriate chilling effect on protected speech, at the prospect of being haled into a court far from your home—which might be the Plaintiff's ultimate goal in this suit. If the Plaintiff is genuinely aggrieved by anything Mrs. Palmer wrote, on the Internet, to a general audience, he needs to come to North Carolina in order to bring suit.

Turning to Mr. Johnson, in terms of specific jurisdiction, the only contacts with the forum do not relate to any cause of action. According to the Declaration of Eric Johnson, the lone phone call consisted of two comments that were allegedly disparaging of Mr. Schmalfeldt, whether true or not. First, he gave a general description of the "skits" attached as Exhibits 1-3 of to the proposed amended complaint (ECF Nos. 6-2, 6-3, and 6-4) and, based on that description, said that they were "like child porn." An opinion based on disclosed facts is just that: an opinion. Such opinions are protected by the First Amendment. *Milkovich v. Lorain Journal Co.*,

12

497 US 1, 27 n. 3 (1990) (statements of opinion, based on disclosed facts, cannot support a defamation claim). As for the voice mail, it simply referenced his opinion that Mr. Schmalfeldt's skits are like child pornography.

Turning back to the lone phone conversation, Mr. Johnson also denies the allegation in paragraph 39 of the original complaint that he called the Plaintiff a terrorist—he only noted that Mr. Schmalfeldt is associated with the convicted terrorist Brett Kimberlin. *See, e.g., Kimberlin v. White*, 7 F.3d 527, 528-29 (6th Cir. 1993) (detailing how Mr. Kimberlin bombed a town for nearly a week, costing one man his life). The Plaintiff admits that he is associated with Mr. Kimberlin, and, therefore, it cannot be defamation to state that the Plaintiff is associated with Mr. Kimberlin because it is the truth.

As can be seen from the above, neither the phone call nor the voice mail is defamatory and, therefore, neither contact relates to the cause of action. Further, in *Nieman v. Grange Mut. Cas. Co.*, Case No. 11-3404, at 18 (C.D. Ill., April 26, 2012), that court declared that "[t]he Court further holds as a matter of law that a single telephone interview with an Illinois citizen is insufficient to establish specific personal jurisdiction." Further, *Neiman* held that "the exercise of such jurisdiction does not comport with traditional notions of fair play and substantial justice and is contrary to the United States and Illinois Constitutions." *Id.* A phone call and a voice mail message should not be sufficient in this case.

As for general jurisdiction under the due process clause, as stated in *Edgenet, Inc. v. GS1 U.S. Inc.,* Case No. 09-CV-65, at 9 (E.D. Wis., June 27, 2011), this "requires the defendant to have such extensive contacts with the state that it can be treated as present in the state for essentially all purposes," and "[t]he contacts must be such that they 'approximate physical presence.'" A phone call and a voice mail message should not be sufficient to assert general

13

jurisdiction over Mr. Johnson. Again, if the Plaintiff has any genuine grievance against Mr. Johnson, he needs to come to Tennessee to bring suit.

Further, the proposed amended complaint doesn't improve matters on this front. The proposed amended complaint continues to fail to establish personal jurisdiction against any defendant, rendering the proposed amendment futile. Therefore, this Court should dismiss the original complaint for lack of personal jurisdiction, deny leave to amend and dismiss the entire case.

### III.
### THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER SERVICE

Rule 4(c)(1) states that "[a] summons must be served with a copy of the complaint." As demonstrated by the Declarations of both Mr. Johnson and Mrs. Palmer, that has not occurred. Instead, the Plaintiff served on them what appears to be very faded copies of the summons and copies of the proposed amended complaint—which is not yet a valid complaint. *See* Declarations of Sarah Palmer and Eric Johnson attached as Exhibits A and B. Because the proposed amended complaint was not filed with a motion for leave to amend, it is possible this Court might reject it out of hand. This is an additional reason to dismiss the complaint for these Defendants.

WHEREFORE, this Court should dismiss the original complaint for all defendants based on a lack of subject matter under Rule 12(b)(1); this Court should dismiss the original complaint for lack of personal jurisdiction under Rule 12(b)(2); this Court should dismiss original complaint for insufficient service of process under Rule (b)(5); this Court should further deny leave to amend because it would be futile; this Court should dismiss the entire case; and this Court should provide any other relief that is just and equitable.

14

Tuesday, March 1, 2016                              Respectfully submitted,


   s/ Aaron J. Walker
Aaron J. Walker, Esq.
*Attorney for Defendants Johnson and Palmer*
Va Bar# 48882
DC Bar #481668
P.O. Box 3075
Manassas, Virginia  20108
(703) 216-0455
(No fax)
AaronJW1972@gmail.com


## VERIFICATION

    I, Aaron Walker, state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that all exhibits are true and correct copies of the originals.

Executed on Tuesday, March 1, 2016.


   s/ Aaron J. Walker


## CERTIFICATE OF SERVICE

    I certify that on the 1st day of March, 2016, I served copies of this document on William Schmalfeldt at 3209 S. Lake Drive, Apt. 108, St. Francis, Wisconsin 53235 by mail.


   s/ Aaron J. Walker

15

Case 2:15-cv-01516-NJ   Filed 03/01/16   Page 15 of 15   Document 12