UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

WILLIAM SCHMALFELDT,

        Plaintiff,

    v.

SARAH PALMER, ET AL.,

        Defendants.

Case No. 2:15-cv-01516-NJ

## JOINT OPPOSITION TO THE PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL (DOCKET #18) AND MOTION TO STRIKE THE SAME

NOW COME Defendants Sarah Palmer and Eric Johnson, by their counsel Aaron J. Walker, Esq., in the above-styled case for the sole purpose of challenging personal and subject matter jurisdiction and service of process, without waiving any rights of jurisdiction, notice, process, service of process, joinder, or venue. They hereby file this Joint Opposition to the Plaintiff's Motion to Disqualify Counsel (Docket #18) and Motion to Strike the Same and state the following:

1. On March 7, 2016, the Plaintiff filed a "Motion to Disqualify Defendant's [sic] Attorney, Aaron Justin Walker, for Alleged Violations of the DC Bar Association Rules of Proffesional [sic] Conduct, as Well as the Fact He is Likely to be Called as a Witness by the Plaintiff, or Joined as a Defendant" (Docket #18) (hereinafter "MTDQ"). In his motion the Plaintiff argued that undersigned counsel should be disqualified 1) because of alleged falsehoods in the "Memorandum of Law in Support of the Joint Motion to Dismiss and Opposition to Leave to Amend Filed by Defendants Sarah Palmer and Eric Johnson" (Docket # 12) (hereinafter the

"Joint Memorandum of Law"), 2) because of alleged other misstatements out of court, and 3) because undersigned counsel might suddenly be a witness or a party. All three of these contentions are without merit. Further, this motion should be stricken as nothing more than a naked attempt to prejudice this Court with irrelevant ad hominem attacks against counsel.

## I.
## THE PLAINTIFF HAS OFFERED NO VALID JUSTIFICATION TO DISQUALIFY COUNSEL

2.      The Plaintiff's MTDQ should be denied because there is no basis for it, factually or legally. The rule against attorneys acting as witnesses does not apply to these present facts. Further, the Plaintiff has not demonstrated that the undersigned counsel made any false statements to this Court. Finally, the Plaintiff cites a non-rule to attempt to argue that out of court alleged falsehoods justify disqualification and then goes on to falsely accuse the undersigned counsel of publishing falsehoods. For all of these reasons, the MTDQ should be denied.

**A.      The Rule Against an Attorney Being Involved in a Case Where He is Likely to be a Witness only Applies to Trials and Necessary Witnesses**

3.      First, the Plaintiff argues that the D.C. CODE OF PROF'L CONDUCT R. 3.7 bars the undersigned from serving as counsel. It reads as follows:

(a)      A lawyer shall not act as advocate *at a trial* in which the lawyer is likely to be a necessary witness except where:

(1)      The testimony relates to an uncontested issue;

(2)      The testimony relates to the nature and value of legal services rendered in the case; or

(3)      Disqualification of the lawyer would work substantial hardship on the client.

2

This language is virtually identical to the language found in WIS. CODE OF PROF'L CONDUCT R. 3.7. The Plaintiff reasons from this that because the undersigned counsel may eventually be a witness, he cannot represent Defendants Palmer and Johnson at this point in the case. There are several problems with that.

4. First, the plain language of this rule states that the rule only applies *at trial*. That is precisely how this Court read the Wisconsin rule in *Olson v. Bemis Co.*, Case No. 12-C-1126 (E.D. Wis. April 26, 2013). *Olson* concerned a suit surrounding a collective bargaining agreement, and the Plaintiff was represented by Peter Culp, Esq. The defendants in that case sought to disqualify Mr. Culp and his firm from representing Olson because Mr. Culp had helped negotiate the collective bargaining agreement at issue. This Court held, however, that Mr. Culp could continue to personally represent Mr. Olson at every stage prior to trial even if Mr. Culp was deposed during discovery, because the rule only applied to trials. Applied to the instant facts, the Plaintiff's motion is meritless because this case is still at the pleading stage, and it is very likely to be dismissed on jurisdictional grounds.

5. Second, the Plaintiff cannot show that counsel is *likely* to be a validly-called witness. At best, the Plaintiff speculates that

> it is entirely possible that during the discovery phase of this trial, Plaintiff will learn more about Mr. Walker's involvement in the alleged defamation by Defendants, and he could be called as a witness or even be added to the list of defendants.[1]

---

[1] The Plaintiff's claim that undersigned counsel might be added as a defendant is plainly a ploy to attempt to disqualify the undersigned as counsel and perhaps to intimidate him. The Plaintiff has claimed that the undersigned has defamed him for years, but it is only after the undersigned filed a motion to dismiss in this case, threatening the future of this litigation, that the Plaintiff suddenly decides the undersigned might potentially be a defendant. The Plaintiff, in essence, believes that he should be allowed to veto these Defendants' decision to hire Mr. Walker as counsel with a strategic decision to name the undersigned as a Defendant. The Plaintiff should not be allowed to do this.

3

MTDQ, p. 4. This comes nowhere near the plain language of Rule 3.7, which requires a showing of likelihood.

6. Third, is it not clear on the face of the pleadings that the undersigned is a *necessary* witness to any of the events of this case as required by Rule 3.7. This entire case is based on what people have said, mainly on the Internet, about the Plaintiff. Eric Johnson lives in Tennessee, Sarah Palmer lives in North Carolina, and undersigned counsel lives in Virginia. It should not be surprising to this Court that counsel did not witness the Defendants posting anything on the Internet, making any phone calls, sending any emails, or engaging in other forms of communication that might or might not have occurred. So, outside of privileged communications, counsel doesn't have any more knowledge about what these Defendants wrote and said than any other member of the general public (for instance, by reading what was allegedly written by the Defendants on various public websites). In *Olson*, this Court noted that Mr. Culp might not be the only witness to relevant events and, therefore, might not be a *necessary* witness. Id. at *6-7. Applied here, the Plaintiff has made absolutely no showing that counsel has any non-privileged information relevant to this case that is possessed only by counsel making him a necessary witness.

7. Finally, even if counsel was likely to be a necessary witness, disqualification of counsel would work a substantial hardship on these Defendants. As stated in the attached Declarations of Aaron Walker and Sarah Palmer, the undersigned counsel is the only pro bono attorney available at this time. Depriving them of the undersigned counsel would effectively strip Mrs. Palmer of having any attorney at all.[2]

---

[2] Mr. Johnson, meanwhile, would be required to pay thousands of dollars to defend his right to "free" speech, to his prejudice.

4

8.     In *Powell v. Alabama,* 287 U.S. 45, 68-69 (1932)*,* the Supreme Court expounded on the usefulness of counsel as follows:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

While the stakes for these Defendants are not as high and the need is not as dire as they were for the "Scotsboro Boys," the Defendants' finances and their right to express themselves freely is on the line and, without counsel, they risk losing both—despite the fact that they have done no wrong.  Accordingly, taking away from these Defendants the only pro bono attorney available to them would be a substantial hardship.

9.     In summary, Rule 3.7 doesn't apply to the facts of this case.  It doesn't apply because this case is not yet in trial and because the Plaintiff has not shown that the undersigned counsel is likely to be a necessary witness.  Finally, even if the rule did apply, the undersigned counsel should still be allowed to represent these defendants because it would impose a substantial hardship on these Defendants if he were disqualified.   Accordingly, the Plaintiff's argument based on Rule 3.7 is meritless, and his motion should be denied.

**B.     Undersigned Counsel Has Not Made False Statements in the Joint Memorandum of Law (Docket # 12)**

10.     A second reason why the Plaintiff claims disqualification is justified is because the undersigned allegedly made two misrepresentations in relation to non-party Brett Kimberlin

5

in the Joint Memorandum of Law. Specifically, on page 13 of the Joint Memorandum of Law, undersigned counsel wrote the following:

> Turning back to the lone phone conversation, Mr. Johnson also denies the allegation in paragraph 39 of the original complaint that he called the Plaintiff a terrorist—he only noted that Mr. Schmalfeldt is associated with the convicted terrorist Brett Kimberlin. *See, e.g., Kimberlin v. White*, 7 F.3d 527, 528-29 (6th Cir. 1993) (detailing how Mr. Kimberlin bombed a town for nearly a week, costing one man his life).

The Plaintiff claims that two alleged falsehoods are packed into this passage: first, that Brett Kimberlin is a "convicted terrorist," and, second, that Mr. Kimberlin's bombing campaign cost a man his life.[3]

11.    As an initial matter, it is permissible to refer to Mr. Kimberlin as a "convicted terrorist." By way of background, this is how the Sixth Circuit described Mr. Kimberlin's bombing campaign:

> Kimberlin was convicted as the so-called "Speedway Bomber," who *terrorized* the city of Speedway, Indiana, by detonating a series of explosives in early September 1978. In the worst incident, Kimberlin placed one of his bombs in a gym bag, and left it in a parking lot outside Speedway High School. Carl Delong was leaving the high school football game with his wife when he attempted to pick up the bag and it exploded. The blast tore off his lower right leg and two fingers, and embedded bomb fragments in his wife's leg. He was hospitalized for six weeks, during which he was forced to undergo nine operations to complete the amputation of his leg, reattach two fingers, repair damage to his inner ear, and remove bomb fragments from his stomach, chest, and arm. In February 1983, he committed suicide.

*Kimberlin v. White*, 7 F.3d 527, 528-29 (6th Cir. 1993) (emphasis added). Most people would believe that the crimes Mr. Kimberlin was convicted of—detonating eight bombs in six days under circumstances that "involved [a] substantial risk of devastating personal injury to innocent

---

[3] The Plaintiff admits that he is friends with Mr. Kimberlin on page 1 of his MTDQ as follows: "Mr. Walker makes the provably false statement that *Plaintiff's friend, Mr. Brett Kimberlin* of Bethesda, Maryland is 'a convicted terrorist.'"

6

by-standers,"[4]—amounts to terrorism.[5]  While it is true that the statutes under which Mr. Kimberlin was convicted didn't label the crimes he committed "terrorism,"[6] often statutory titles do not reflect common names.  For instance, in Wisconsin if one has sex with a person without his or her consent, that person can be convicted of "sexual assault" in violation of Wis. Stat. § 940.225.  Most people, however, call that rape.  Would the Plaintiff have this Court disqualify an attorney who referred to a person convicted under § 940.225 as a "convicted rapist?"

12.    Meanwhile, the Plaintiff's claim that it is false to state that Mr. Kimberlin's bombs cost a man's life is even more ridiculous.  The Plaintiff writes that:

> A person was, in fact, terribly injured in that bombing, which resulted in the amputation of a leg. But it wasn't the bombing that killed him. It was the carbon monoxide from his car engine in a closed garage by which he intentionally took his own life in 1983, five years after the bombing. Thus the claim that Mr. Kimberlin's act cost this unfortunate man his life is incorrect[.]

This callous assessment of the cause of Mr. DeLong's death closely reflects the interpretation that Mr. Kimberlin himself asserted in *Kimberlin v. DeLong*, 637 NE 2d 121, (Ind. Sup. Ct. 1994).  In that case, Sandra DeLong, the widow of Carl DeLong, sued Mr. Kimberlin for both causing both her own injuries and her husband's suicide.  "[A] jury trial resulted in judgments against defendant-appellant Brett Coleman Kimberlin in the sum of $360,000 for personal injuries to Sandra Sue DeLong and $1,250,000 for the wrongful death of Carl David DeLong." *Id.* at 123.  Mr. Kimberlin argued before the Indiana Supreme Court that the suicide was an

---

[4] *Kimberlin v. White*, 798 F. Supp. 472, 474 (W.D. Tenn. 1992)
[5] *Kimberlin v. Walker*, Case Nos. 1553, 2099 and 0365 (Md. App. 2016) is also relevant on this point.  In that case, Mr. Kimberlin sued the undersigned counsel and three others for allegedly defaming him as follows: "Mr. Kimberlin claimed that the Appellees falsely portrayed him as 'engaging in criminal activity, being a pedophile, rapist and domestic terrorist[.]"  See Exhibit A. As noted in the Maryland Court of Special Appeals decision, Mr. Kimberlin lost on the issue of truth.
[6] The U.S. Code doesn't appear to have had a statute defining terrorism before 18 U.S.C. § 2331 was adopted in 1992.

7

intervening cause of Mr. DeLong's death, and, therefore, he was not responsible as a matter of law for Mr. DeLong's suicide. The Indiana Supreme Court brushed this argument aside and affirmed his liability for Mr. DeLong's death by modifying the common law of Indiana so that suicide was no longer considered an intervening cause of death from an intentional tort such as this as follows:

> In the present case, the complaint alleged intentional injury. Kimberlin's federal criminal conviction ... establishes his conduct as malicious and thus intentional rather than negligent. Moreover, Carl's DeLong's death, although occurring more than four years after the explosion, was within the scope of harm intended by Kimberlin's intentional criminal conduct. Under such circumstances, we decline to treat suicide as independent intervening cause protecting a highly culpable defendant from liability for his victim's death. We hold that an action may be maintained for death or injury from a suicide or suicide attempt where a defendant's willful tortious conduct was intended to cause a victim physical harm and where the intentional tort is a substantial factor in bringing about the suicide.

*Id.* at 128-29. In short, Mr. Kimberlin is responsible for Carl DeLong's death as verified by the Indiana Supreme Court. Therefore, the undersigned counsel's statement was correct.

13. More fundamentally, the Plaintiff does not cite any law or rule that says that if an attorney makes one false statement (or two) she must be disqualified from appearing in a case. He cites the District of Columbia's Rules of Professional Conduct, but that doesn't suggest a rule of automatic disqualification in a particular case. Therefore, the Plaintiff has not asserted any factual basis for disqualification or any legal basis for disqualification. For this reason the Plaintiff's motion should be denied because it is frivolous.

**C. Undersigned Counsel's Comments Unrelated to Any Case Before This Court Do Not Disqualify Him as Defense Counsel.**

14. In the second section of the Plaintiff's MTDQ, the Plaintiff cites a non-rule, writing the following heading "**VIOLATIONS OF THE ABA MODEL CODE OF PROFESSIONAL RESPONSIBILITY**" and then quoting the following alleged rule:

> EC 9-6 "Every lawyer owes a solemn duty to uphold the integrity and honor of his profession; to encourage respect for the law and for the courts and the judges thereof; to observe the Code of Professional Responsibility; to act as a member of a learned profession, one dedicated to public service; to cooperate with his brother lawyers in supporting the organized bar through the devoting of his time, efforts, and financial support as his professional standing and ability reasonably permit; to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety.

In fact, what the Plaintiff is citing is not a rule and has never been a rule. First, the ABA model rules are not rules in and of themselves. Second, the Code of Professional Responsibility has been abolished in each of the jurisdictions implicated by counsel's representation: Virginia, the District of Columbia, and Wisconsin. Third, what the Plaintiff has cited is *Ethical Consideration* 9-6. As stated in the Preliminary Statement to the ABA Model Code of Professional Responsibility, such considerations are "aspirational" and that "[t]he Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character." What the Plaintiff has cited is at best an ideal, not a rule.

15.     The Plaintiff then uses this non-rule as an excuse to engage in a broadly based ad hominem attack on the undersigned counsel's character in general. It would take a two hundred page motion and a mini-trial to fully rebut the stream of falsehoods the Plaintiff and his declarant write, but the untrustworthiness of the Plaintiff's presentation can be shown with relative ease. In short, the Plaintiff's ad hominem attacks on undersigned counsel as having defamed him is legally irrelevant and false.

A.     **The Plaintiff Falsely Claims that Undersigned Counsel has Defamed Him.**

16.     In the MTDQ and its exhibits, the Plaintiff repeatedly and falsely accused the undersigned counsel of making false accusations against him outside of a courtroom context. In the MTDQ, for instance, the Plaintiff accuses counsel of falsely accusing the Plaintiff of making

9

a rape threat. Meanwhile, Exhibit 4 to the MTDQ is described by the Plaintiff as "Defamatory Tweets[7] from Defendant's Counsel Aaron Walker About Plaintiff Going Back to 2013." MTDQ, Exhibit 4, p. 1. Thus, the Plaintiff is representing to this Court that each and every one of these messages are defamatory. However, each and every message he quoted has a basis in fact—aside from those which are obviously pure jokes not to be read as serious statements of fact. While this Court surely doesn't want to have a "mini-trial" regarding each and every negative statement the undersigned counsel has made about the Plaintiff, there are a few instances where the proof is relatively easy to obtain.

17.     For instance, one of the more bizarre examples of the so-called defamation is found on page 3 of the Plaintiff's Exhibit 4, where the Plaintiff accurately quotes counsel as asking a third party named Roger Shuler, "did you ever denounce your friend Bill Schmalfeldt for seeking a prior restraint on his 'enemies?'" The most ridiculous element of that accusation is that the Plaintiff apparently is asserting that it is defamation to say that he has sought a prior restraint on freedom of expression in a document filed in this case where he is presently seeking a prior restraint on freedom of expression. Even if the accusation that he was seeking a prior restraint was untrue when counsel first said it, it is true now.

18.     Further, it was true when counsel wrote it. This can be determined by examining publicly available court records. The message accusing the Plaintiff of seeking a prior restraint on freedom of expression was written on July 23, 2015. Earlier that month, on July 2, 2015, the instant Plaintiff filed an amended complaint in *Schmalfeldt v. Grady, et al. (I)*, Case No. 1:15-cv-01241-RDB (D. Md. 2015)[8] (Document #13 in that case), one of many cases the Plaintiff has filed alleging harm by the expression of the various defendants. On page 12 of that amended

_____

[7] A "Tweet" is a short message, delivered via Twitter, to the world at large.
[8] This case is the second case styled *Schmalfeldt v. Grady, et al.*

complaint, the same Plaintiff sought "[a]n order enjoining defendants from engaging in further harassment." Since the alleged harassment consisted primarily of writing things the instant Plaintiff didn't like in Internet postings to the world at large, this request amounted to seeking a prior restraint on those defendants' freedom of expression. Nor was this the only example of the instant Plaintiff filing lawsuits in order to try to silence his critics by equitable relief. Thus, what counsel wrote was true at the time it was written.

19. On page 25 of Exhibit 4, the Plaintiff accurately quotes undersigned counsel as accusing the Plaintiff of "racistly" insulting the undersigned counsel's wife. By way of background, undersigned counsel is in an interracial marriage, celebrating more than a decade of matrimony with an Asian-American woman. Meanwhile, the Plaintiff had the following crude conversation about counsel and his wife:



(Curse words censored). Asian American women endure being constantly and falsely stereotyped as prostitutes or mail order brides. The Plaintiff's false assumption that undersigned counsel's wife is a "mail order bride" is but one example of the racist comments he has made about her.

20. Another, more serious example of the instant Plaintiff's propensity for targeting his "enemies'" families becomes relevant when confronting the accusation that the undersigned

counsel falsely accused the Plaintiff of making a rape threat. Specifically, on pages 2-3 of the MTDQ, the Plaintiff writes:

> an individual in Texas ... falsely accused Plaintiff of posting a rape threat on his blog. Even after local police responded to this individual's complaint, examined Plaintiff's computer and found nothing that could remotely be called a threat, Mr. Walker continued to assert on his "Allergic To Bull" blog that Plaintiff had indeed made such a threat. Plaintiff suggested to Mr. Walker that he stop telling this lie or face legal ramifications.

In short, he is accusing an unnamed individual of falsely accusing him of making a "rape threat" and accusing the undersigned counsel of repeating the allegation. Upon information and belief, that unnamed individual is veteran journalist Lee Stranahan and his attached Declaration, along with the Declaration of Aaron Walker, establish that the allegations the undersigned counsel made were well-founded in fact. Specifically, a third party threatened to post Mr. Stranahan's address on the Internet so that someone could go to his house and rape his wife while he was away on business. The Plaintiff defended that conduct by saying that this person didn't actually post the Stranahans' address on the Internet. Then the Plaintiff posted the Stranahans' address on the Internet. The Plaintiff later wrote a vile fantasy in which Mr. Stranahan was raped. The undersigned counsel accurately reported on this threatening conduct and expressed opinions about the Plaintiff's behavior. While the Plaintiff may not agree with undersigned counsel opinion, counsel did not once defame the Plaintiff by falsely claiming he made a rape threat.

21. On page 12 of Exhibit 4, the Plaintiff accurately quotes the undersigned counsel as saying "[a]pparently Schmalfeldt is so demented he forgot he told Judge Grimm that he was demented." That was in response to Mr. Schmalfeldt writing that: "Mr. Hoge might want to consider the impact of calling a man suing him for defamation 'admittedly demented.' I admitted no such thing." The fact that the Plaintiff has admitted to having dementia is verified by records found in PACER. Attached as Exhibit B to this Opposition is a letter the Plaintiff

12

wrote to Judge Grimm of the U.S. District Court for the District of Maryland, in the case currently styled *Kimberlin v. Frey*, Case No. 8:13-cv-03059 (D. Md. 2013)[9] in which he tells Judge Grimm on page 2 the following about the state of his health: "There are other outward and not-quite-so-visible signs of increased degeneration, including the onset of early Parkinson's disease dementia." In other words, the accusation that the Plaintiff has admitted to having dementia is true—based on publicly available court documents.

22. Finally, the most ridiculous example of supposedly defamatory comments by the counsel are those which contain jokes to the effect that the Plaintiff is fat. However, the Plaintiff has made light of his weight himself. For instance, one of his many autobiographical books is entitled *No Doorway Wide Enough: 2000-2010, My Parkinson's Decade.* If there is any doubt that this title is a "fat joke" at the Plaintiff's own expense, the cover of the book has been inserted on the right, and this image is worth a thousand words.[10] The picture on that cover depicts the Plaintiff from behind. The Plaintiff's claim that undersigned counsel defamed the Plaintiff by suggesting he was



---

[9] By way of background, Mr. Schmalfeldt's friend Brett Kimberlin sued the undersigned counsel and around two dozen others for an alleged RICO conspiracy. The case was originally styled *Kimberlin v. National Bloggers Club (I)*, but every claim against every defendant but Patrick Frey was dismissed. Thus it became *Kimberlin v. Frey*. Further, in the two and a half years the case has been pending, Judge Grimm has stepped aside to be replaced by Judge Hazel.
[10] This image taken from the Google Books listing, available at https://books.google.com/books/about/No_Doorway_Wide_Enough.html?id=im-pbwAACAAJ&source=kp_cover&hl=en

fat was obviously made in bad faith.

23. The same is true for all of the remaining allegedly defamatory statements by the undersigned counsel. In each instance, the statements at issue are either 1) an obvious joke not to be taken as a statement of fact, 2) a statement that does not disparage of the Plaintiff,[11] or 3) if it is disparaging and presented as a statement of fact, then the statement was true. The claim that the undersigned counsel wrote anything defamatory about the Plaintiff is, therefore, both irrelevant, and false.

**A.  This Court Should Credit the Declaration of Aaron Walker and Disregard the Declaration of Brett Kimberlin as Non-Credible.**

24. The Plaintiff also attaches the Declaration of Brett Kimberlin as Exhibit 1 to the MTDQ. However, the Declaration is contradicted on every relevant point by the Declaration of Aaron Walker. Thus, it becomes a contest of "he said, he said," but the Plaintiff has presented no evidence why undersigned counsel is not to be trusted, while there is plenty of reason to doubt the word of Mr. Kimberlin.

25. To begin, Mr. Kimberlin is not only a convicted terrorist, but also a convicted perjurer. See *Kimberlin v. Dewalt*, 12 F. Supp. 2d 487, 490 n.6 (D.Md. 1998). That same case also demonstrates a more recent deception. As noted above, the widow DeLong won a judgment against Mr. Kimberlin for over $1 million for her injuries and the wrongful death of her husband. In *DeWalt*, the court described how after being paroled, Mr. Kimberlin had engaged in "deceitful maneuvers to hide his ability to pay" the widow DeLong. *Id.* at 494. The *DeWalt* court goes on to outline how "[d]espite a healthy income" the Plaintiff attempted to avoid paying the woman he wounded and widowed by creating a shell corporation, BKE, Inc., which Mr. Kimberlin

---

[11] For instance, on page 19 of Exhibit 4, undersigned counsel is quoted as saying that Brett Kimberlin was present for a hearing and looked "like a disheveled homeless man." This is a statement only disparaging of Mr. Kimberlin.

maintained 100% control over. *Id.* at 491. Using that corporation, Mr. Kimberlin funneled his income into BKE, Inc.'s bank accounts, and then used corporate money to pay for personal expenses. *Id.* at 493. In addition to all of that, he also committed loan fraud as follows:

> Following the Supreme Court's denial of *certiorari* [in the *DeLong* case], petitioner continued to ignore the outstanding judgment. On May 16, 1996 he submitted a mortgage loan application denying that he had any "outstanding judgments" against him. A $308,000 mortgage loan was approved for the purchase of a house in Bethesda, Maryland.

*Id.* at 491. In short, he did his level best to cheat a woman he wounded and widowed out of a judgment meant to repair some of the damage he had done to her, and he obtained a bank loan without disclosing to them that he owed her that money. Indeed, his conduct was so outrageous that his parole was revoked.[12]

26. Turning to more recent events, in 2013, the Plaintiff sued about two dozen individuals and corporations in *Kimberlin v. National Bloggers Club, et al. (I)*, today referred to as *Kimberlin v. Frey* (hereinafter "*Kimberlin v. NBC (I)*").[13] The Plaintiff evidently intended to sue Twitchy, LLC, then a Colorado media company, but neglected to include the company in the caption.[14] Accordingly, that court did not issue a summons for Twitchy, LLC. Mr. Kimberlin, who has also been convicted of crimes related to document forgery,[15] decided to forge a summons for Twitchy. Attached as Exhibit C is Mr. Kimberlin's "Verified Response to March 4, 2014 Order to Show Cause" filed in that case where he admitted to forging the summons and offered the thin excuse that because he was a pro se plaintiff, he didn't know he shouldn't forge a

---

[12] The *DeWalt* case is primarily about challenging his parole revocation.

[13] This case was previously discussed in footnote 9.

[14] This can be seen by examining, for instance, the First Amended Complaint in *Kimberlin v. National Bloggers Club, et al. (I)*, Case No. 8:13-cv-03059 (D.Md. 2013) which is Docket #2 in that case. The caption of the case does not include Twitchy, LLC, but the list of parties includes Twitchy, LLC. *See* ¶ 25.

[15] *See, e.g., United States v. Kimberlin*, 805 F. 2d 210, 228 (7th Cir. 1986) (detailing how Mr. Kimberlin was caught at a print store with forged documents and attempted to eat the evidence).

court document. Apparently, Mr. Kimberlin thinks that one needs three years of law school to learn not to falsify court documents.

27. That same excuse—that he is just a pro se who didn't know any better—was offered by Mr. Kimberlin in another case, *Kimberlin v. Walker, et al.,* No. 380966V (Md. Mont. Co. Cir. Ct. 2013) *aff'd* in Case Nos. 1553, 2099 and 0365 (Md.App. Feb. 2, 2016). In that case, Mr. Kimberlin submitted two different filings purporting to show that he had performed initial service of process on a Defendant named Ali Akbar. Both filings included a copy of a certified mail "green card." In the first filing, the green card checkbox next to "restricted delivery" was empty. In the second, the green card was marked "restricted delivery."[16] Attached as Exhibit D is a transcript of the April 9, 2014 hearing in *Kimberlin v. Walker, et al.,*[17] in which Mr. Kimberlin admitted to altering the green card, again offering his pro se status as an excuse.

28. Indeed, Mr. Kimberlin has even misstated the truth regarding his own exhibits. For instance, attached as Exhibit E is an Opposition that Mr. Kimberlin filed in *Kimberlin v. NBC (I)*. In paragraph 48, the Plaintiff claims that he received a message (allegedly from a sheriff's office) that read: "LEAVE HIM ALONE. DON'T GO THERE." Mr. Kimberlin stated in that document that he "interpreted this as a threat to leave Mr. Frey alone and not to contact his supervisors." *Id.* However, if one examines the exhibit he presents which allegedly proves the claim—attached as Exhibit F—the entirety of the phrase is "Don't go there." The phrase "leave him alone," was wholly made up. Thus, he changed the capitalization of the message and added an entire sentence to it. Indeed, even after the undersigned counsel pointed out this

---

[16] The difference is significant because under Maryland law, initial service of process can be performed by mail, but only if it is sent by certified mail, restricted delivery, to ensure that the summons and complaint does in fact reach the defendant's hands.

[17] As suggested by the PACER notations above, this transcript was originally filed as an exhibit to a motion filed in *Kimberlin v. NBC (I)*.

discrepancy to Mr. Kimberlin,[18] Mr. Kimberlin continued to repeat this falsehood without making any effort to explain the discrepancy.[19]

29.     Finally, Mr. Kimberlin has misstated the truth about Mr. Walker when the proof he made a false statement is right in front of him.  In the same Opposition attached as Exhibit E above, Mr. Kimberlin writes in ¶ 41 (pp. 31-32) that "Defendant [Aaron] Walker has even imputed in a recent blog post that Plaintiffs daughter is fair game for destruction because of 'corruption of blood.' Exhibit z."  Attached as Exhibit G to this filing is his Exhibit Z, which is an email where he extensively quotes from a piece the undersigned wrote as saying.

> For me, one of the great underappreciated clauses of our Constitution is in the Treason clause.  It says: "but no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attainted."  The second part of that is fairly easy to understand, but what about the first[?]  What the hell do they mean by the corruption of the blood?

> Well, the answer is they are saying you cannot punish the family of a traitor as though they were traitors, too.  It is a talisman of what makes this country great.  Fundamentally we don't care who your ancestors were.  They could have been kings, they could have been beggars.  They could have been heroes and they could have been terrorists.  We don't care.  Because you are judged as you.

> So not knowing this girl, she enjoys the presumption of innocence that belongs to all strangers.  Given the way Brett Kimberlin lies about everything, I have no reason to think he is telling her the truth about what is going on and therefore I have no reason to think she approves of what is actually happening here.  If she knew the truth she would know that her father has been working for years to suppress the truth about his illegal and immoral conduct, and his criminal and immoral conduct, combined with his attempt to silence his critics, has brought all this attention on his family.

---

[18]  *See* "Defendant Walker's Motion to Strike Plaintiff's Oppositions, Notification and Declaration," Docket #54, pp. 4-5 in *Kimberlin v. NBC (I)* (outlining how Mr. Kimberlin's own exhibit contradicts his claims).

[19]  *See* Second Amended Complaint, Docket #135, at ¶ 116 (p. 41) in *Kimberlin v. NBC (I)* (repeating the claim, contradicted by his own exhibit, that he received a message from a sheriff's office saying "LEAVE HIM ALONE.  DON'T GO THERE" even though his exhibit contradicts this claim).

But allegedly a few people have harassed her online, on her facebook and the like. There is always concern, of course, that Brett or his allies might be faking a lot of that behavior <http://patterico.com/2012/06/26/strong-circumstantial-evidence-that-brett-kimberlin-is-astroturfing-the-alleged-threats-against-him-and-his-allies/>. But regardless, if any person draws any negative conclusion about her based on her father, they are not being charitable enough. They are forgetting that even when we are talking about Benedict Arnold, we do not hold the child responsible for the conduct of the father.[20]

In short, the undersigned wrote that Mr. Kimberlin's self-described daughter should not suffer because of Mr. Kimberlin's misconduct because in America we reject the principle of the corruption of the blood. Mr. Kimberlin's claim that undersigned counsel said that one should target her under the principle of the Corruption of the Blood is knowingly false. Further, just as with the alleged message from the sheriff's office, this discrepancy was pointed out to Mr. Kimberlin,[21] and Mr. Kimberlin has repeated the false remark without any effort to explain the discrepancy.[22]

30.     With most ordinary people, it is reasonable to assume that if they make an accusation about someone that there must be *some* truth to it—that it cannot be made up from whole cloth. In Mr. Kimberlin's case, it is not safe to make that assumption. These are strong words, but they are justified by the forgoing. He will misstate the truth even when the truth is only a few page turns away. Further, he has a track record of misstating the truth about what the undersigned has said and done.

---

[20] All of this is a mostly accurate cut and paste from a piece the undersigned wrote called "EXCLUSIVE: My Motion to Dismiss Convicted Terrorist Brett Kimberlin's RICO Suit" available at http://allergic2bull.blogspot.com/2013/12/exclusive-my-motion-to-dismiss.html. The only relevant difference is that whenever the original had a link to a webpage, the Plaintiff had somehow pasted a copy of that link right after, surrounded by arrow points ("<" and ">"). Otherwise it was the same text that the undersigned wrote.

[21] See "Defendant Hoge's Reply to Plaintiff's Oppositions," Docket #56, pp. 16-17 in *Kimberlin v. NBC (I)* (outlining how Mr. Kimberlin's own exhibit contradicts his claims).

[22] See Second Amended Complaint, Docket #135, at ¶ 249 (p. 75) in *Kimberlin v. NBC (I)* (repeating the claim, contradicted by his own exhibit, that the undersigned counsel believed Mr. Kimberlin's daughter should be targeted because of the corruption of the blood).

18

31.     The Declaration of Aaron Walker contradicts Mr. Kimberlin's declaration in nearly every particular, and because Mr. Kimberlin has no credibility, his Declaration should be discounted in its entirety.  In addition to the difficulties of credibility, Mr. Kimberlin testifies as to the circumstances of undersigned counsel's termination from a job, an event he did not witness.  He also includes a copy of an email that was supposed to remain confidential under a court order in the Circuit Court of Prince William County, Virginia,[23] and, in any case, since it is unsworn, it is hearsay.

32.     The truth is that the undersigned is a graduate of Yale Law School and an attorney in good standing in two jurisdictions who has been admitted to practice before three federal courts, including this Court.  The undersigned counsel has never been disciplined by a bar association, and he has never committed any crime worse than a traffic infraction.  Further, he has achieved all of this despite his hidden disabilities and the prejudice and discrimination they inspired.  To the extent that the undersigned counsel's record could be "put on trial" in this case, he gladly would measure his life and character against that of the Plaintiff or Mr. Kimberlin.  The undersigned counsel's worst "offense" would seem to be engaging in off-color humor outside of the courthouse.

33.     In summary, the Plaintiff has moved to disqualify the undersigned counsel based on a non-rule and without evidence that counsel has actually fallen short of the aspirations of his profession.  Further, as noted previously in this filing, the Plaintiff has failed to properly invoke the rule against attorneys serving when they might be witnesses, and has falsely accused the undersigned counsel of lying in court documents.   Accordingly, the Plaintiff's motion to disqualify counsel has no basis in law or fact.  It is frivolous, and it should be denied.

---

[23] A copy of this order is attached as Exhibit H.

**II.**
**THE PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL SHOULD BE STRICKEN**

34.     In the prior pages, the Defendants have demonstrated that there is no basis in law to disqualify the undersigned as counsel.  The Plaintiff has cited rules that don't apply or don't exist and made false accusations of dishonesty in order to argue for disqualification.  What is manifestly obvious from the forgoing is that the Plaintiff is not only wrong, but also that he is arguing in bad faith.

35.     As noted in *Environ Products, Inc. v. Total Containment, Inc.*, 951 F.Supp. 57, 59-60 (E.D. Pa., 1996), "[m]otions to strike 'usually will be denied unless the allegations have no possible relation to the controversy *and* may cause prejudice to one of the parties.' Wright & Miller, § 1382 at 685-90 (emphasis added)."  This improper and frivolous motion precisely fits the exception to the rule.  The Plaintiff's MTDQ has no possible relationship to the case, and it is plainly designed to cause prejudice to Defendants Palmer and Johnson by their association with counsel.  *See, e.g. Raghavendra v. Trs. of Columbia Univ.*, 686 F. Supp.2d 332, 336 (S.D.N.Y., 2010) (striking a large number of motions, including a motion to disqualify counsel, because they were "replete with *ad hominem* remarks and irrelevant materials"); *Jorgensen v. Prudential Ins. Co. of America*, 852 F.Supp. 255, 260 (D.N.J., 1994) (striking a voluntary dismissal because it "was filed for an improper purpose"); and *Fleming v. Parnell*, Case No. C13-5062 BHS at 8, (W.D. Wash. April 17, 2014) (granting a motion to strike where information related to confidential settlement negotiations were included for an "improper purpose").  The court in *Alvarado Morales v. Digital Equipment Corp.*, 669 F.Supp. 1173, 1187 (D.P.R., 1987) reminds us that "[t]he federal courts do not provide a forum for mudslinging, name calling and 'privileged' defamation."  Toward this end, "a court has inherent power to strike scandalous matter from any document submitted to it."  *In the Matter of REA Holding Corp.*, 447 F.Supp.

20

167, 171 (S.D.N.Y., 1978). The Defendants respectfully request that this Court exercise that power and strike the Plaintiff's MTDQ.

36.     Further, even if this Court was not convinced that the entirety of this motion should be stricken, at the very least the Plaintiff's Exhibit 3 should be stricken, because the entirety of that exhibit consists of documents obtained in a case where a protective order had been put into place as noted *supra* page 19.

WHEREFORE, this Court should deny the Plaintiff's motion to disqualify counsel, strike the motion in its entirety (or at the minimum, Plaintiff's Exhibit 3), and provide all other relief that is just and equitable.

Tuesday, March 8, 2016                        Respectfully submitted,

   s/ *Aaron J. Walker*
Aaron J. Walker, Esq.
*Attorney for Defendants Johnson and Palmer*
Va Bar# 48882
DC Bar #481668
P.O. Box 3075
Manassas, Virginia  20108
(703) 216-0455
(No fax)
AaronJW1972@gmail.com

21

## VERIFICATION

I, Aaron Walker, state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that all exhibits are true and correct copies of the originals.

Executed on Tuesday, March 8, 2016.

   _s/ Aaron J. Walker_ _____


# CIVIL L. R. 7(A)(2) CERTIFICATION

In compliance with Civil L. R. 7(a)(2), I certify that no separate supporting memorandum or other supporting papers except those already attached to this opposition will be filed in relation to this opposition.


## CERTIFICATE OF SERVICE

I certify that on the 8th day of March, 2016, I served copies of this document on William Schmalfeldt by email by consent.

   _s/ Aaron J. Walker_ _____

Case 2:15-cv-01516-NJ   Filed 03/08/16   Page 22 of 22   Document 19