UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

WILLIAM SCHMALFELDT,

        Plaintiff,

   v.

SARAH PALMER, ET AL.,

        Defendants.

Case No. 2:15-cv-01516-NJ

**REPLY TO THE PLAINTIFF'S NON-OPPOSITION TO THE JOINT MOTION FOR LEAVE TO FILE AN IMMEDIATE MOTION FOR SANCTIONS AND TO THE PLAINTIFF'S OPPOSITION TO THE JOINT MOTION TO STRIKE**

NOW COME Defendants Sarah Palmer and Eric Johnson, by and through their counsel Aaron J. Walker, Esq. in the above-styled case for the sole purpose of challenging personal and subject matter jurisdiction and service of process and without waiving any rights of jurisdiction, notice, process, service of process, joinder, or venue. They hereby jointly file this "Reply to the Plaintiff's Non-Opposition to the Joint Motion for Leave to File an Immediate Motion for Sanctions and to the Plaintiff's Opposition to the Joint Motion to Strike" and state the following:

    1.    On March 14, 2016, the Plaintiff filed a "Reply to Defendants' Joint Opposition to the Plaintiff's Motion to Disqualify Counsel (Docket #19) and Motion to Strike the Same" (Docket #21) (hereinafter "Opposition to MTS") and a "Reply to Defendants' Joint Motion For Leave To File an Immediate Motion for Sanctions Under Rule 11" (Docket #22) (hereinafter "Non-Opposition to MFL"). In each of these documents, the Plaintiff demonstrates abundantly that 1) the motion to strike is justified, 2) sanctions are justified and 3) that the sanctions are needed on an expedited basis.

# I.
## THE PLAINTIFF HAS AGREED TO THE DEFENDANTS' MOTION FOR LEAVE TO FILE AN IMMEDIATE MOTION FOR SANCTIONS

2. The most striking thing about the Plaintiff's Non-Opposition to MFL is that the Plaintiff takes six pages (in 10 point font) to consent to the relief that the Defendants have sought—leave to file an immediate motion for sanctions—acknowledging in paragraph 6 that "Plaintiff has no problem with this court entertaining yet another frivolous motion by Mr. Walker by granting leave to file an immediate motion for sanctions."

3. The Plaintiff's consent implies two things. First, this means that there is no opposition to the Defendants' motion for leave and, therefore, that relief should be granted immediately. Second, it means that practically every other word in the Non-Opposition to MFL is superfluous and, thus, by definition suspect. Once the Plaintiff has consented to the relief, why would there be any need for him to say anything more in his filing? The Plaintiff's improper motive is revealed by Plaintiff's insertion of vituperative and scurrilous ad hominem attacks against undersigned counsel in what for all intents and purposes was a non-opposition to a motion.

# II.
## THE PLAINTIFF'S NON-OPPOSITION CONTAINS HIGHLY IMPROPER AD HOMINEM ATTACKS AGAINST DEFENSE COUNSEL

4. The primary reason why the Defendants have sought to strike the motion to disqualify counsel (Docket #18) (hereinafter the "MTDQ") is that in that motion the Plaintiff has engaged in a virtually nonstop stream of improper (and false) ad hominem attacks on undersigned counsel, under the pretense that they served a proper purpose. For instance, in Non-Opposition to MFL ¶4, the Plaintiff writes that

> Plaintiff is not surprised that Mr. Walker misunderstands the reason for Plaintiff filing the MTDQ. It has nothing to do with prejudicing the Court against Mr. Walker, *whose less-*

> *than-stellar legal career is highlighted by the fact that he was fired from his last position as an attorney in 2012 and he has yet to find employment in the field of law.*

(Emphasis added). Despite the Plaintiff's assertion that he is not seeking to prejudice undersigned counsel in the eyes of this Court, he cannot resist the urge to gratuitously (and falsely) insult undersigned counsel. The Plaintiff claims that "Plaintiff's purpose is to avoid the muddying of the waters," *id.*, but ever since the Defendants made their limited appearance in this case he has done nothing but seek to muddy the waters. If one accepted for the sake of argument that undersigned counsel's legal career has been "less-than-stellar" does that mean this Court has subject matter jurisdiction in this matter even though the Plaintiff can't establish where all of the defendants are domiciled as required by Seventh Circuit precedent?[1] Further, even if it was taken as true that undersigned counsel "has yet to find employment" since he was fired from a job in 2012, would that mean this Court now has personal jurisdiction over the Defendants even though they have never been properly served? *Id.*, p. 14. Likewise, does the Plaintiff's evidence-free proclamation that undersigned counsel is a "disgraced and unemployable attorney," Non-Opposition to MFL, p. 5, mean that this Court can exercise personal jurisdiction over the Defendants simply because they wrote about the Plaintiff on the Internet or because Defendant Johnson made a pair of non-defamatory phone calls into Wisconsin to a third party? Memorandum, pp. 5-14. Certainly, the Plaintiff's false allegations pertaining to the Peace Order undersigned counsel once sought against the Plaintiff, Opposition to MFL ¶ 5, can't possibly relate to whether this Court should allow the Defendants to file an immediate motion for Rule 11 sanctions—what the Plaintiff's filing is supposed to be about—given that the Plaintiff has consented to the relief sought, except perhaps in the sense that it shows this Court why it should

---

[1] Memorandum in Support of the Joint Motion to Dismiss and Opposition to Leave to Amend Filed by Defendants Sarah Palmer and Eric Johnson ("Memorandum") (Docket #12), pp. 2-3.

intervene to prevent future misconduct by the Plaintiff.

5. The lowest example of the Plaintiff's irrelevant ad hominem attacks on undersigned counsel comes in paragraph 8 of the Non-Opposition to MFL. There the Plaintiff makes a too-clever-by-half attempt to appeal to anti-disability bigotry by bringing out the fact that counsel received accommodations on the LSAT. Of what possible relevance is this fact? The Plaintiff appears to think that reasonable accommodations or modifications are provided as some kind of special gift to disabled people so they can achieve what they don't deserve. For instance, when one website announced that a motion to dismiss had been filed in this case,[2] the Plaintiff expressed that sentiment when one commenter wrote the following about counsel:

> Law school is not a cake walk. It's not easy. Tons of reading, analysis and memorization.
>
> Aaron Walker made it through one of the top three law schools in the country, Yale, suffering from severe learning disabilities, including dyslexia. That would be like competing at the elite level in a running sport, with a cast on your leg. He deserves respect for that accomplishment. When people without those disabilities, who did not bother to further their education even though they had scholarship opportunities such as the GI Bill, make fun of him, they're projecting. They wasted their abilities and talents. Aaron did not.

The Plaintiff[3] then responded to that comment as follows: "Except for Aaron who had 'special accommodations' when he took his bar exam. THANKS, DADDY!" However, contrary to the Plaintiff's bigoted assertion, the purpose of providing reasonable accommodations or modifications is to ensure that only the relevant skills are measured. Thaddeus Stevens, the "Father of the Fourteenth Amendment"[4] and himself a disabled man,[5] once said that it was his

---

[2] William Hoge, "No Default in LOLsuit VI: The Undiscovered Krendler," HOGEWASH, March 1, 2016, available at http://hogewash.com/2016/03/01/no-default-in-lolsuit-vi-the-undiscovered-krendler/.

[3] Or someone writing under his name, using his IP address, and using the same email address he has reported to this Court as his own.

[4] Fawn Brodie, THADDEUS STEVENS: SCOURGE OF THE SOUTH 10 (1959).

4

dream that under the equal protection clause that "no distinction would be tolerated in this purified Republic but what arose from merit and conduct."[6] The reasonable accommodation/modification requirement in the Americans with Disabilities Act[7] ensures that disabled persons will only face discrimination based on *relevant* measures of merit. For instance, in *Bartlett v. N.Y.S. Bd. of Law Examiners*, 970 F. Supp. 1094 (S.D.N.Y. 1997), future Supreme Court Justice Sonia Sotomayor found that a lawyer was not required to read by sight, reasoning with respect to admission to the bar that

> If the bar examination were intended to test a person's visual ability to read or a person's ability to perform under time pressure, there would be no blind attorneys. Thankfully, this is very far from the reality of modern law practice.

Therefore, the court determined that a dyslexic—like undersigned counsel—was entitled to double time during her bar examination in order to prevent discrimination against her based on disabilities unrelated to her qualification to enter the practice of law.

6. At the risk of further scandalizing the Plaintiff, after undersigned counsel dropped out of high school (because he faced discrimination before the ADA went into effect), he obtained his GED with greater accommodations than provided for on the LSAT. He then took the SAT and the ACT exams with greater accommodations than provided for on the LSAT. He then graduated *summa cum laude* from the University of North Texas ("UNT"), also with greater accommodations than provided for on the LSAT. Then he took the LSAT under court-ordered accommodations and applied to many schools, including Yale Law School. Yale apparently decided that his accommodations did not negate his achievements and offered him admission and accommodations greater than those provided for on the LSAT. After graduating from Yale, two

---

[5] Stevens had a clubfoot which made it difficult for him to walk. *See, e.g., id*. at 23
[6] Michael D. Davis and Hunter R. Clark, THURGOOD MARSHALL: WARRIOR AT THE BAR REBEL ON THE BENCH 27 (updated and rev. ed., 1994)
[7] 42 U.S.C. § 12101, *et seq.*

5

jurisdictions (D.C. and Virginia) decided that undersigned counsel's disabilities were sufficiently irrelevant that they provided greater accommodations than he received during the LSAT when taking their relevant examinations. For most people, undersigned counsel's story of going from being a high school drop-out to a Yale-educated attorney within seven years would be considered a great success story for the ADA and a powerful testimonial as to why this anti-discrimination law was so desperately needed. The Plaintiff, by contrast, seems to believe this should be a source of shame,[8] and that it renders counsel "unemployable."

7. Further, there can be no question that the Plaintiff's purpose in placing this information before the Court was to prejudice undersigned counsel before this Court, given the absence of any valid reason for bringing it up. The Plaintiff's proffered justification is a specious claim that undersigned counsel is a hypocrite for discussing the possibility that the Plaintiff's admitted dementia was driving the Plaintiff's misconduct, as follows:

> In a shameless and gutless attempt to prejudice this Court as to the Plaintiff's ability to manage his own litigation, Mr. Walker stoops to the lowest level this writer has ever seen in his brief career as a pro se litigant to suggest that Plaintiff's conduct is affected by "early Parkinson's disease dementia." ... It is particularly shameful on Mr. Walker's part as he used his own documented learning disabilities to force the Law School Admission Council to provide him with special accommodations in order to take his LSAT test. (Exhibit 1)

There are at least four things wrong with the Plaintiff's reasoning, here. First, it mischaracterizes the argument that Defendants actually made and the reason why the Plaintiff's dementia was mentioned at all in the Motion for Leave to File an Immediate Motion for Sanctions Under Rule

---

[8] The Plaintiff—or someone posting on his Twitter account—wrote the following at about three in the morning, on March 13, 2016:

> And I can't wait to see Walker's response to the shaming I gave him. He wants to talk disabilities? We'll talk disabilities.

Clearly, the Plaintiff thinks counsel should be ashamed to have learning disabilities.

6

11 (Docket #20) (hereinafter "Motion for Leave"). The purpose of discussing his dementia was to preempt an argument that the Plaintiff had made in the past: that his misconduct should be excused because it is caused by his condition. Second, the Plaintiff inappropriately treats these filings as a matter between undersigned counsel and the Plaintiff, instead of it being the Defendants' motion. Third, the Plaintiff seems to believe that because undersigned counsel is disabled he must hold certain views—a belief that is itself bigoted. Counsel is not required to argue a certain way because he is disabled any more than a Hispanic or female attorney is required to argue a certain way based on his or her ethnicity or gender.[9] Finally, even if the Motion for Leave reflected undersigned counsel's personal opinions rather than those of an advocate, there is no hypocrisy there. Recognizing that one disabled person deserves reasonable accommodations in one circumstance does not oblige a person to believe that all accommodations (or modifications) are reasonable, under all circumstances. If the Plaintiff is saying that his dementia should excuse him from the strictures of Rule 11, that is not reasonable.

8. If this Court is having difficulty figuring out what any of this has to do with a motion for leave to file an immediate Rule 11 motion on the Plaintiff consent, that is because it is all irrelevant to the issue at hand. Having no legitimate reason to discuss these matters, the logical assumption is that the Plaintiff chose to do so for improper reasons, giving further

---

[9] Justice Sandra Day O'Connor rejected the idea that there are gendered arguments as follows:

> Do women judges decide cases differently by virtue of being women? I would echo the answer of my colleague, Justice Jeanne Coyne of the Supreme Court of Oklahoma, who responded that "a wise old man and a wise old woman reach the same conclusion."

Sandra Day O'Connor, *Portia's Progress*, 66 N.Y.U. L. REV. 1546, 1558 (Dec., 1991). While the role of advocate and judge are very different in our system, the Defendants would argue equally that a wise disabled attorney will make the same arguments on behalf of his or her clients as a wise attorney who has no disabilities.

7

justification for sanctions and for this Court to intervene sooner rather than later.

## III.
## THE PLAINTIFF'S OPPOSITION TO THE MOTION TO STRIKE DEMONSTRATES THAT THE MOTION TO DISQUALIFY HAS NO LEGAL BASIS

9. Fed. R. Civ. P. 11(b)(2) states that

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Further, as is obvious from the plain text of this rule, "[t]he leeway afforded to pro se plaintiffs does not shield them from Rule 11 sanctions." *US ex rel. Verdone v. Cir. Court for Taylor Cty.*, 851 F. Supp. 345, 352 (W.D. Wis., 1993). In his Opposition to the Defendants' Motion to Strike, the Plaintiff has demonstrated that he has not exercised any diligence at all, much less appropriate diligence when deciding whether his legal contentions have merit.

10. First, the Plaintiff has withdrawn his threats to call undersigned counsel as a witness or to name him as a defendant, which didn't apply to this situation anyway. While it is good for the Plaintiff to have done so, it makes his decision to assert the claim in the first place and his decision not to withdraw it sooner completely suspect.

11. Second, the Plaintiff admits in paragraph 12 of his Opposition to MTS that "Mr. Walker is correct in saying that Plaintiff did not cite any law or rule that says an attorney making a false statement (or two) in a case is reason for disqualification." Having said all that, he then simply reasserts the D.C. Bar's Rules of Professional Conduct as supporting his position. However, those rules are not rules of this Court, and they nowhere state that a single alleged misrepresentation (or even two) disqualifies an attorney from continuing in a case or even as a

8

lawyer.[10] So, the Plaintiff has asserted that undersigned counsel should be disqualified by what is apparent to any reasonable person as being two non-misrepresentations[11] under a rule that is not actually binding on this Court, and does not actually say what the Plaintiff claims it says.

12. The Plaintiff could not better draw attention to his error by arguing that the Supreme Court of Indiana and the Indiana jury that found Mr. Kimberlin responsible for the death of Carl DeLong were wrong,[12] writing that Carl DeLong "left suicide notes, none of which named the bombing or Kimberlin as the reason" for killing himself. Opposition to MTS, p. 3.[13] Contrary to the Plaintiff's callous misrepresentation, the jury considered more than just the contents of the suicide notes (which didn't explain why DeLong was killing himself one way or the other). *See Kimberlin v. DeLong*, 613 NE 2d 46, 50-52 (Ind. 2nd Dist. 1993), *rev'd* 637 N.E.2d 121 (Ind. Sup. Ct. 1994). The Plaintiff then wants this Court to accept his biased interpretation of only *some* of the evidence as "The Truth" and find that undersigned counsel deceived this Court by relying in good faith on the finding of the jury. To restate the Plaintiff's argument is to refute it.

13. Finally, the Plaintiff admits "[a]s Plaintiff is not a lawyer, he is not totally aware of what effect the [ABA Model Code of Professional Responsibility] ha[s] on attorneys."

---

[10] That is not to say that an attorney or pro-se litigant may engage in actual, knowing misrepresentations of fact, just that even two alleged falsehoods are not grounds for disqualification.

[11] The Plaintiff attempts to argue that bombing a town for nearly a week is not terrorism, despite his proclamation that "[a]s Plaintiff is not an attorney but is acting pro se, he understands words to mean what they mean in the common lexicon." Non-Opposition to MFL ¶ 3. He does this primarily by a straw man argument, negating an argument that the Defendants did not make, while ignoring the argument that they did make.

[12] The Plaintiff bizarrely claims in paragraph 25 of the Opposition to MTS that "Walker goes on to re-litigate the 'wrongful death' lawsuit filed by the widow of the man who made the choice to take his own life five years after his injury." It is not undersigned counsel or the Defendants who are arguing that the settled decision of the Indiana courts should be disregarded.

[13] The Plaintiff's paragraphs are only sporadically numbered. Where they are numbered, his filings will be cited by paragraph number. Otherwise, page numbers will be used.

Opposition to MTS, p. 4.  However, Rule 11(b)(2) requires the Plaintiff to be aware, and it is hard to imagine a clearer confession that he has violated that rule.  The answer that the Plaintiff didn't bother in exercising due diligence to learn is that the Model Code of *Professional Responsibility* was adopted to a degree in all three relevant jurisdictions (Wisconsin, Virginia, and Washington, D.C.) and has been abolished in all three in favor of variations on the ABA Model Rules of *Professional Conduct*.  Further, even when the ABA Model Code of Professional Responsibility had legal effect, the "ethical consideration" that the Plaintiff cited did not.

14.     In summary, the Plaintiff has withdrawn one alleged basis for disqualification, he has misstated the rule he asserts as a second basis, he has attempted to claim it is actually a lie to say that bombing a town for a week is terrorism while also claiming that it was deceptive to credit a jury's decision that was never overturned, and he has admitted he had no idea if his argument based on the ABA Model Code of Professional Responsibility had any legal basis.  This conduct completely bears out the Defendants' contention that the Plaintiff has violated Rule 11(b)(2), justifying sanctions and the motion to strike.  Absent any valid legal basis allowing the Plaintiff to raise these issues, his MTDQ must as a matter of logic present an improper ad hominem attack on counsel.

### IV.
### THE PLAINTIFF'S MOTION TO DISQUALIFY HAS NO FACTUAL BASIS

15.     In paragraph 17 of the Plaintiff's Opposition to MTS, the Plaintiff makes the remarkable admission that he has misled this Court, writing:

> Walker makes light of Exhibit 4 of Plaintiff's MOTD. It was not presented with the intent that each and every Twitter tweet be deemed defamatory, rather it was submitted to display the overall defamatory nature of Walker's Twitter usage when referring to Plaintiff by name.

This from a Plaintiff who also wrote "[a]s Plaintiff is not an attorney but is acting pro se, he

10

understands words to mean what they mean in the common lexicon." Non-Opposition to MFL ¶ 3. Thus, the Plaintiff follows the plain meaning of words, except when he doesn't. Whatever the Plaintiff meant, this is what the first page of his Exhibit 4 said: "Exhibit 4—Defamatory Tweets from Defendant's [sic] Counsel Aaron Walker about Plaintiff Going Back to 2013." Docket #18-4, p. 1. Whatever his subjective intent was, his actual representation to this Court was that all of these tweets were 1) about the Plaintiff and 2) defamatory, and they were not.

16. Accordingly, the Plaintiff does not even attempt to dispute the claim that he misstated the truth when he accused undersigned counsel of defaming the Plaintiff by asking a third party "did you ever denounce your friend Bill Schmalfeldt for seeking a prior restraint on his 'enemies?'" In any case, the claim that the instant Plaintiff has previously sought a prior restraint on freedom of expression is irrefutable.

17. Meanwhile, the Plaintiff's attempt to prove that his comment about counsel's wife wasn't racist also fails. The Plaintiff writes in his defense that "so-called mail order brides come from all over the world, from all races, colors, creeds." Opposition to MTS ¶ 19. That is true as far as it goes, but it doesn't explain why the Plaintiff assumed that *this Asian-American woman* that he admittedly never met was a mail-order bride. It is no different in principle than if a person assumed that a black teenager is a criminal or that a Hispanic person is an illegal immigrant, without any supporting evidence. Having failed to explain why he drew this negative conclusion, the natural inference is that it was based on the only thing the Plaintiff did know about counsel's wife: her "race."

18. Turning to his menacing conduct toward the Stranahan family, the Plaintiff's only attempt to address that issue comes in his claim that the police cleared him. Opposition to MTS ¶ 20. Even if that were true, that would only be hearsay as to the ultimate issue. He curiously

11

doesn't deny writing anything attributed to him in Mr. Stranahan's Declaration.

19. Next, with a surprising degree of chutzpah, the Plaintiff claims that "Mr. Walker sinks even lower when he raises Plaintiff's alleged 'Parkinson's disease dementia.'" Opposition to MTS ¶ 21. The Defendants note that if the Plaintiff didn't want to discuss whether he had dementia, he shouldn't have falsely accused undersigned counsel of lying about it. In any case, if one "understands words to mean what they mean in the common lexicon," Non-Opposition to MFL ¶ 3, then the definition of "demented" found on the Merriam-Webster website (*see* http://www.merriam-webster.com/dictionary/demented) which includes "suffering from or exhibiting cognitive dementia" should settle the matter. Truth is a defense to defamation.

20. Likewise, the Plaintiff's attempts to rehabilitate Mr. Kimberlin's declaration also fail. First, the Plaintiff complains that undersigned counsel is discussing Brett Kimberlin too much, even as the Plaintiff has worked to insert Mr. Kimberlin into this case at every turn. The Plaintiff first falsely alleged in his original complaint—rebutted appropriately by the Declaration of Defendant Johnson (see Docket #12-2)—that Defendant Johnson called the Plaintiff a terrorist merely because he was associated with Mr. Kimberlin. (Docket #1, ¶ 29) Then, the Plaintiff presented a perjurious declaration from Mr. Kimberlin (that went well beyond any question validly before this Court), inserting Mr. Kimberlin even further into this case and requiring undersigned counsel to defend himself from Mr. Kimberlin's false accusations. Now, the Plaintiff complains that counsel has discussed Mr. Kimberlin too much? It's hard to think of a better example of chutzpah outside of the proverbial criminal defendant who murders his parents and pleads for mercy because he is an orphan.

21. The Plaintiff claims that undersigned counsel wishes to "re-litigate his years-long courtroom battle with non-party Brett Kimberlin." Opposition to MTS ¶ 1. This is a strange

12

accusation for two reasons. First, Mr. Kimberlin has lost four attempts to criminalize counsel's expression and peaceable representation of clients and has lost three ordinary civil suits[14] and two Peace Order actions. Why would counsel wish to re-litigate these victories?

22. Second, it seems that the Plaintiff is more interested in re-litigating a matter twice closed by estoppel:[15] whether counsel assaulted Mr. Kimberlin. To attempt to rebut counsel's evidence on this matter and the determination of two courts, the Plaintiff offers hearsay within hearsay by an unidentified writer,[16] hearsay and hearsay within hearsay by another unidentified writer,[17] and the unsworn commentary of third unidentified writer.[18] None of these accounts are admissible, let alone sufficient to rebut undersigned counsel's testimony.

23. The Plaintiff also tries to claim that Mr. Kimberlin's account deserves "equal weight" with undersigned counsel primarily by repeating the following seven times:

> Statements made about Kimberlin in Walker's Opposition, paragraphs 26-32, and seven of the exhibits attached to Walker's opposition are not germane to this case and by right should be ignored by the Court.

*See* Opposition to MTS ¶¶ 26-32 (repeating that text over and over again). Put aside the fact that the Plaintiff's entire motion to disqualify counsel is not germane to this case and by right should be denied. Put aside the fact that the Plaintiff doesn't specify which seven exhibits he is objecting to (there are eleven in total). Apart from those absurdities, the paragraphs the Plaintiff asks this Court to ignore pertain to topics the Plaintiff has reasonably placed into contention: Mr. Kimberlin's credibility, undersigned counsel's character, Mr. Kimberlin's attempt to testify

---

[14] The Plaintiff falsely states that undersigned counsel is a "a co-defendant in Kimberlin v. National Bloggers Club, et al., [sic] in the Montgomery County Circuit Court, Case #40368V [sic]." Apparently, the Plaintiff is unaware that undersigned counsel recently won dismissal and/or summary judgment on all counts and therefore is no longer a defendant in that case.
[15] See Declaration of Aaron J. Walker (Docket #19-9) ¶¶ 14-16.
[16] Exhibit 3 to Non-Opposition to MFL (Docket #22-3).
[17] Exhibit 5 to Non-Opposition to MFL (Docket #22-5).
[18] Exhibit 7 to Non-Opposition to MFL (Docket #22-7).

13

about matters of which he has no personal knowledge, and Mr. Kimberlin's open violation of a court order requiring confidentiality.

24. Specifically, the Plaintiff is asking this Court to ignore that Mr. Kimberlin is not only a convicted perjurer, Opposition to Motion to Disqualify (Docket #19) ¶ 25, who engaged in deception in an attempt to deprive compensation to a woman that he widowed, *id.*, but also that he has twice admitted to forging documents, *id.* at ¶ 26-27, has been convicted of crimes related to document forgery, *id.* at ¶ 26, and twice misstated the truth when the evidence of his falsehoods was presented in his own exhibits, *id.* at ¶ 28-29. The Plaintiff also believes it is not "germane" to these proceedings that Mr. Kimberlin is testifying to matters he did not witness and that Mr. Kimberlin has violated another court's confidentiality order to provide this Court with one of his hearsay documents.[19] Finally, the Plaintiff also wishes this Court to ignore evidence of undersigned counsel's character. However, the Plaintiff has not explained why any of those considerations should be ignored when determining how much weight, if any, to place on Mr. Kimberlin's declaration. The Plaintiff has presented absolutely no reason why this Court should believe a word Mr. Kimberlin has written.

25. Finally, the Plaintiff continues to assert that calling him "fat" is somehow defamatory. The Defendants will not belabor this point, but truth is a defense. Likewise, the Plaintiff falsely claims that undersigned counsel "claims that the cover of Plaintiff's book, **'No Doorway Wide Enough'** [sic] gives him and others all the justification they need to make repeated sport of Plaintiff being overweight." Opposition to MTS ¶ 22. In actuality it is the First Amendment that gives people the right to call him "fat," and nothing better demonstrates the

---

[19] In another example of the Plaintiff's chutzpah, the Plaintiff argues that the documents in question were published on the Internet. He fails to tell this Court that he was the first to publish them on the Internet after (upon information and belief) Mr. Kimberlin leaked them to the Plaintiff or leaked them to an intermediary or intermediaries who passed them on to the Plaintiff.

14

Plaintiff's inflated sense of entitlement than the fact that he thinks that no one has the right to call an overweight person "fat" in speech that occurs outside of this Court.[20] Likewise, the Plaintiff is free to make racist comments about counsel's wife, or to declare that he doesn't want "cripples" like counsel in the legal profession, just as counsel is free to disagree with all of those sentiments. There is no right not to be offended or to be free of criticism or mockery.

26. For all of these reasons, the Plaintiff has failed to show his motion to disqualify has any factual basis, in violation of Rule 11(b)(3) and (4).

## **CONCLUSION**

27. At a moment where the wisest course of action would have been to withdraw the motion to disqualify, the Plaintiff has doubled down. In doing so, the Plaintiff has further demonstrated why his motion to disqualify is sanctionable and why it should be stricken. He has engaged in further irrelevant ad hominem attacks against undersigned counsel, and he has failed to demonstrate that any of his arguments for disqualification have any factual or legal basis. The Plaintiff has even confessed that he doesn't know how or if an alleged rule applied on at least one point. Further, the Plaintiff has stated that he does not oppose the Defendants' motion for leave to file an immediate motion to sanction the Plaintiff, but he included six pages of irrelevant, scurrilous material seeking to prejudice the undersigned in the eyes of the Court in the same non-opposition. Accordingly, the Plaintiff's motion to disqualify should be stricken, and the Defendants' unopposed motion for leave to file an immediate motion for sanctions should be granted.

WHEREFORE, this Court should strike the motion to disqualify (Docket #18). allow the

---

[20] On the other hand, a court can rightfully limit expression before this Court, prohibiting and punishing the Plaintiff's ad hominem attacks on counsel.

15

Defendants to file a Rule 11 motion for sanctions without the ordinary twenty-one day "safe harbor" period allowed in Rule 11(c)(2) and provide all other relief that is just and equitable.

Wednesday, March 16, 2016                      Respectfully submitted,

                                               s/ *Aaron J. Walker*
                                               Aaron J. Walker, Esq.
                                               *Attorney for Defendants Johnson and Palmer*
                                               Va Bar# 48882
                                               DC Bar #481668
                                               P.O. Box 3075
                                               Manassas, Virginia  20108
                                               (703) 216-0455`
                                               (No fax)
                                               AaronJW1972@gmail.com

## **VERIFICATION**

I, Aaron Walker, state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Wednesday, March 16, 2016.

                                               s/ *Aaron J. Walker*

## **CIVIL L. R. 7(A)(2) CERTIFICATION**

In compliance with Civil L. R. 7(a)(2), I certify that no separate supporting memorandum or other supporting papers will be filed in relation to this reply.

16

**CERTIFICATE OF SERVICE**

     I certify that on the 16th day of March, 2016, I served copies of this document on William Schmalfeldt by email by his consent.

                                                    *s/ Aaron J. Walker*