**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

---

**WILLIAM SCHMALFELDT,**

          **Plaintiff,**

   **v.**

**ERIC P. JOHNSON, SARAH PALMER,**
**and JOHN AND JANE DOES,**

          **Defendants.**

**Case No. 2:15-cv-01516-NJ**

---

**MEMORANDUM OF LAW IN SUPPORT OF THE JOINT SUPPLEMENTAL MOTION TO DISMISS FILED BY DEFENDANTS SARAH PALMER AND ERIC JOHNSON**

---

## INTRODUCTION

The original motion to dismiss mentioned three specific reasons to grant dismissal: lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to provide sufficient service of process. Those reasons have only become stronger as time has progressed

For instance, these Defendants have argued that the Plaintiff's attempted service of process included an inoperative complaint—namely the proposed First Amended Complaint (hereinafter "FAC") (Docket # 6). On March 31, 2016, this Court decided to treat the Plaintiff as if he had properly moved to amend his complaint and declared that "[t]he Amended Complaint (Docket # 6) is now the operative complaint." Order of March 31, 2016 (Docket # 36). That means that the Defendants' position was correct—on the date that the Plaintiff attempted service, such service did not include the complaint that was operative at that time. Likewise, Mr. Johnson's argument that this Court cannot exercise personal jurisdiction over him is only

strengthened by the adoption of the FAC as the operative complaint, because the FAC alleges fewer contacts with Wisconsin than the original complaint.[1]

In addition to those arguments, this Supplement seeks to have this case dismissed for two additional reasons. First, the time during which the Plaintiff could have served any Defendant has passed. Second, the Plaintiff has failed to state a claim for which relief can be granted. Specifically, there is no such thing as false light invasion of privacy in Wisconsin law, and the Plaintiff has failed to properly allege misappropriation of name or likeness, or defamation. For each of these reasons—subject matter jurisdiction, personal jurisdiction, insufficient process, failure to provide timely service of process and failure to state a claim—the FAC should be dismissed.

## I.
## WISCONSIN DOESN'T RECOGNIZE A CAUSE OF ACTION FOR FALSE LIGHT INVASION OF PRIVACY

The easiest matter to dispose of is the claim for false light invasion of privacy. Simply put, it doesn't exist in Wisconsin law. "Wisconsin does not recognize false light invasion of privacy." *Ladd v. Uecker*, 323 Wis. 2d 798, 780 N.W.2d 216, 221 (Wis. App. 2010); *see also Zinda v. Louisiana Pacific Corp.*, 149 Wis.2d 913, 928-29 (Wis. 1989) (noting that the tort of invasion of privacy was created statutorily and that false light was omitted from the statute). Accordingly, all claims for false light invasion of privacy must be dismissed.

---

[1] Further, this Court can only consider the declarations of Mr. Johnson and Mrs. Palmer in relation to whether personal jurisdiction exists in this case. Under *Purdue Research v. Sanofi-Synthelabo*, S.A., 338 F.3d 773, 782-83 (7th Cir. 2003) "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." The Plaintiff has failed to oppose the Defendants' motion to dismiss for lack of jurisdiction, and the Defendants' Motion to Dismiss for Lack of Jurisdiction included declarations refuting many of the Plaintiff's claims related to jurisdiction.

2

**II.**

**THE PLAINTIFF HAS FAILED TO PROPERLY ALLEGE A CLAIM BASED ON MISAPPROPRIATION OF NAME OR LIKENESS**

The Plaintiff's cause of action for misappropriation of name or likeness is the most absurd he attempts to make. After spending forty paragraphs in the FAC alleging that the Defendants have essentially trashed his reputation, the Plaintiff suddenly decides that one of the Defendants is trading on his "good" name.

Invasion of privacy by misappropriation of name or likeness is defined in Wis. Stat. § 995.50(2)(b) as follows:

> The use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian.

The Plaintiff's claim that Sarah Palmer has violated this statute is frivolous for six reasons.

First, his allegations are purely conclusory. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth").

Second, the tort of misappropriation of name or likeness cannot be used to suppress protected expression. See *Stayart v. Google Inc.*, 710 F.3d 719 (7th Cir. 2013) (noting that the statute "must be construed narrowly and not used to curtail the right of free speech, or free press"). For this reason, the common law has developed an "incidental use" exception in cases such as *Habush v. Cannon*, 346 Wis.2d 709, 717 (Wis. App. 2013):

> The common-law doctrine of "incidental use" prevents the Subsection (2)(b) tort from being applied to minor or trivial uses of another person's name, or in publications with news or other literary or entertainment value, which do not exploit the commercial value associated with a living person's name. The words "unreasonably invaded" should not be construed any broader than necessary to keep these incidental uses from the statute's reach.

This is in line with how other states have interpreted the same cause of action. For instance, in

3

*Lawrence v. A.S. Abell Co.*, 299 Md. 697, 703 (1982), Maryland's highest court applied the incidental use doctrine as follows:

> The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated ... to every person whose name or likeness it publishes.

The Plaintiff has failed to allege that non-incidental uses have occurred. Thus, the Plaintiff is attempting to do in this case what the incidental use exception is designed to prevent: the use of the misappropriation tort to suppress news, commentary, and criticism of the Plaintiff that he doesn't like.

Third, the Plaintiff's most basic error is that there is no cause of action for such appropriation unless someone is using the Plaintiff's "*good*" reputation for his or her economic benefit:

> As comment c to this section [in the Restatement (Second) of Torts 652C] explains "[i]n order that there may be liability under the rule stated in this Section, the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness."

*Hannigan v Liberty Mutual*, Case No. 98-2643 (Wis. Ct. App., Aug., 1999). For instance, if Nike sold "Air Jordans" emblazoned with the familiar silhouette of retired basketball player Michael Jordan without Mr. Jordan's permission, he would have a cause of action against Nike because the company would be taking advantage of his enduring good reputation as an athlete to sell its athletic shoes. However, that isn't what the Plaintiff has alleged in this case. In this case, the Plaintiff hasn't claimed that Mrs. Palmer has *taken advantage* of his good name; he alleges that she (and others) ruined his allegedly good name and allegedly made money in the process of doing so. That simply isn't what the tort is about.

4

Fourth, the *Hannigan* court found there can be no misappropriation of name or likeness unless the Plaintiff's name has value as follows:

> Because Hannigan has alleged no publicity value of his name—that is, no reputation, prestige, social or commercial standing, public interest or other value of his name-and no purpose of commercial exploitation on the part of any defendant, the allegations of the complaint are insufficient to state a claim under 895.50(2)(b).

Not only has the Plaintiff equally failed to allege such publicity value in his name, but also, upon information and belief, there is no such value.

Fifth, the statute requires that such misappropriation be "for advertising purposes or for purposes of trade." The sole attempt the Plaintiff has made to meet this requirement is to allege that Mrs. Palmer has a donation button on her website in paragraph 45 of the FAC. However, that is not a use "for trade purposes" as a matter of law.

*Costanza v. Seinfeld, et al.*, 693 N.Y.S.2d 897 (N.Y.Sup. 1999) *affd. as mod.,* 279 A.D.2d 255, 719 N.Y.S.2d 29 (1st Dept.2001) is instructive on this point. Although it is a New York case, the Seventh Circuit has noted that

> In drafting section 995.50, the Wisconsin legislature used New York's privacy statute as a model. Judith Endejan, Comment, *The Tort of Misappropriation of Name or Likeness Under Wisconsin's New Privacy Law,* 1978 WIS. L.REV. 1029, 1034 & n. 30 (1978). The text of subsection 995.50(2)(b) duplicates nearly verbatim New York Civil Rights Law § 50, so "[c]ase law under the New York privacy statute may be particularly useful because subsection (2)(b) was modeled after the New York law." *Id.* at 1041 (internal citations omitted). Sound analysis of Wisconsin privacy law as codified in section 995.50 therefore includes consideration of the developing common law of privacy in Wisconsin, as well as in other jurisdictions, especially in New York.

*Bogie v. Rosenberg*, 705 F.3d 603, 610 (7th Cir. 2013).[2] Accordingly, this Court should, in

---

[2] N. Y. CIVIL RIGHTS LAW § 50 reads as follows:

Right of privacy. A person, firm or corporation that uses for advertising purposes,

seeking to "interpret [Wisconsin's] law as we predict the state's highest court would," *id.* at 610, take developments in New York law as persuasive authority.

In the *Seinfeld* case, Michael Costanza claimed that the character George Costanza on the popular sitcom *Seinfeld* was based on him, and, therefore, the show continually misappropriated his name and likeness.[3] The *Seinfeld* court found in favor of the defendants, however, because the use was not for advertising or trade purposes as follows:

> defendants note the limited nature of the relief provided by Civil Rights Law § 50, 51. It extends only to the use of a name or likeness for trade or advertising. ... In a case similar to this lawsuit involving the play "Six Degrees of Separation", it was held that "works of fiction and satire do not fall within the narrow scope of the statutory phrases "advertising" and "trade". ... The Seinfeld television program was a fictional comedic presentation. It does not fall within the scope of trade or advertising[.]

If the creation of *Seinfeld*, which was once the "top-rated hit on American TV"[4] and which today one can buy the entire series for around $75 on DVD,[5] is not considered to be a use "for purposes of trade," then certainly the creation of a tiny blog which uses the Plaintiff's name as it freely mixes news, commentary, and criticism surrounding the Plaintiff's activities doesn't suddenly

---

> or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.

As this Court can see, the language from "for advertising purposes" to "parent or guardian" is precisely the same as the language found in Wis. Sta. § 995.50(2)(b).

[3] Although this might qualify as common knowledge, *Seinfeld* was a popular sitcom that ran from 1989 to 1998 on NBC television. The four main characters were Jerry Seinfeld, George Costanza, Elaine Benes, and Cosmo Kramer, and nearly every episode focused on the misadventures of those four principal characters. *See generally* Internet Movie Database: Seinfeld, *available at* http://www.imdb.com/title/tt0098904/.

[4] Gerard O'Donovan, et. al, "The 10 Best Sitcoms of All Time," THE TELEGRAPH, Nov. 10, 2015, *available at* http://www.telegraph.co.uk/culture/tvandradio/10121664/The-10-best-TV-sitcoms-of-all-time.html.

[5] See "Seinfeld: The Complete Series," available at http://www.amazon.com/Seinfeld-The-Complete-Series-Jerry/dp/B00EIJTLK4 (listing the price of the DVD box-set of the entire series as around $75).

become "for trade purposes" when there is a donation button that people might or might not hit.

Sixth, and finally, the Plaintiff has made no proper allegation as to how he has been damaged by the alleged use of his name and likeness or how Mrs. Palmer proximately caused such damage.

Any one of those flaws would be sufficient to prevent any cause of action for misappropriation of name or likeness. This motion has outlined six of them. Therefore, the Plaintiff's claim for invasion of privacy by misappropriation of his name or likeness should be dismissed.

**III.**
**THE PLAINTIFF HAS FAILED TO PROPERLY ALLEGE DEFAMATION**

Turning to defamation, the Plaintiff's failures in this regard are legion. First, when the alleged statements are examined in context, the statements are often not actually about him. Second, the Plaintiff never properly alleges all of the elements of defamation in relation to any alleged statement—particularly falsity, state of mind, or damages. Third, those alleged statements that appear to be about him are actually true, substantially true, or protected opinion. For all of these reasons, the Plaintiff's defamation claims should be dismissed for failure to state a claim.

**A.    Many of the Statements Cited By the Plaintiff Are Not Actually About Him.**

Under Wisconsin Law, a Plaintiff claiming defamation must show the following:

(a) a false and defamatory statement concerning another;
(b) an unprivileged publication to a third party;
(c) fault amounting at least to negligence on the part of the publisher; and
(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*See, e.g., Van Straten v. Milwaukee Journal Newspaper-Publisher*, 151 Wis.2d 905, 447 N.W.2d 105, 108 (Wis. App. 1989). In this case, the Plaintiff has repeatedly stumbled on the first requirement: that it be a statement *about him*.

For instance, in FAC ¶ 22, the Plaintiff claims that Defendant Johnson wrote the following about the Plaintiff (allegedly writing as "BusPassOffice")—with apologies for the language:[6]

> It maybe [sic] the guy who tied up those boy scouts and raped them repeatedly as described in his last unsold album that no one except a judge and a jury are going to listen too.
>
> Nice touch about peeing on them, classy and pornographic kiddie rape fantasies.
>
> [W]onder how that's going to play in court with three raping boyscout [sic] fantasies now produced?

The Plaintiff claims that this discussion can be found at the following Internet address: http://thinkingmanszombie.com/2015/09/good-morning-dumbfuck-96/. Attached as Exhibit A is a true and correct copy of the piece found at that address and the attached comments.[7]

When examined in the context, it doesn't appear that the comment quoted in FAC ¶ 22 is actually about the Plaintiff. For one thing, the Plaintiff's name is never used in the post. Further, judging by the nesting of the comments,[8] the statement attributed to Defendant Johnson appears to be in response to this comment by a person writing as "Rob Crawford:"

---

[6] This will be a recurring problem throughout this memorandum—it is not practical to shield this Court from all of the coarse language involved.

[7] Documents such as this can be considered without converting this into a Rule 56 motion for summary judgment because they are "documents that are central to the complaint and are referred to in it," *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

[8] This website, like many, allows people to respond to specific comments, displaying the reply as "indented" on gradation further than the comment it is referring to. This practice is known as "nested comments," and it allows people to engage in conversations apart from or tangential from the piece it is attached to.

8

> Has anyone identified the lawyer he's working with? You know, the guy with an investigative team willing to work for old mayo jars, but not able to compose a simple letter?

Thus, when this "BusPassOffice" writes that"[i]t maybe [sic] the guy who tied up those boy scouts...", he is plainly referring to this unidentified lawyer working with an unidentified third party. Therefore, that statement is not about the Plaintiff.[9]

Similarly, in FAC ¶ 23, the Plaintiff claims that Defendant Johnson made another comment about him:

> our [sic] favorite "above it all" is raping more boy scouts in audio fantasies, thank goodness he actually admits it
>
> Oh and he's harassing Lynn Thomas from his rent assisted senior home and ever[y]one sent this to the management:
>
> @dirtyschnitzel

Like with last quoted passage, the Plaintiff claims that this passage comes from a particular web page (found at http://hogewash.com/2015/09/29/team-kimberlin-post-of-the-day-933/), and a true and correct copy of the page referred to is attached as Exhibit B. Further, as with the previous alleged quote, there is no indication who this writer is talking about. The subject of the post is an unidentified person named "Kimberlin" (upon information and belief, Brett Kimberlin). But in terms of Mr. Johnson's alleged comment, the only thing the reader knows about who is referred to in the passage is that the person 1) is having vile fantasies involving boy scouts and 2) is harassing a person named Lynn Thomas.[10] Is the Plaintiff confessing that he has done both? If so, then these statements are not defamatory. If he is not confessing, however, then how does the Plaintiff know this is about him? More to the point, what has he alleged to

---

[9] Furthermore, it seems to be obviously a joke that no one is likely to misinterpret as a statement of fact.

[10] Eventually, the Plaintiff's alleged twitter handle shows up in the comment, but this is after the discussion of vile fantasies and harassment.

9

indicate that the statement is about him?  Having failed to establish that this is a statement about the Plaintiff, the FAC has failed to state a cause of action in relation to it.

The Plaintiff also does his Carly Simon routine[11] in FAC ¶ 24, the Plaintiff apparently thinking that this statement, allegedly by Johnson, was about him:

> If he really sent that email, then he confessed to sending material that can be considered child porn audio, if he didn't send the email, he demonstrated that it is or can be considered child porn.

Once again, the Plaintiff claims this passage comes from a particular web page (https://billysez. wordpress.com/2015/10/14/so-lemmie-get-this-straight-here/), and a true and correct copy of that page is attached as Exhibit C.  This Court can see that there is no indication whatsoever that the "he" in that passage refers to the Plaintiff.

With the next example, it is clear that the alleged statements by Mr. Johnson are not about the Plaintiff, and the Plaintiff appears to have selectively edited the comment to obscure that fact.  Specifically, in FAC ¶ 25 the Plaintiff attributes a long passage to Mr. Johnson that begins as follows:

> Do you know this guy: He is a creepy sta[l]king harassing child porn producer:
>
> He violated the hatch act hundreds of times
>
> He lied to people on XMfan who threatened to report it saying he had extra super secret permission to do so

The passage goes on listing a large number of immoral acts by the person only identified as "this guy."  The Plaintiff has claimed once again that the statement is from a specific web page (http:// thinkingmanszombie.com/2015/10/please-welcome-our-not-so-new-staff-contributor/), and a true and correct copy of the page is attached as Exhibit D.  If this Court examines the comment

---

[11] *See*, Carly Simon, *You're so Vain*, on THE BEST OF CARLY SIMON (Warner Bros. Uk 2008) (singing to an unidentified former lover that "you're so vain, you probably think this song is about you").

in context, it will see that it is a comment attached to a piece where the main author (identified as "Paul Krendler") is introducing an obviously fictional contributor to the site called "Bill Parvocampus."

The fact that the alleged comment by Mr. Johnson is about this "Bill Parvocampus" rather than the Plaintiff is made obvious when one examines the line the Plaintiff edited out. Here's the same passage Mr. Johnson allegedly wrote, in context, with the missing text in **bold:**

> **Bill P**
>
> Do you know this guy: He is a creepy sta[l]king harassing child porn producer:
>
> He violated the hatch act hundreds of times
>
> He lied to people on XMfan who threatened to report it saying he had extra super secret permission to do so

Exhibit D, p. 16. In other words, the Plaintiff cut out the line from this alleged statement by Defendant Johnson where he says who is talking about: "Bill P"—an obvious reference to this fictional "Bill Parvocampus" character. Accordingly, this statement is not about the Plaintiff, either, and the Plaintiff has selectively edited that comment in an apparent attempt to obscure that fact.

Meanwhile, FAC ¶ 28 cites to http://thinkingmanszombie.com/2016/01/its-really-ok-dumbfuck/ as allegedly showing Defendant Johnson writing: "Cardinal Management has been forwarded these tweets - I'm sure they are approving of this horrid use of their name and images for his pornographic tweets." A true and correct copy of the web page is attached as Exhibit E, and it appears to refer to a number of Tweets by a person identifying himself as "The Youngest

Old Dude" on Twitter. There is no indication who "The Youngest Old Dude" is, and, therefore, the Plaintiff has failed to establish that this is a statement about him.[12]

In each case, when these statements are examined in context, there is no evidence that the statements are about the Plaintiff. Although the Plaintiff makes a conclusory allegation that these comments are about him, such conclusory allegations must be disregarded, *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"), and they are often actively contradicted by the documents the Plaintiff refers to. For this reason alone, the Plaintiff has failed to plead defamation in regard to paragraphs 22-25 and 28 of the FAC.

**B.      The Plaintiff Serially Fails to Plead Falsity.**

Another element of defamation that must be pled is falsity. However, the Plaintiff has often failed to plead—even in the most conclusory fashion—that element. For instance, in FAC ¶¶ 22-24 and 26-28, the Plaintiff alleges that these Defendants made many statements, but doesn't bother to allege that they are untrue. Accordingly, for paragraphs 22-24 and 26-28, the Plaintiff has failed to state a claim for defamation.

**C.      The Plaintiff Fails to Plead Negligence or Malice.**

Another element that must be pled is the state of mind of the Defendants. As noted in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) a state may not "impose liability without fault," and, therefore, Wisconsin law requires, at the minimum, negligence.[13] However, to the extent that the Plaintiff has claimed that the statements are false, he has not made a single

---

[12] Furthermore the statement doesn't appear to be defamatory because it appears to be an opinion based on disclosed facts. The writer is discussing what s/he considers to be the nature of "these tweets"—apparently referring to a number of tweets by this person writing as "The Youngest Old Dude." An opinion based on disclosed facts cannot constitute defamation. *Milsap v. Journal/Sentinel Inc*., 100 F.3d 1265, 1268 (7th Cir. 1996).

[13] *See, e.g., Denny v. Mertz*, 106 Wis.2d 636, 318 N.W.2d 141, 150 (Wis. 1982).

12

allegation that these Defendants made those statements negligently—let alone that they acted with a higher degree of fault, such as malice. The Plaintiff has not even made *conclusory* allegations of negligence, and there are no non-conclusory claims about any person's mental state.

The closest the Plaintiff comes to properly alleging the requisite intent is in the second paragraph 30 of FAC,[14] where he quotes this passage allegedly written by Defendant Palmer as proof of defamatory intent:

> Bill, you seem to think that anything that makes you mad is defamation. You said the words. YOU SAID THEM. And I usually try my best to keep them in a reasonable amount of context, although some things just need to be pull-quoted to stand on their own because they are just that LULZY.[15]

From this, the Plaintiff claims that "Defendant Palmer admitted that she takes words written by Plaintiff out of context to make them more entertaining for her readership." *Id.* But the decision to take something out of context does not imply a defamatory intent without imparting any false information at all. Rather, it is often done simply for entertainment purposes. For instance, there is a website called "WeLovetheIraqiInformationMinister.com," which includes many quotes from Muhammed Saeed al-Sahaf, the former propagandist for Saddam Hussein's regime known affectionately or mockingly as "Baghdad Bob." A sample of the quotes show that Mr. al-Sahaf had a knack for saying things that were quite funny, with no context needed, such as:[16]

> "My feelings - as usual - we will slaughter them all"

> "Our initial assessment is that they will all die"

> "Please, please! The Americans are relying on what I called yesterday a desperate and stupid method."

---

[14] The Plaintiff's paragraph numbering is not always sequential.
[15] "Lulzy" is internet slang for funny or hilarious.
[16] All of these are taken from http://www.welovetheiraqiinformationminister.com/, last visited on April 4, 2016.

13

This is only a sample of many comments that are, frankly, pretty amusing and colorful, without the need for any context. And this is a common form of writing on the internet. For instance, there is an entire website devoted to quotes that are fun to read out of context.[17] Likewise, there is a Twitter account called @AwfulFantasy which features examples of terrible science fiction and fantasy writing taken out of context.[18] There are equally articles mocking former President George W. Bush,[19] and mocking most of the Republican candidates for President *circa* September, 2015,[20] by taking them out of context. None of these pieces or websites are inherently defamatory, just because they happen to present a comment or twenty-five out of context. Therefore a statement that occasionally a person takes another person's words out of context for amusement purposes cannot be read as intent to defame.

In any case, the Plaintiff doesn't explain how that intent expressed by Mrs. Palmer relates to the single defamatory passage attributed to her found in paragraph 29 of the FAC. He merely claims the passage in FAC § 29 is false in the first paragraph 30 of the FAC. He doesn't claim that she has taken anything he wrote out-of-context. Therefore, his complaint that she has stated

---

[17] See http://www.outofcontextquotes.com/wordpress/.

[18] Some examples of quotes found in the @AwfulFantasy twitter account include the following: "Patty unearthed the ancient stone tablet and read its inscription. 'Send this tablet to 10 other archaeologists or you will have bad luck,'" (found at https://twitter.com/AwfulFantasy/status/717817657253347328), "He opened the Tome of Dahr, unleashing the evil within. Dark magic popped out and scared everyone—like a Jack-in-the-box. It killed a dog," (found at https://twitter.com/AwfulFantasy/status/717561893011861505), and "Only after the Radioactive Monster began terrorizing the town in a sports car did the people realize it must be having a half-life crisis," (found at https://twitter.com/AwfulFantasy/status/707662020766797824).

[19] Rodrigue Tremblay, *George W. Bush: May I Quote You, Mr. President?*, GLOBAL RESEARCH, (Nov. 10, 2015) available at http://www.globalresearch.ca/may-i-quote-you-mr-president/3907.

[20] Shane Ryan, *The 25 Funniest Out-of-Context Quotes from the Second GOP Debate*, PASTE MAGAZINE (Sept. 17, 2015) available at http://www.pastemagazine.com/articles/2015/09/the-25-funniest-out-of-context-quotes-from-the-sec.html.

Case 2:15-cv-01516-NJ   Filed 04/14/16   Page 14 of 28   Document 40

that she has taken things out of context wholly fails to relate to the single claim of defamation he has made against her.

The only other allegation relating to the state of mind of either of these Defendants is the strange allegation that they belong to a cult of personality under the sway of an unnamed individual. Even if true, this wholly fails to relate to whether they negligently or maliciously uttered any falsehood about the Plaintiff. With no other allegations relating to the state of mind of either defendant, the Plaintiff has failed to allege that they acted negligently, let alone with malice. In short, he wishes this Court to find them liable for falsehoods—to the extent that he even claims they are telling falsehoods about him—without fault, which is prohibited by Wisconsin law. For this additional reason, the Plaintiff has failed to properly plead defamation against any of these Defendants.

**D.    The Plaintiff Fails to Properly Plead Damages.**

Another reason why the claim for defamation fails is because the Plaintiff makes only conclusory allegations that he was harmed, all found in FAC ¶ 31 as follows:

> Because of the actions of these named defendants and others, Plaintiff's online reputation has been permanently scarred. Due to the extensive nature of the harm caused to Plaintiff he asks for $100,000 from each Defendant in assumed damages and $500,000 from each Defendant in Punitive Damages.

Such bare-bones allegations are ordinarily insufficient to survive a motion to dismiss under cases such as *Iqbal.* However, the Plaintiff has also invoked the doctrine of defamation per se. *See,* FAC ¶ 20.

There are several problems with this. First, not all of the allegations fit into the four categories that constitute libel per se. Limiting ourselves only to those statements where the Plaintiff has arguably made sufficient allegations that the statements involved were actually about him, *supra,* pp. 7-12, the following allegations are attributed to these Defendants: 1) the

15

Plaintiff is producing child pornography,[21] 2) the Plaintiff has made audio recordings depicting boy scouts being raped and the recording known as "Fingernails Reeking of Poo,"[22] and 3) claims that he had continued to harass William Hoge III 4) even as his wife begged him to stop. Only two of these even potentially invokes the libel per se rule in that the statements potentially refer to criminal conduct: the claim that the Plaintiff harassed Mr. Hoge or the claim that he created child pornography. The claim that he ignored his wife's pleas and the claim that he produced recordings depicting boy scouts being raped are obviously statements that could only be defamation per quod, if it is defamatory at all.

Further, it is not clear that Johnson's alleged claim that the Plaintiff has produced child pornography is defamation per se. When interpreting allegedly defamatory statements

> the words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered.

*Frinzi v. Hanson*, 30 Wis.2d 271, 140 N.W.2d 259, 261 (Wis., 1966). It is neither natural nor popular (i.e. "common") to assume that every reference to child pornography is necessarily a reference to material that violates the U.S. Code. This intuition is supported by the opinion in *Unroch v. Monderer*, 2006 NY Slip Op 52113(U) (N.Y. Sup. Ct. 10/18/2006) which held that calling a person a mere "pornographer" was not libel per se as follows: "Initially, calling plaintiff a pornographer is too general to impute the commission of a crime." Further, the same court noted that "[g]iven that a person can engage in pornography and not violate New York's obscenity statutes ... it cannot be said that plaintiff was accused of committing a serious offense." While it is not controlling authority, this case is persuasive. Likewise, as the Plaintiff is fond of

---

[21] Allegedly by Defendant Johnson, FAC ¶26.
[22] Allegedly by Defendant Johnson, FAC ¶ 27.

noting, not everything that is pornographic that involves or depicts children is necessarily criminal child pornography.

Likewise, it is less than clear that the Defendant Palmer's alleged statement that the Plaintiff harassed Mr. Hoge would also be defamation per se. In second paragraph 29 of the FAC the Plaintiff attributes the following statement to Mrs. Palmer:[23]

> If Bill Schmalfeldt wants us/the world at large to believe that WJJ Hoge and his "cult of personality" are responsible for his wife's death, then Bill Schmalfeldt needs to take responsibility for his obsession with WJJ Hoge that caused his wife's death. I would submit that if Bill Schmalfeldt had not been a creepy cyberstalker cry-bully, there would not have developed anything that Bill Schmalfeldt would decide was a "cult of personality" that would then be responsible for the death of his wife. His wife who **BEGGED** him to stop harassing WJJ Hoge and to let it go. BEGGED HIM! AND HE REFUSED TO! Husband of the year right here, folks!

> If what Bill Schmalfeldt says is true about his wife, then Bill Schmalfeldt **ALSO** needs to take responsibility for the death of Michael Malone. Because reasons. That Bill Schmalfeldt decided were so. Goose, gander, sauce and all that.

> Bill Schmalfeldt just forfeited the last scrap of his humanity card. Well done, DUMBFUCK! Well done!

As with prior passages, the Plaintiff also cites to a particular web address (https://billysez.wordpress.com/2016/01/16/i-just-cant-even-3/), and the full piece is reproduced as Exhibit F. It is also worth quoting from where the Plaintiff disputes the factual allegations in that paragraph.

Here is the entirety of his denial of these allegations, found in the first paragraph 30 of the FAC:

> Plaintiffs wife, in fact, never "begged" Plaintiff to "stop harassing" anyone. In fact, after years of asking Plaintiff to take no legal action, Mrs. Schmalfeldt was an enthusiastic supporter of a lawsuit Plaintiff filed in the spring of 2015.

---

[23] The Plaintiff redacted a number of names for no discernible reason from this passage. The original names have been restored in this version based on Exhibit F.

Thus, the Plaintiff is only disputing the claim that his late wife begged him to stop harassing Mr. Hoge, so the Defendants anticipate that the Plaintiff will attempt to stretch that comment to be interpreted as an accusation that Mr. Schmalfeldt was harassing Mr. Hoge.

Of course, stretching it to be an accusation that the Plaintiff actually was harassing Mr. Hoge would violate the *Frinzi* instruction to interpret words in their natural meaning. The natural meaning is that the late Mrs. Schmalfeldt is accusing the Plaintiff of harassment, and Mrs. Palmer is merely reporting that. Further, it is not altogether clear that harassment necessarily be a reference to criminal harassment. For instance, Webster's Dictionary defines to harass a person in relevant part as "to trouble, worry, or torment, as with cares, debts, repeated questions, etc."[24]—a lot of which would include expression protected by the First Amendment. Just because many states have a crime called "harassment," it does not follow that every reference to harassment is a reference to *criminal* harassment.

However assuming that these two claims—that the Plaintiff produced child pornography or harassed Mr. Hoge—are to be interpreted as constituting potential defamation per se,[25] the Plaintiff has still failed to allege what was necessary to entitle him to recovery. The Plaintiff appears to think that once something is determined to be defamation per se, that damages are automatic. This is contradicted by the Supreme Court's holding in *Gertz,* 428 U.S. at 349, that "States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." In other words, one cannot recover presumed damages without establishing constitutional malice. As stated by the Wisconsin Supreme Court in *Denny v. Mertz*, 106 Wis.2d 636, 318 N.W.2d 141 (Wis. 1982),

---

[24] Webster's New World College Dictionary 613 (Victoria Neufeldt, 3rd ed. 1996).
[25] This also assumes that the Plaintiff actually alleged all of these claims were false, *see supra,* p. 12.

"'Presumed' or punitive damages may only be awarded upon proof that [the defendant] acted with 'actual malice.'" As noted above, *supra,* pp. 12-15, the Plaintiff makes no proper allegation of the mental state of either of these Defendants in the Complaint; indeed, he does not make any improper, *conclusory* allegation that they acted negligently, let alone with malice. Having failed to properly allege malice, presumed damages are not available.

Therefore, the Plaintiff has failed to properly allege damages. He has not properly alleged that he suffered actual damages, and he has not properly invoked the presumption of damages associated with defamation per se. Specifically, he has not properly alleged that the Defendants were accusing him of criminal conduct, and the Plaintiff has not properly alleged malice. Without a proper allegation of damages and without properly invoking the presumption of damages, the Plaintiff has failed to state a claim for defamation.

## E. The Allegedly Defamatory Claims Made About the Plaintiff are True, Substantially True, or Constitutionally Protected Opinions.

A final difficulty with the Plaintiff's defamation claim is that even if the Plaintiff had properly alleged that the statements the Defendants allegedly made were false, this Court can find—even on a motion to dismiss basis—that the statements at issue were either 1) true, 2) substantially true, or 3) constitutionally protected expressions of opinion.

First, whether the Plaintiff's skits—attached to the FAC as Exhibits 1-3 (Docket Numbers 6-2 through 6-4) were child pornography is a matter of opinion and, as such, expressing such an opinion cannot be actionable. As stated in *Gertz*, 428 U.S. at 339-340:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

19

As noted above, *supra,* 16-17, the most natural reading of the claim that the Plaintiff had created child pornography is not an assertion that he had violated the U.S. Code, but rather that he had created pornography—defined by Webster's Dictionary in relevant part as "writings, pictures, etc. intended to primarily to arouse sexual desire"[26]—involving or about children.  In common discourse what constitutes pornography is largely a matter of opinion.  Some consider the *Sports Illustrated* Swimsuit Issue to be pornographic.[27]  Others label arguably artistic works from famed French Director Luc Besson[28] or from Stephen King as "child pornography."[29]  The forgettable mid-nineties thriller *The Crush* about a fourteen year old girl sexually obsessed with an adult prompted Hal Hinson of THE WASHINGTON POST to ask if the movie was "thinly disguised kiddie porn or just flat-out kiddie porn?"[30]



Yet, upon information and belief, no one involved in the making or sale of that film were arrested.  Even a cover for the novel LOLITA (pictured right), has been called child porn by some,

---

[26] Webster's New World College Dictionary 1051 (Victoria Neufeldt, 3rd ed. 1996).

[27] Monica Cole, *This Year's Disgraceful Sports Illustrated Swimsuit Issue,* THE STAND, Feb. 6, 2015, available at http://www.afa.net/the-stand/the-culture-war/this-years-disgraceful-sports-illustrated-swimsuit-issue/ (calling the Sports Illustrated Swimsuit issue "soft core pornography) and Aly Weisman, *People Are Not Happy With the Racy Sports Illustrated Swimsuit Issue Cover*, BUSINESS INSIDER, Feb. 9, 2015 ("In an UsWeekly poll, 68% of readers thought the cover image resembled porn, while 38% found it "so hot!"—which notably means some people said it was both).

[28] Susan Hayward, LUC BESSON 65 (1998) (discussing the controversy surrounding the movie *Leon: The Professional*, featuring romance between a middle aged man and a twelve-year-old [played by a young Natalie Portman], and labeled by some as "quasi-child pornography").

[29] Scott Elizabeth Baird, *Famous Books with Filthy Sex Scenes (That Were Unfilmable)*, CRACKED, March 23, 2016 available at http://www.cracked.com/article_23650_5-famous-books-with-sex-scenes-way-too-intense-movies.html (describing a sex scene involving sixth graders in one of Stephen King's novels, Stephen King, IT (1990), as "child pornography").

[30] Hal Hinson, *Movie Review: The Crush*, WASHINGTON POST , April 5, 1993, available at http://www.washingtonpost.com/wp-srv/style/longterm/movies/videos/thecrushrhinson_a0a80d.htm.

20

even though the sexuality was at an innuendo level only.[31]  Whether this Court is offended by the Plaintiff's skits—which describe in detail sexual conduct among children including forcible and statutory rape—is beside the point. Whether something is offensive or not is a matter of opinion, and Mr. Johnson is entitled to the opinion that the Plaintiff's skits are offensive, to believe that the Plaintiff has created porn and because it involves or depicts children, that it is child pornography.

Further, even if one accepted the Plaintiff's conclusory assertion that Mr. Johnson had to be referring to *criminal* child pornography, there is no good reason to assume that Mr. Johnson was alleging a violation of the U.S. Code.  For instance, in FAC ¶ 14, the Plaintiff states that the skits attached to his FAC as Exhibits 1-3 were created in 2013.  That would be about two years before he moved from Maryland to Wisconsin.  FAC ¶ 1.  Like many states, Maryland has a law against child pornography, MD CODE Crim. L. § 11-207, which reads in relevant part as follows:

§ 11-207. Child pornography

(a)    Prohibited. -- A person may not:

(1)    cause, induce, solicit, or knowingly allow a minor to engage as a subject in the production of obscene matter or a visual representation or performance that depicts a minor engaged as a subject in sadomasochistic abuse or sexual conduct;

(2)    photograph or film a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct;

(3)    use a computer to depict or describe a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct;

---

[31] Sam Jackson, *8 Massive Disasters in Marketing No One Noticed*, CRACKED, Feb. 20, 2016 available at http://www.cracked.com/article_23664_8-brands-who-shot-themselves-in-foot-and-kept-shooting.html (referring to the cover of one edition of Vladamir Nabokov, LOLITA (1955) as being "practically child porn").

    (4)    knowingly promote, advertise, solicit, distribute, or possess with the intent to distribute any matter, visual representation, or performance:

        (i)    that depicts a minor engaged as a subject in sadomasochistic abuse or sexual conduct; or

        (ii)    in a manner that reflects the belief, or that is intended to cause another to believe, that the matter, visual representation, or performance depicts a minor engaged as a subject of sadomasochistic abuse or sexual conduct; or

    (5)    use a computer to knowingly compile, enter, transmit, make, print, publish, reproduce, cause, allow, buy, sell, receive, exchange, or disseminate any notice, statement, advertisement, or minor's name, telephone number, place of residence, physical characteristics, or other descriptive or identifying information for the purpose of engaging in, facilitating, encouraging, offering, or soliciting unlawful sadomasochistic abuse or sexual conduct of or with a minor.

So on the face of the FAC the Plaintiff admits that he has "knowingly ... possess[ed] with the intent to distribute any matter ... that depicts a minor engaged as a subject in ... sexual conduct" in violation of subsection (a)(4)(i). That is, the Plaintiff did possess the material, he intended to distribute it,[32] and it depicts minors engaged in sexual conduct.[33] Likewise, if the Plaintiff used a computer to produce or transmit this material—and Exhibit G[34] suggests he did via website while in Maryland—that would be the "use a computer to depict or describe a minor engaging in ...

---

[32] Two of the skits, "Like Sheep to the Ravenouse Homosexual Wolves" and "Fingernnails Reeking of Poo," are available on iTunes, while the third, "Rick Perry Discusses his Days as a Boy Scout," is available at http://billschmalfeldt.bandcamp.com/track/rick-perry-discusses-his-days-as-a-boy-scout.

[33] Even if, as Plaintiff avers, no actual minors were involved, it is still a "depiction" of minors engaged in sexual activity.

[34] Exhibit G is a print out from a Google search, indicating the dates upon which the Rick Perry skit appeared on the Internet, including dates from before he moved from Maryland to Wisconsin.

sexual conduct" in violation of subsection (a)(3). That may not fit the Federal definition of child

porn, but it does appear to fit the definition found in the criminal law of the state where the

Plaintiff lived when he admitted that he created these skits. In short, if Mr. Johnson's alleged

comments are interpreted as speaking colloquially and not giving a legal opinion, it is a protected

opinion; if it is interpreted as accusing the Plaintiff of a crime, it would appear to be true.

Meanwhile the fact that Mr. Schmalfeldt created something that Johnson allegedly

characterized as "raping little boy scouts sex audio recordings" seems obviously true. Exhibit 1

to the FAC depicts a young boy scout being coerced into sexual relations. Meanwhile, in

Exhibit 3, the Plaintiff depicts former Texas Governor and Presidential candidate Rick Perry as

witnessing an apparent forcible rape of a child[35] as follows:

> Well, our scoutmaster didn't stand for that kind of stuff. He took that young man
> back to his tent and when he came out he was crying and in holding down the his
> [sic] backside like he had been whupped in the britches real good. Never did see
> that kid again. Matter of fact we never saw that scoutmaster again neither.

The obvious implication of that passage was that the scoutmaster raped the young man violently

enough to cause lasting physical pain. Certainly, Exhibit 2 doesn't mince words on the subject

of child rape, as the Plaintiff's character describes the proper way a young boy should be raised:

> Send your children to a nice Christian Academy where they will be shaped into
> men by other men who know how to deal with young boys with discipline and
> firm, rugged manliness, where boys live with other boys like in the rowing
> galleries on Grecian warships. And they [sic] only thing they will ever know is
> the sting of the taskmasters whip. And the burn of dirty sweat in heir [sic] eyes
> and the constant pounding of the drums. And they will learn to HATE the
> homosexual lifestyle as the fierce disciplinarians take them and *rape them over
> and over again* while beating them[.] And forcing *them to rape each other* while
> they watch and drink beer[.]

(emphasis added).

---

[35] Further, any sex with a child is commonly referred to as "statutory rape."

The Plaintiff might argue that Exhibit 2 is irrelevant to the truth or falsity of the claim because that involves children at a "Christian Academy" rather than Boy Scouts. However, the doctrine of "substantial truth" allows for slight inaccuracies. As stated by the Wisconsin Supreme Court in *Lathan v. Journal Co.*, 30 Wis.2d 146, 158 (1966):

> Truth is a complete defense to a libel action. *Williams v. Journal Co.* (1933), 211 Wis. 362, 370, 247 N.W. 435. Nor is it necessary that the article or statement in question be true in every particular. All that is required is that the statement be substantially true. *Meier v. Meurer* (1959), 8 Wis.2d 24, 29, 98 N.W.2d 411; *Smith v. Journal Co.* (1955), 271 Wis. 384, 389, 73 N.W.2d 429.
>
> > 'It is not necessary to prove the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.' Restatement, 3 Torts, p. 218, sec. 582.

In *Global Relief Foundation v. New York Times*, 390 F.3d 973, 980 (7th Cir. 2004), the Seventh Circuit noted that "[t]o establish the defense of substantial truth, the defendant need only show the truth of the 'gist' or 'sting' of the defamatory material." The "gist" or "sting" of the accusation was that the Plaintiff made recordings depicting the rape of children. That is undeniably true on the face of the FAC and its exhibits.

Turning next to the suggestion that Mrs. Palmer defamed the Plaintiff by suggesting that he had harassed Mr. Hoge, that is simply true. Attached as Exhibit H is a true and correct copy of a pair of peace orders obtained by Mr. Hoge against Mr. Schmalfeldt in Maryland.[36] In each, the ground listed for issuing that Peace Order is Harassment. Thus, the Plaintiff is collaterally estopped from denying that he harassed Mr. Hoge.

Finally, the Plaintiff suggests that Mrs. Palmer defamed him by saying that the late Gail Schmalfeldt "**BEGGED** [the Plaintiff] to stop harassing WJJ Hoge and to let it go. BEGGED HIM! AND HE REFUSED TO!" The article where this line occurred has already been attached

---

[36] A certified copy is on file in case the document's authenticity comes into question.

as Exhibit F, and this Court can see that all of it was a response to a piece the Plaintiff wrote called "Did The W.J.J. Hoge Cult Of Personality Kill My Wife?" that was originally located at http://thepontificator.com/2016/01/15/did-the-w-j-j-hoge-cult-of-personality-kill-my-wife/.     A true and correct copy of the piece is attached as Exhibit I.

This gives rise to two defenses.  First, in context it is plain that Mrs. Palmer's alleged statement were made as commentary about the Plaintiff's article, linking to it in her piece and then commenting on it.  As such, this constitutes an opinion based on disclosed facts which cannot give rise to a defamation claim.  *See supra,* note 12.

Second, it gives rise to the defense of substantial truth.  The Plaintiff's article referred to by the Defendant details how he was found to have harassed Mr. Hoge in a court of law resulting in a Peace Order,[37] and how Mr. Hoge filed repeated charges claiming that the Plaintiff had violated that Peace Order.  Exhibit I, p. 3.  It goes on to detail how the Plaintiff filed a civil suit against Mr. Hoge and others for various torts and how Mr. Hoge sued the Plaintiff for alleged copyright infringement.  *Id.*, p. 4.  Finally, the Plaintiff and Mr. Hoge appeared to settle things in May, 2014.  *Id.*, p. 4.  Then, the Plaintiff writes the following about his late wife:

> It was about this time that Gail's weightloss [sic] was becoming noticeable. She was starting to lose her balance as well. She made me promise her that when the Copyright suit with Hoge was over, I would have nothing to do with the man. She told me the stress of worrying about me and the worsening of my Parkinson's disease was more than she could bear.

*Id.*, p. 5.  In short, she requested that he leave Mr. Hoge alone.  Further, if one continues to read the Plaintiff's obviously biased piece, one will see by the Plaintiff's own writings he didn't leave

---

[37] In Maryland law, a Peace Order is essentially a restraining order among people not in a domestic relationship (broadly speaking).  *See, generally*, MD. CODE Cts. & Jud. Proc. § 3-1501, *et seq*.  One of the statutory bases of such an order is harassment under MD. CODE Crim. L. § 3-803.  See, MD. CODE Cts. & Jud. Proc. § 3-1501(a)(1) (vi) (establishing that a Peace Order can be supported by harassment under Maryland's criminal law).

25

Mr. Hoge alone. While that is not precisely the same as saying the late Mrs. Schmalfeldt begged him to stop harassing Mr. Hoge, but the "gist" or "sting" of Mrs. Palmer's statements—that Gail Schmalfeldt asked him to leave Mr. Hoge alone and he refused—are substantially true according to the Plaintiff's own words.

Thus, in every instance where the Defendants allegedly said anything about the Plaintiff at all, their alleged statements are either true, substantially true, or protected opinion. Therefore, for this reason as well, the Plaintiff has failed to state a claim for defamation per se or per quod.

## IV.
### THE PLAINTIFF HAS FAILED TO PROPERLY SERVE THE DEFENDANTS WITHIN 90 DAYS AFTER THE ORIGINAL COMPLAINT WAS FILED, JUSTIFYING DISMISSAL UNDER RULE 4(M)

The final reason to dismiss this case is one of the simplest. Under Fed. R. Civ. P. 4(m) a Plaintiff is required to serve every defendant within ninety days of filing the original complaint. This lawsuit was filed on December 28, 2015. The ninetieth day was on March 18, 2016, nearly four weeks ago. The declarations of Mrs. Palmer and Mr. Johnson that were attached to the original motion to dismiss establish that they were never properly served in this case because the Plaintiff served an inoperative complaint on them. The new declarations of Mrs. Palmer and Mr. Johnson (attached to this memorandum as Exhibits J and K respectively) establish that they still have not been properly served at any time since. In fact, the Plaintiff has not made any additional attempt to serve them. Accordingly, this case can be dismissed under Rule 4(m).

## CONCLUSION

This is a case that should not have been brought. As noted in the original motion to dismiss, there is no subject matter jurisdiction, there is no personal jurisdiction, and these Defendants have never been properly served.

26

Further, as noted in this supplement, the Plaintiff has not stated a claim for which relief can be granted. The Plaintiff has alleged a cause of action that does not exist in Wisconsin law: false light. Meanwhile, he has attempted to use a claim for misappropriation of name or likeness to accomplish what the law forbids—the shutting down of news, satire and commentary he doesn't like—among the many errors he made when alleging that claim. Additionally, he has made a legion of errors when attempting to allege defamation, often citing statements that are not about him, often failing to allege falsity, always failing to allege negligence or malice, and always failing to properly allege damages. Further, the few statements that appear to be about him also appear to be true, substantially true, or opinion, preventing recovery for defamation. Finally, the Plaintiff hasn't served these Defendants on a timely basis, justifying dismissal under Rule 4(m). Any one of these reasons—want of subject matter jurisdiction, want of personal jurisdiction, insufficient service of process, failure to provide timely service of process and failure to state a claim—is sufficient by itself to justify dismissal. The Defendants respectfully ask that the court find that all of these grounds are applicable, so that this case can be decisively concluded, and so that the Plaintiff can finally understand the rules of jurisdiction and the law of freedom of expression.

WHEREFORE, this Court should dismiss the FAC for all defendants based on a lack of subject matter under Rule 12(b)(1); this Court should also dismiss the FAC for these Defendants for lack of personal jurisdiction under Rule 12(b)(2); this Court should also dismiss the FAC for insufficient service of process on these Defendants under Rule (b)(4) or (5); this Court should also dismiss the FAC for these Defendants because the FAC fails to state a claim upon which relief can be granted under Rule 12(b)(6); this Court should also dismiss for failure to timely

Case 2:15-cv-01516-NJ   Filed 04/14/16   Page 27 of 28   Document 40

serve these Defendants under Rule 4(m); and this Court should provide any other relief that is just and equitable.

Thursday, April 14, 2016                    Respectfully submitted,


  s/ Aaron J. Walker
Aaron J. Walker, Esq.
*Attorney for Defendants Johnson and Palmer*
Va Bar# 48882
DC Bar #481668
P.O. Box 3075
Manassas, Virginia  20108
(703) 216-0455
(No fax)
AaronJW1972@gmail.com


## VERIFICATION

I, Aaron Walker, state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that all exhibits are true and correct copies of the originals.

Executed on Thursday, April 14, 2016.


  s/ Aaron J. Walker


## CERTIFICATE OF SERVICE

I certify that on Thursday, April 14, 2016, I served copies of this document on William Schmalfeldt by email with his consent.


  s/ Aaron J. Walker


28