NS.

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2016 APR 22 P 1:02

JON W. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
(Milwaukee Division)

| | |
|---|---|
| WILLIAM M. SCHMALFELDT, SR.<br>Plaintiff pro se,<br>v.<br>SARAH PALMER, ET AL.,<br>Defendants | Case No. 2:15-cv-01516-NJ<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS UNDER RULE 12(B)(1), (2), AND (5); AND JOINT SUPPLEMENTAL MOTION TO DISMISS UNDER RULE 12(B)(1), (2), AND (5), AND UNDER RULE 4(M) |

NOW COMES Plaintiff William M. Schmalfeldt Sr. to oppose to Defendants' **PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS UNDER RULE 12(B)(1), (2), AND (5); AND JOINT SUPPLEMENTAL MOTION TO DISMISS UNDER RULE 12(B)(1), (2), AND (5), AND UNDER RULE (M)**, and states the following:

1. In the original Motion to Dismiss filed 3/1/16 (ECF#11) defendants alleged that this court has no subject matter jurisdiction, personal jurisdiction and that plaintiff was negligent in serving Defendants.

2. Both Defendants admit to having been served. Plaintiff paid for process servers who served the Defendants with the First Amended Complaint (FAC) and Summons.

3. Service was given to Defendant Johnson on February 11, 2016, by Retired Sheriff's Deputy Adam Gursoy. The cost to Plaintiff was $35. (Exhibit A)

4. Defendant Palmer was effectively served on February 16, 2016 when Kimberly Hamilton handed a copy of the FAC and Summons to Chad Rakes, an adult cohabitating with Palmer. The cost to the Plaintiff was $175. (Exhibit B)

5.  If this honorable Court would relax the moratorium on new filings, Plaintiff could easily repair the amateur mistakes he made in his FAC with a Second Amended Complaint (SAC) that would render Defendants objections moot. Plaintiff prays that this court will give him the chance to file a correct SAC before deciding whether or not to dismiss the complaint.

6.  Defendants' argument against Personal Jurisdiction would be mooted if this Court gave Plaintiff leave to file a SAC. Plaintiff intends to drop unnamed John Does and Jane Roes from the caption, thereby completing an unquestionable diversity of citizenship.

7.  Plaintiff disagrees with Defendants' contention that a SAC would be futile. The SAC would be in the interests of justice as it would clarify matters for this court.

8.  Subject Matter Jurisdiction is created by the diversity of citizenship in this case. Given my expressed intent to remove the John Doe/Jane Roe defendants, we have a Plaintiff living in Wisconsin, and Defendants living in Tennessee and North Carolina. Thus, diversity of citizenship.

9.  In the FAC, which the Court decided is the operative complaint in the instant case, Plaintiff certainly does allege that the amount in controversy exceeds $75,000. Plaintiff won't address Defendants' comments as they regard the Original Complaint as they are moot.

10. Although Wisconsin State Courts do not recognize false light invasion of privacy. But it is still mentioned as one of the invasions of property included in the Restatement (Second) of Torts 652C.

11. In the matter of personal jurisdiction, Defendant Johnson directed much of his attention to the Cardinal Capital Group in Wisconsin, the organization that manages the Juniper Court Apartment Complex for the Sisters of Saint Francis of Assisi, who own the complex.

Phone calls, e-mails, exhorting other blog readers to contact these people should more than satisfy the amount of Wisconsin contact for the purposes of this suit.

12. Defendant Palmer's blog, http://billysez.wordpress.com, is completely devoted tp the defamation of this Plaintiff. The blog is specifically directed to the State of Wisconsin, as Palmer admits she writes what she writes for the "Lulz" – in other words, to get a rise out the Plaintiff.

13. Despite Defendants' assertion, this Court certainly does have Personal Jurisdiction over the Defendants under Wis. Stat. § 801.05., which states: "A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:

> **(2)** SPECIAL JURISDICTION STATUTES. In any action which may be brought under statutes of this state that specifically confer grounds for personal jurisdiction over the defendant.
> **(4)** LOCAL INJURY; FOREIGN ACT. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:
> (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant;

14. Defendant Johnson's numerous telephone and e-mail contacts with the management of the Juniper Court Apartments, as well as his exhortations to his readers to flood the management with complaints about allowing "a child pornographer" in their midst, satisfies the conditions set down by the Court of Appeals in Wisconsin in *Johnson Litho Graphics of Eau Claire Ltd. v. Sarver*, 2010AP1441 (Sept. 6, 2012):

> Because Sarver, like the defendant in Madison Consulting Group, initiat[ed] several significant links with the forum plaintiff leading to the transaction at issue," we conclude that Sarver purposefully conducted substantial activities in Wisconsin, invoking the benefits and protections of its laws. Id. at 1203; see O'Hare Int'l Bank v. Hampton, 437 F.2d 1173, 1176-77 (7th Cir. 1971) (conferring personal jurisdiction over a defendant who initiated negotiations by telephone); L.B. Sales Corp. v. Dial Mfg., Inc., 593 F. Supp. 290, 295 (E.D. Wis. 1984) (conferring personal jurisdiction over a defendant who initiated negotiations by mail).

15. Ms. Palmer's blog is entirely directed to the Plaintiff's attention in Wisconsin. She very seldom writes about anything other than her disdain for Plaintiff. The harm inflicted from her computer in North Carolina is felt in Wisconsin.

16. The Supreme Court made it clear in *Calder v. Jones*, 465 U.S. 783 (1984):

> As the trial court observed, defendant Calder did not enter California or even make telephone calls into the state in connection with his role in the preparation of the subject article; all of his acts with reference to that article apparently were performed in Florida. However, the requisite minimum contacts of a defendant with the forum state need not arise from his physical activity in that **[138 Cal. App. 3d 134]** state. (St. Joe Paper Co. v. Superior Court (1981) 120 Cal. App. 3d 991, 997 [175 Cal. Rptr. 94].) "Every state has a natural interest in effects occurring within its territory, even if the act causing those effects was committed elsewhere. (See Rest.2d Conf. of Laws, § 37, com. a.) ... [¶] **If a defendant commits an act or omission outside the forum state with the intent to cause a tortious effect within the state, the state may exercise jurisdiction over the defendant as to any cause of action arising from the effects. The intent to cause tortious injury within the state when the tort actually occurs is generally a sufficient basis, without more, for the exercise of in personam jurisdiction. 'The act may have been done with the intention of causing effects in the state**. If so, the state may exercise the same judicial jurisdiction over the actor, or over the one who caused the act to be done, as to causes of action arising from these effects as it could have exercised if these effects had resulted from an act done within its territory.' (Rest.2d Conf. of Law, § 37, com. a; see § 36, subd. (1).)" (Kaiser Aetna v. Deal (1978) 86 Cal. App. 3d 896, 902 [150 Cal. Rptr. 615]; latter italics added. See also Judicial Council Comment, 14 West's Anno. Code Civ. Proc., p. 473; Quattrone v. Superior Court (1975) 44 Cal. App. 3d 296, 303-304 [118 Cal. Rptr. 548].) The complaint herein alleges that defendants, in publishing the defamatory article, acted maliciously and with the intent to injure plaintiffs. The general rule for defamation is that everyone who takes a responsible part in the publication is liable for the defamation. (McGuire v. Brightman (1978) 79 Cal. App. 3d 776, 789 [145 Cal. Rptr. 256].) For the purpose of determining whether a California court may assume jurisdiction over Calder in this lawsuit, it must be presumed that Calder, in participating in the publication of the article as its editor, intended to cause injury to plaintiffs in California where they reside; such injury in fact occurred. Accordingly, a valid basis exists for California's exercise of personal jurisdiction over Calder with respect to the causes of action alleged herein. (Emphasis added)

17. According to Ms. Cindy Lopez, manager of the Juniper Courts Apartments, Defendant Johnson is being less than truthful about the number of contacts made in the state of

Wisconsin by him personally and on his behalf in his misguided effort to have the apartment complex evict Plaintiff. Again, the Supreme Court stated in Calder:

> **If a defendant commits an act or omission outside the forum state with the intent to cause a tortious effect within the state, the state may exercise jurisdiction over the defendant as to any cause of action arising from the effects. The intent to cause tortious injury within the state when the tort actually occurs is generally a sufficient basis, without more, for the exercise of in personam jurisdiction.**

18. In the cases Defendants cite, they tend to focus on cases where a plaintiff tries to nail a defendant based on tortious acts committed outside of the forum state, by invoking innocent contacts within the state as justification for personal jurisdiction. That is not the case here. Both defendants entire relationships with the State of Wisconsin were for the purpose of committing tortious act against the Plaintiff. Plaintiff does not allege that a defendant called his grandmother in Ripon three or four times and then defamed him at a later date and those phone calls to Granny justify in personam jurisdiction. Plaintiff alleges that each contact the Defendants had with Wisconsin were for the express purpose of committing tortious acts.

19. Defendants claim that this Court "doesn't have to assme the truth of every allegation in the complaint," in determining whether Plaintiff's assertion of jurisdiction is appropriate. This is a misstatement made by the Defendants' attorney. While this Court is not legally bound to assume the truth of Plaintiff's <u>conclusions</u> on matters of law, this Court ruled in 1989:

> **[T]his Court is bound to assume plaintiff's factual allegations to be true, this Court is not bound to assume the truth of plaintiff's legal conclusions.** *Mitchell v. Archibald,* <u>573 F.2d 429</u>, 432 (7th Cir.1978); *see also Western Mining Council v. Watt,* <u>643 F.2d 618</u>, 624 (9th Cir.1981), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); *U.S. v. Tulare Lake Canal Co.,* <u>535 F.2d 1093</u>, 1097 (9th Cir. 1976), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1156, 51 L.Ed.2d 571 (1977). **Rust v. Blue Cross and Blue Shield of Wis.** 717 F. Supp. 1409 - Dist. Court, ED **Wisconsin,** 1989

20. This opinion is supported by several 7th Circuit rulings:

> Goren v. New Vision Int'l, Inc., 156 F.3d 721, 725-26 (7th Cir.1998)
> Sung Park v. Ind. Univ. Sch. of Dentistry, 692 F.3d 828 (7th Cir. 2012).

21. Defendants' attorney engages in misrepresentation by saying "Plaintiff appears to believe that the mere allegation Defendant Paler wrote about him om the Internet to a general audience is sufficient to confer jurisdiction. Mr. Walker might have a point were the Plaintiff an occasional celebrity subject of discussion on Palmer's blog. But the name of the blog is "Billy Sez – The Bill Schmalfeldt Feldtdown Observer." Can there be any doubt what the subject of the blog is, to which audience it is directed and the nature of its editorial policy?

22. The argument that Palmer's blog is not directed specifically at Plaintiff is belied by her own words. These examples are from her blog, going only as far back as the beginning of 2016. Reading it, one is left with the idea that Sarah Palmer has appointed herself to document every move Plaintiff makes, even if he doesn't make them, report on them, and make sure Plaintiff knows he's having an eye kept on him. In other words, "Stalking."

**February 26, 2016**
"Doesn't he realize that a lot of things that are pointed out are just to make the monkey dance? And boy did he ever!"

**December 11, 2015**
"But Bill is MAD about SoMEthiNG! and he's gonna take it out on ME! Because I'm the one who quotes him accurately, and then adds my little bits of commentary and allows you zombie horde members to have some fun pointing and laughing."

**Same Date**
"It happens the same way every time. Bill throws out something he believes to be nefarious that people do, someone taunts him, usually over at TMZ, and Bill jumps on that as an admission that *they* were the one to do it. Simply based on their ability to push his buttons and make him dance. *headdesk*"

**April 16, 2016**

"Bill Schmalfeldt apparently doesn't remember why I'm here. I'm here to document every single time he does something like THIS. So that other people know that this is what he does. If you DARE to notify somebody that he is STEALING THEIR FEDERALLY REGISTERED call sign, you are going to have something like THIS done to you."

**April 8, 2016**

"Then why does he get so butthurt when people point and laugh at his VERY PUBLIC idiocy?"

**February 21, 2016**

"He keeps thinking something different is going to occur. He's wrong. We get the LULZ. Poor, pitiful "completely disabled man, a recent widower, who has no choice but to spend more money on a Copyright Infringement Suit." SOB!"

**February 19, 2016**

"What I *do* document is the nasty things he says to people, the threats he delivers, the menacing comments he makes. All to get whatever it is that he wants that particular day of the week, without any regard to what other people think or feel. He got away with it for years because he would delete his awful articles, delete tweets that upon second thought a normal rational person wouldn't have made in the first place."

**February 18, 2016**

"Unfortunately for Bill, it's the Zombies that will be having the FUN!"

**February 8, 2016**

"How's that hiding behind the NINJANUNS working out for him?"

**February 5, 2016**

"Frankly Bill's attempt at a morality play using the body (or lack thereof) of his dead wife is just one more shining example of his inability to understand his own inappropriateness."

**February 2, 2016**

"But that's why this site exists. Because now people CAN know what he's done and the tricks he's tried to pull and the tactics he uses to get his way. And all without him being able to push the little delete button on the evidence of his bad behavior. Like this bit."

**January 25, 2016**

"When I first started Billy Sez about nine months ago, it was because once again, Bill Schmalfeldt had done what he does, yet again, and I was sick and tired of him deleting the evidence in order to make himself look the victim. Because let's face it. Sum Dude

with Parkinsons Stage ELEVENTY! makes quite the sympathetic victim to your average person who doesn't have access to the things Bill Schmalfeldt has said and done."

**January 24, 2016**
"To the best of your personal recollection, and rendered in the time frame of your choice, when do you think was the last time that serial a) defamation *pro se* litigant, b) Internet presence/brand reinventor and c) blog deleter Bill Schmalfeldt published something on the internet that has not been captured either online or offline as a bulwark against a) and c)?

"My guess is "between April and June 2013."

**January 14, 2016**
"Secondly, while I very much *do* want Bill Schmalfeldt to change, this site is more dedicated to preserving and calling out the things that he wants swept under the rug – his bad acts towards others, the tactics he uses to "investigate" things. We try very hard to catalog and highlight all of those bad acts that horrify ordinary human beings and that he just *loves* to memory hole. I want to make sure that they don't disappear."

23. Defendant Johnson misstates fact when he says that he told Cindy Lopez, manager of the Juniper Courts Apartment, that the comedy Plaintiff produces is "like child porn." Ms. Lopez will testify that Johnson said the material was child porn. What's more, he told her, according to Ms. Lopez that Plaintiff was a "dangerous terrorist" with an "explosive temper."

24. Regarding Defendants' Motion to Dismiss based on FRCP § 4(m), Plaintiff was operating under what he believed was his right to file a first amended complaint, that FAC was filed on February 4, 2016. Johnson was served on February 11 and Palmer was served on February 16. Plaintiff understood Rule 15 to mean he could amend his complaint as a matter of course within 21 days of serving the complaint, or (as the complaint was one to which a responsive pleading was required), within 21 days after service of a responsive pleading or service of a motion under Rule 12(b), (e) or (f). Former Defendant Diana Deeley accepted service on December 31, 2015 – 13 days after the complaint was served. (Exhibit C). Defendant Johnson was notified of the certified mail delivery of his service on or about December 28, 2015,

but rejected it and it was returned to Plaintiff's home address. (Exhibit D) According to the USPS, Defendant Palmer received her service on December 28, 2015, and whether it was accepted by her cohabitating boyfriend or her daughter, who has since joined the Army, it was a valid service by mail and she simply ignored it. (Exhibit E).

WHEREFORE, having shown that Defendants' Joint Motion to Dismiss is rife with misstatements, misinterpretations of law, and does not stand the weight of scrutiny, Plaintiff asks that Defendants' motion to dismiss be DENIED, and for any other relief the Court deems necessary.

Submitted this 21st day of April, 2016

/s/William M. Schmalfeldt, Sr.
William M. Schmalfeldt, Sr.
3209 S. Lake Dr., Apt. 108
Saint Francis, WI 53235
414-249-4379
bschmalfeldt@twc.com
*Pro Se Plaintiff*

## CIVIL L. R. 7(A)(2) CERTIFICATION

In compliance with Civil L. R. 7(a)(2), I certify that no separate supporting memorandum or other supporting papers except those already attached will be filed in relation to this motion.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has on this day been sent by e-mail under a joint agreement to Aaron J. Walker, currently serving as Defendant's Attorney.

/s/William M. Schmalfeldt, Sr.
William M. Schmalfeldt, Sr.
*Pro Se Plaintiff*