UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

WILLIAM SCHMALFELDT,

        Plaintiff,

  v.

ERIC P. JOHNSON, SARAH PALMER,
and JOHN AND JANE DOES,

        Defendants.

Case No. 2:15-cv-01516-NJ

**JOINT REPLY TO THE PLAINTIFF'S OPPOSITION TO THEIR FIRST MOTION TO DISMISS AND SUPPLEMENTAL MOTION TO DISMISS (DOCKET # 43)**

    NOW COME Defendants Sarah Palmer and Eric Johnson, by and through their counsel Aaron J. Walker, Esq., in the above-styled case for the sole purpose of challenging personal and subject matter jurisdiction and service of process and without waiving any rights of jurisdiction, notice, process, service of process, joinder, or venue. They hereby file this Joint Reply to the Plaintiff's Opposition to their First Motion to Dismiss and Supplemental Motion to Dismiss (Docket # 43) (hereinafter the Plaintiff's "Opposition") and state the following:

**INTRODUCTION**

    1.    These Defendants have moved to dismiss this case for lack of subject matter and personal jurisdiction, failure to provide proper service of process on a timely basis, and for failure to state a claim for which relief can be granted. With only a couple exceptions, the Plaintiff has failed to dispute these Defendants' arguments, specifically leaving unchallenged

virtually every point in relation to the First Amended Complaint's[1] failure to state a claim, as well the absence of subject matter jurisdiction. With respect to the issue of personal jurisdiction, the evidence before this Court does not support the exercise of jurisdiction under Wisconsin law or the Fourteenth Amendment. Further, the Plaintiff in his response either admits or otherwise confirms every relevant fact in relation to the Defendants' assertion that he did not properly serve them within ninety days, justifying dismissal under Fed. R. Civ. P. 4(m). Accordingly, these Defendants ask that this case be dismissed for all of the reasons outlined above, and to deny the Plaintiff (who has been suing these Defendants for about three years in a succession of failed lawsuits) the opportunity to amend his complaint so that there is an end to this dispute.

## I.
## THE PLAINTIFF DOES NOT DISPUTE BASIC DEFICIENCIES IN HIS CLAIMS, JUSTIFYING DISMISSAL WITH PREJUDICE

2. It is worth taking a moment to note what is no longer is in contention, the Plaintiff having failed to dispute most of these Defendants' legal points and arguments.

3. Most notably, the Plaintiff virtually ignores these Defendants' argument that he has failed to state a claim for which relief can be granted. Indeed, the Plaintiff does not even mention Rule 12(b)(6) in the title of his Opposition and he has failed to dispute the following points in the body of his Opposition:

    a. That he has failed to state a claim for which relief can be granted for misappropriation of name or likeness—including any one of the six flaws in this claim pointed out by Mrs. Palmer. *See* Defendants' Memorandum in Support of their Supplemental Motion to Dismiss (hereinafter "Supplemental Memorandum") (Docket # 40) , pp. 3-7.

    b. That he has failed to properly demonstrate that the statements found in

---

[1] (Docket # 6) (hereinafter the "FAC").

2

Case 2:15-cv-01516-NJ    Filed 05/04/16    Page 2 of 16    Document 44

FAC ¶¶ 22-25 and 28 were actually about him, precluding any defamation claim arising from those statements.  *See* Supplemental Memorandum, pp. 7-12.

    c. That he has failed to properly plead that the alleged statements of each defendant at FAC ¶¶ 22-24 and 26-28 are false.  *See* Supplemental Memorandum, p. 12.

    d. That he has failed in every instance to properly plead negligence in relation to any alleged defamation.  Indeed, he has not even made conclusory allegations of negligence. *See* Supplemental Memorandum, pp. 12-15.

    e. That he has failed to properly plead damages in relation to any alleged defamatory statement by either of these Defendants.  He does not properly plead any actual harm, he does not properly plead that these statements are libel per se, and he doesn't properly plead the element of malice necessary to entitle him to a presumption of damages if the statements had been libel per se.  *See* Supplemental Memorandum, pp. 12-19.

    f. That the statements that are actually about him are true, substantially true, or Constitutionally protected opinion.  *See* Supplemental Memorandum, pp. 19-26.

  4. The Plaintiff also admits that "Wisconsin State Courts do not recognize false light invasion of privacy," Opposition at ¶ 10.[2]  The Plaintiff notes that it is listed in the Restatement of Torts, but this has no bearing on the legal question which the Plaintiff has effectively conceded (without withdrawing the claim).

  5. Further, the Plaintiff admits that this Court does not have subject matter jurisdiction over this case because there is no diversity jurisdiction.  Instead, he repeatedly begs this Court to do what it refused to do in its April 20, 2016, order (Docket # 42): to relax the moratorium so that he can move to amend the complaint a second time.  *See* Opposition at ¶¶ 5-6

---

[2] This is the only time the Plaintiff attempts to dispute any part of these Defendants' argument that he has failed to state a claim for which relief can be granted.

and 8.  Given that decision, such an amendment should not be allowed and any dismissal should be with prejudice.  *See also infra* ¶¶ 23-25.

6. Finally, the Plaintiff does not dispute that he has only made conclusory allegations to support his claim that this case meets the jurisdictional minimum dollar amount and that such conclusory allegations cannot support an assertion of jurisdiction.  Instead, he merely says that the "Plaintiff certainly does allege that the amount in controversy exceeds $75,000."  Opposition at ¶ 9.  This is true, but irrelevant.  The problem the Plaintiff ignores is that the FAC only contains conclusory allegations supporting the amount of injury, and that presents another reason why this case should be dismissed for lack of subject matter jurisdiction.

7. Together, these eight points lay waste to the Plaintiff's FAC.  As a result, there is no dispute that the FAC has failed to state a claim for which relief can be granted and that this Court lacks subject matter jurisdiction.  Further, to the extent that the Plaintiff disputes any of the legion of deficiencies pointed out by these Defendants, the Plaintiff does not provide any valid reason why this suit should not be dismissed with prejudice for these two Defendants.

## II.
## THE PLAINTIFF HAS FAILED TO OFFER EVIDENCE THAT THIS COURT HAS PERSONAL JURISDICTION OVER EITHER DEFENDANT

8. Under *Nelson v. Bulso*, 979 F.Supp. 1239 (E.D. Wis., 1997), this Court can only exercise personal jurisdiction in an alleged diversity case if a Wisconsin state court could do so. Further, *Nelson* requires a two-part inquiry.  First, the Plaintiff must show that WIS. STAT. § 801.05 applies to these Defendants.  Second, if the long-arm statute does apply, this Court must determine whether such an assertion of jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment.  As noted in *Nelson*, "[i]t is [the plaintiff's] burden to prove that personal jurisdiction exists." *Id.* at 1242.  It is not sufficient to *allege* that jurisdiction
4

exists. Rather, a plaintiff must *prove* that it exists, at least when challenged with evidence to the contrary. This is explained in more detail in *Purdue Research v. Sanofi-Synthelabo, S.A.*, when the Seventh Circuit adopted the law of several sister circuits as follows:

> Other circuits follow essentially the same approach, requiring the plaintiff to establish a prima facie case of personal jurisdiction over the defendant. Decisions from other circuits also tend to emphasize that, once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.

338 F.3d 773, 782-83 (7th Cir. 2003) (footnotes omitted).

9. The Plaintiff did not provide such "affirmative evidence supporting the exercise of jurisdiction." *Id.* Instead, he disputes that this is the law, quoting from *Rust v. Blue Cross & Blue Shield United of Wis.*, 717 F.Supp. 1409, 1412 (E.D. Wisc. 1989)[3] as saying "this Court is bound to assume plaintiff's factual allegations to be true." *See* Opposition at ¶ 19. However, this statement was made in the context of a discussion of a motion to dismiss *for failure to state a claim*—and the cases the *Rust* court cited were equally about motions to dismiss *for failure to state a claim*[4]—not a motion to dismiss *for lack of jurisdiction*. The same can be said for the additional Seventh Circuit cases the Plaintiff cites. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir.1998) and *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828 (7th Cir. 2012) equally deal with motions to dismiss for failure to state a claim rather than for lack of jurisdiction. Opposition at ¶ 20. Therefore, these cases are inapposite to the question at hand, and cases such as *Purdue Research* control.

10. Applying the *Purdue Research* rule to the present facts, this Court can only

---

[3] The Plaintiff places his citation of *Rust* so that it appears to be part of the quoted passage. *See* Opposition ¶ 19.
[4] The *Rust* court relied on *Mitchell v. Archibald,* 573 F.2d 429, 432 (7th Cir.1978), *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981), and *U.S. v. Tulare Lake Canal Co.,* 535 F.2d 1093, 1097 (9th Cir. 1976).

consider the evidence currently before it in determining whether jurisdiction exists, namely the first Declarations of Sarah Palmer and Eric Johnson (Docket Numbers 12-1 and 12-2, respectfully). In Mrs. Palmer's Declaration she states the following:

> 4. This case involves several writings I placed on the internet. To the extent that I have actually written any of the statements attributed to me, each of these writings was targeted to the world at large and not to an audience in a particular state. None of them were targeted toward Wisconsin. I have also sent one email to Mr. Schmalfeldt asking him to cease and desist from the stalking and harassing conduct that eventually provided the basis of a stalking/no contact order I have obtained in North Carolina. Aside from that, I have never knowingly emailed the Plaintiff while he lived in Wisconsin, I have never called him, I have never written a letter, nor have I engaged in any other kind of directed communication targeting him. Further, I have made no phone calls, sent no emails, and sent no letters to anyone else in Wisconsin.

Meanwhile, in Mr. Johnson's Declaration, he states the following:

> 3. This case concerns writings I have allegedly placed on the Internet. Any such writings I have actually made were targeted to a general audience and to the world at large.
>
> 4. The Plaintiff also claims that I have sent letters to persons in Wisconsin discussing the Plaintiff in defamatory or disparaging (but true) terms. I have never done so.
>
> 5. The Plaintiff also claims that I have sent a number of emails contained in Exhibit 12 to the original complaint (ECF No. 1-15) and Exhibit 4 to the proposed amended complaint (ECF No. 6-5). At least one of these emails appears to be sent by a website's contact form. I did not send those messages.
>
> 6. The Plaintiff also claims that I have made a number of phone calls into Wisconsin. I have only made two that contained any disparaging information about Mr. Schmalfeldt: one which resulted in a conversation with a woman who identified herself as Cindy Lopez, apartment manager for Juniper Court and Canticle Court, and a second call where I left a voice mail for the same person.
>
> 7. With respect to first call, it was prompted by the fact that the Plaintiff had made statements to the effect that his Internet "radio" broadcast was approved of by Juniper Court and Canticle Court. I was concerned that if this was true, that it might expose the company to legal liability and, if this was false, that they should be alerted to the misrepresentation. I do not recall the exact words I used, but at one point, Ms. Lopez asked about the contents of the broadcasts to which I objected. I accurately described them as containing skits in which

> underage boys were engaged in sexual activity and stated that it was "like child porn." In the same conversation, I also stated that [the] Plaintiff was associated with convicted terrorist Brett Kimberlin, but I did not refer to the Plaintiff as a terrorist. The voice mail message was largely about other subjects, but the only derogatory comment I recalled making about the Plaintiff in that message was to refer back to my opinion that some of his skits were like child porn.

Although the Plaintiff makes various allegations contradicting these declarations, the Plaintiff has presented no evidence supporting those allegations, even after these Defendants explained in court papers he must do so. *See* Supplemental Memorandum, p. 2 n.1 (citing *Purdue Research*). Therefore, as far as this Court is concerned, the claims in those declarations must be taken as true because there is no other evidence on the subject.

11. As a result, once this Court begins its two-part inquiry under *Nelson*, it will see that the Plaintiff has failed to provide evidence sufficient to meet the requirements of Wisconsin law or the Constitution. This failure provides an additional reason to dismiss this case.

**A. The Plaintiff has Failed to Show that the Defendants' Conduct Meets the Requirements of WIS. STAT. § 801.05.**

12. As noted above, personal jurisdiction in Wisconsin is controlled by WIS. STAT. § 801.05. The Plaintiff only makes one reference to this statute, in paragraph 13 of his Opposition, quoting only two provisions: § 801.05(2) and (4)(a). They state in relevant part that:

> **801.05 Personal jurisdiction, grounds for generally.** A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances: ...
>
> **(2)** Special jurisdiction statutes. In any action which may be brought under statutes of this state that specifically confer grounds for personal jurisdiction over the defendant. ...
>
> **(4)** Local injury; foreign act. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury ...
>
> > **(a)** Solicitation or service activities were carried on within this

7

state by or on behalf of the defendant[.]

In regard to § 801.05(2), the Plaintiff never identifies any special jurisdictional statute applicable to the present facts, and, in fact, no such statute is applicable. Therefore § 801.05(2) will not support the assertion of jurisdiction.

13. Meanwhile § 801.05(4)(a) requires either "solicitation" or "service activities" to have been carried on within the state. There is no claim by the Plaintiff that either defendant carried out any kind of "service activities" in Wisconsin (personally or through an agent), and there is certainly no evidence before this Court of such activities. Meanwhile, "solicitation" is defined as follows:

> According to Wisconsin law, before a solicitation triggers Sec. 801.05(4)(a) it must be made by the defendant to the plaintiff, and the defendant must expect some financial benefit.

*Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*, 18 F.3d 389, 393 (7th Cir. 1994) The evidence before this Court, *supra* at ¶ 10, only discloses one communication with the Plaintiff—an email from Mrs. Palmer demanding that he cease and desist engaging in conduct that later provided the basis of a restraining order. That simply doesn't fit the definition of "solicitation" expounded on in *Federated Rural Elec. Ins. Corp.* if only because there is no evidence Mrs. Palmer was expecting the Plaintiff to give her an economic benefit. Accordingly, the Plaintiff has failed to articulate any basis for asserting jurisdiction under § 801.05. As a result, this Court must dismiss as to Defendants Palmer and Johnson because it lacks personal jurisdiction over them.

**B. The Plaintiff has Failed to Show that this Court can Exercise Jurisdiction Over Defendants Palmer and Johnson Consistent with the Due Process Clause of the Fourteenth Amendment.**

14. In addition to the Plaintiff's failure to demonstrate the applicability of any

8

provision of § 801.05, the Plaintiff has failed to show that such an assertion over these Defendants would be consistent with due process.

15. First, as a preliminary matter, the Plaintiff concedes that this Court cannot exercise general personal jurisdiction over these Defendants as follows:

> In the cases Defendants cite, they tend to focus on cases where a plaintiff tries to nail a defendant based on tortious acts committed outside of the forum state, by invoking innocent contacts within the state as justification for personal jurisdiction. That is not the case here.

Opposition at ¶ 18. The Plaintiff goes on to allege (falsely and without providing evidentiary support) that "each contact the Defendants had with Wisconsin were [sic] for the express purpose of committing tortious acts." *Id.* In short, he was only alleging specific jurisdiction.

16. However, as noted, the Plaintiff is only *alleging* specific jurisdiction without proving it. He claims that Defendant Johnson made contact with various persons in Wisconsin allegedly defaming him but he provides no evidence of such contact.[5] He claims that Mr. Johnson solicited others to contact the management of the Plaintiff's apartment complex to defame the Plaintiff, but he presents no evidence supporting that claim. In fact, the allegations in the Complaint do not support that claim: the Plaintiff alleges (without evidence) in paragraph 26 of the FAC that Mr. Johnson posted the publicly available contact information of the management of Canticle and Juniper Courts on the Internet, but the Plaintiff does not quote any statement asking anyone to contact them and certainly doesn't quote any statement allegedly by

---

[5] This means that the Plaintiff's reliance on *Johnson Litho Graphics of Eau Claire Ltd. v. Sarver*, 2010AP1441 (Sept. 6, 2012)—more correctly cited as 344 Wis.2d 374, 824 N.W.2d 127 (2012)—is misplaced. *Johnson Litho* stands for the mundane proposition that if person outside of Wisconsin contracts with a Wisconsin company and places purchase orders with that company, that Wisconsin has personal jurisdiction in a contract dispute arising from such orders. In other words, if directed contact with Wisconsin gives rise to the cause of action, then specific personal jurisdiction is more likely to be appropriate. However, the Plaintiff has failed to show that either of these Defendants engaged in tortious conduct similarly directed toward Wisconsin.

9

Mr. Johnson asking anyone to defame the Plaintiff. As for Mrs. Palmer, in paragraph 22 of the Opposition the Plaintiff writes that "[t]he argument that Palmer's blog is not directed specifically at Plaintiff is belied by her own words," and then he quotes a number of alleged writings that have allegedly been published since this suit started. However, the Plaintiff has made absolutely no effort to authenticate such writings.

17. Indeed, the Plaintiff makes no effort to explain how he knows all of the alleged statements by Mrs. Palmer are about him. For instance, he claims—without evidence authenticating his claim—that Mrs. Palmer wrote the following on February 26, 2016: "Doesn't he realize that a lot of things that are pointed out are just to make the monkey dance? And boy did he ever!" There is nothing in that passage indicating that the Plaintiff is the "monkey" referred to, and the passive voice in the phrase "a lot of things that are pointed out" leaves the reader unclear who is pointing out these "things." Likewise, on April 8, 2016, Mrs. Palmer allegedly wrote: "Then why does he get so butthurt when people point and laugh at his VERY PUBLIC idiocy?" The Plaintiff makes no effort to establish that he is the "he" in that sentence. The same problem involving un-deciphered male pronouns plague other examples of passages allegedly written on February 8, 19 and 21, 2016.

18. More fundamentally, even if we assume every "he," "him," "his," and "monkey" in Mrs. Palmer's alleged pieces refers to the Plaintiff, that would not change the fact that these are on their face writings to the public at large. In other words, as Mrs. Palmer stated in her first Declaration "each of these writings was targeted to the world at large and not to an audience in a particular state. None of them were targeted toward Wisconsin." Docket # 12-1, ¶ 4. The Plaintiff has made allegations that her writing was targeted toward Wisconsin but he has presented no evidence supporting that claim.

19. Further, the Plaintiff relies greatly on *Calder v. Jones*, 465 U.S. 783 (1984), claiming the fact that he has been injured in Wisconsin is sufficient to confer personal jurisdiction. However, the Seventh Circuit has distinguished *Calder* in the context of the Internet as follows:

> A plaintiff cannot satisfy the *Calder* [*v. Jones*] standard simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website. See, *e.g., Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) ("We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another."); *Young v. New Haven Advocate*, 315 F.3d 256, 264 (4th Cir. 2002) (no express aiming where the defendant newspapers' only contacts with the forum state were through websites aimed at an out-of-state audience).

*Mobile Anesthesiologists Chicago, LLC. v. Anesthesia Assocs. of Houston Metroplex*, 623 F.3d 440, 446 (7th Cir. 2010). As noted previously, the Seventh Circuit relied on *Young* and its persuasive opinion.

20. *Young* bears a significant resemblance to the facts shown in this case. Like the instant Plaintiff, Stanley K. Young (a prison warden) claimed that out-of-state defendants had defamed him and caused him harm in his home state. Likewise,

> Warden Young argues that *Calder* requires a finding of jurisdiction in this case simply because the newspapers posted articles on their Internet websites that discussed the warden and his Virginia prison, and he would feel the effects of any libel in Virginia, where he lives and works.

However, in *Young* these facts were not sufficient to establish personal jurisdiction in Virginia, the *Young* court relying significantly on another persuasive Fourth Circuit opinion: *ALS Scan, Inc. v. Digital Service Consultants*, 293 F. 3d 707 (4th Circuit 2002).[6] In *ALS Scan*, the court

---

[6] The Fourth Circuit deals with a disproportionately high number of cases involving Internet activity because Virginia hosts a "mini Silicon Valley" and a disproportionate amount of Internet activity is routed through Northern Virginia. *See, e.g.,* Julian M. Weiss, *Mini-Silicon Valley*

11

stated that if a theory of personal jurisdiction like the instant Plaintiff's were adopted, "State jurisdiction over persons would be universal, and *notions of limited State sovereignty and personal jurisdiction would be eviscerated.*" *Id.* at 713 (emphasis added). The Plaintiff is essentially arguing that not only would a Wisconsin court have jurisdiction over every American, but over every person in the world. By this theory, a person from as far away as China could be haled into this Court at great expense and inconvenience if he or she says something on the Internet that the Plaintiff claims is defamatory. That view was rejected by the Fourth Circuit in *ALS Scan* and *Young,* and it was rejected by the Seventh Circuit in *Mobile Anesthesiologists Chicago, LLC.* cited *supra*. Under this controlling Seventh Circuit precedent, the Plaintiff has to produce evidence—and not merely allegations—of "express aiming" of the content at a Wisconsin audience. 623 F. 3d at 446. The Plaintiff has failed to meet this burden.

21. Therefore, having conceded that there is no basis for exercising general jurisdiction over these Defendants, and having failed to provide evidence of any tortious activity expressly aimed at Wisconsin, the proposed assertion of personal jurisdiction does not comply with the due process requirements of the Fourteenth Amendment. In other words, even if Wisconsin law would claim jurisdiction over these Defendants (and it doesn't), the Fourteenth Amendment would not allow it. Accordingly, this Court must dismiss this case for want of personal jurisdiction, in addition to the other reasons articulated in the original motion to dismiss, the supplemental motion to dismiss and this Reply.

---

*Sprouts on Fringe of Nation's Capital*, THE CHRISTIAN SCIENCE MONITOR, Jan. 12, 1983 (available at http://www.csmonitor.com/1983/0112/011238.html) and Ingrid Burrington, *Up to 70 Percent of Global Internet Traffic Goes Through Northern Virginia*, NEXTGOV, Jan. 8, 2016 (available at http://www.nextgov.com/big-data/2016/01/70-percent-global-internet-traffic-goes-through-northern-virginia/124976/).

# III.
# THE PLAINTIFF HAS ADMITTED EVERY FACT NECESSARY TO FIND THAT HE HAS FAILED TO EFFECT TIMELY AND PROPER SERVICE ON THESE DEFENDANTS UNDER RULE 4(M)

22. The Plaintiff has also admitted to every fact needed to show that the Plaintiff had never properly served these Defendants. As this Court will recall, the first declarations of Mrs. Palmer and Mr. Johnson (Docket Numbers 12-1 and 12-2 respectively), combined with their most recent declarations (Docket Numbers 40-10 and 40-11 respectively), establish that the Plaintiff only attempted service once and that the Plaintiff failed to make proper service because he failed to serve a copy of the original complaint—the only complaint operative at the time. In paragraph 2 of his Opposition, the Plaintiff admits that this was true, writing: "Plaintiff paid for process servers who served the Defendants with the First Amended Complaint (FAC) and Summons." The Plaintiff offers excuses (Opposition at ¶ 24), but no valid reason for his continuing failure to serve the Defendants and, therefore, Fed. R. Civ. P. 4(m) provides an additional reason to dismiss this case.

# IV.
# THE PLAINTIFF SHOULD NOT BE ALLOWED TO AMEND HIS COMPLAINT AGAINST THESE DEFENDANTS

23. The Plaintiff should not be allowed to amend the complaint with respect to these Defendants for two reasons.

24. First, it would be futile to do so. *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993) (holding that a court can deny leave to amend when it is futile). As demonstrated in the previous pages, the Plaintiff has had an opportunity to show that this Court has personal jurisdiction over these Defendants, and the Plaintiff has failed utterly to do so. A new set of allegations against these Defendants is not going to solve that basic failure of proof, and he is not entitled to another opportunity to prove this Court has jurisdiction.

13

Case 2:15-cv-01516-NJ   Filed 05/04/16   Page 13 of 16   Document 44

25. Second, it would not be in the interests of justice under Fed. R. Civ. P. 15(a)(2) and would amount to undue prejudice to these Defendants under *Foman v. Davis*, 371 U.S. 178, 182 (1962). This is not the first time this Plaintiff has sued these two Defendants: he has been doing so, on and off, for about three years. Specifically, he first sued Mr. Johnson in Howard County, Maryland, Circuit Court (*Schmalfeldt v. Hoge, et al.*, Case No. 13-C-15-102498 (Md. Cir. Ct. Howard Co. 2013)). Then he sued Mr. Johnson again in the U.S. District Court for the District of Maryland in *Schmalfeldt v. Johnson, et al.*, Case No. 15-CV-00315-RDB (D. Md. 2015). Finally, he sued Mrs. Palmer under her pseudonym in *Schmalfeldt v. Grady, et al.*, Case No. 15-CV-01241-RDB (D. Md. 2015), just before initiating the current suit. These Defendants have prevailed in each case. Meanwhile, this Court has had to deal with the Plaintiff's instant frivolous suit for about five months. At some point, litigation has to come to an end.

26. Further, the problems with the FAC do not amount to mere "amateur mistakes" as the Plaintiff suggests in paragraph 5 of his Opposition. Rather, the alleged statements about the Plaintiff are not defamatory because they are true, substantially true, or Constitutionally protected opinions. Further, the Plaintiff has not disputed that Mrs. Palmer's alleged use of his name or likeness is incidental to news, satire and commentary about him that is protected expression. That's not a technicality or an amateur mistake: that means that these Defendants are being haled into this Court for engaging in speech protected by the First Amendment. Therefore, every day this case continues is an injustice against them, and justice requires that his litigation end as swiftly as possible, and with prejudice.

## CONCLUSION

27. In the end, the Plaintiff is suing Defendants Johnson and Palmer for Constitutionally protected expression, and, therefore, this is a case that should have never been

brought in the first place. The Plaintiff has not disputed that he has failed to state a claim upon which relief can be granted. Indeed, he has failed to dispute that the alleged statements by the Defendants that appear to be about him are either true, substantially true, or Constitutionally protected opinion. Further, he has failed to show that this Court has either subject matter jurisdiction or personal jurisdiction. Likewise, he has admitted to essential facts that show that he has failed to provide proper service of process on a timely basis. Accordingly, these Defendants ask this Court to dismiss this matter, with prejudice, not only for jurisdictional reasons or failure of service of process, but also (reasoning in the alternative) because the Plaintiff has failed to state a claim upon which relief can be granted. Then, this litigation can definitively end, and the Plaintiff will learn that the next time he brings suit, he must travel to the Defendants' jurisdictions.

28. Finally, upon dismissal, the Defendants wish to seek sanctions including a vexatious litigant designation to prevent the next frivolous suit, attorneys' fees under various Wisconsin statutes and Fed. R. Civ. P. 11, and any other relief that this Court deems just and equitable.

Wednesday, May 4, 2016   Respectfully submitted,

    s/ *Aaron J. Walker*
Aaron J. Walker, Esq.
*Attorney for Defendants Johnson and Palmer*
Va Bar# 48882
DC Bar #481668
P.O. Box 3075
Manassas, Virginia  20108
(703) 216-0455`
(No fax)
AaronJW1972@gmail.com

15

## CIVIL L. R. 7(A)(2) CERTIFICATION

In compliance with Civil L. R. 7(a)(2), I certify that no separate supporting memorandum or other supporting papers will be filed in relation to this Reply.

## CERTIFICATE OF SERVICE

I certify that on Wednesday, May 4, 2016, I served copies of this document on William Schmalfeldt by email by his consent.

s/ *Aaron J. Walker*