UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIAM M. SCHMALFELDT,

    **Plaintiff,**

    v.                                                  Case No. 15-CV-1516

ERIC P. JOHNSON, SARAH PALMER,
and JOHN AND JANE DOES,

    **Defendants.**

---

### DECISION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

---

This diversity lawsuit arises out of a long-standing internet feud between the parties. The plaintiff, William M. Schmalfeldt, alleges that the defendants have engaged in a campaign of harassment against him primarily orchestrated over the internet. Specifically, he raises claims of libel *per se*, false light invasion of privacy, and misappropriation of name and likeness against defendants Sarah Palmer and Eric P. Johnson, as well as John and Jane Does. (Docket # 6.)

The defendants' have moved to dismiss on a number of grounds. (Docket # 11 and # 39.) For the reasons explained below, the case will be dismissed for lack of personal jurisdiction.

### BACKGROUND

Plaintiff William Schmalfeldt is a resident of the State of Wisconsin. (First Am. Compl., Docket # 6 at ¶ 1.) Defendant Eric Johnson is a resident of the State of Tennessee (*id.* at ¶ 2), and defendant Sarah Palmer is a resident of the State of North Carolina (*id.* at ¶ 3). Schmalfeldt pleads that he is involved in a long-standing dispute with several of the

members of what he calls "a cult of right wing bloggers." (*Id.* at ¶ 7.) He claims that the dispute began when he wrote a series of articles defending a man who had previously been convicted of serious crimes, whom the "cult" was trying to "put back in jail." (*Id.*) The group grew larger (*id.* at ¶ 8), and became enraged when Schmalfeldt began to use "publicly available information to identify" them (*id.* at ¶ 9). Thereafter, Schmalfeldt alleges that they "turned their attention to ruining [his] life." (*Id.*) He further alleges that the bloggers targeted his late wife and filed "nearly 400 criminal charges against [him] in Carroll County, Maryland." (*Id.* at ¶ 10.) When he moved from Maryland to Wisconsin in August 2015, Schmalfeldt alleges that the bloggers adopted a tactic of contacting him and then filing for a restraining order when he responded, claiming that Schmalfeldt had contacted them without their permission. (*Id.* at ¶ 11.) Schmalfeldt also alleges that another tactic employed by these bloggers was to "portray [him] as a child pornographer," based on three self-produced audio comedy bits that he voiced and recorded in 2013. (*Id.* at ¶ 14.) Johnson made several written and telephone contacts with the managements of the apartment complex where Schmalfeldt lives "to 'warn' them about the 'child pornographer' in their midst." (*Id.* at ¶ 15.) Schmalfeldt alleges that Johnson also posted the names, home addresses, phone numbers, and email addresses of the board members of the management group that manages the property where he lives. (*Id.* at ¶ 16.)

*Libel Per Se*

In support of his claim for libel *per se* against all defendants (Johnson, Palmer, and John and Jane Does), Schmalfeldt begins with allegations that Johnson "made several online comments on the blogs of other people in which he accused [Schmalfeldt] of the manufacture and sale of child pornography." (*Id.* at ¶ 21.) Schmalfeldt lists various specific

incidences from September, October, and November 2015 that he believes were instances of Johnson committing libel against him, from accusing him of "boy scout rape fantasies" and threatening to send the information both to Vanderbilt University (where Schmalfeldt participated in a study) and the management of his apartment complex (*id.* at ¶ 22); made allegations on a blog post concerning, among other things, allegations of Schmalfeldt describing the sex acts of his own daughter, filing false charges, committing perjury, admitting to using illegal drugs with his stepson, and deleting thousands of pages of evidence to avoid prosecution and civil suits (*id.* at ¶ 25). Schmalfeldt alleges that on November 2, 2015, Johnson posted on Palmer's blog a list of the names, addresses, phone numbers, and email addresses of the board members of the management group that manages his apartment complex. (*Id.* at ¶ 26.) Johnson also forwarded Schmalfeldt's tweets to the management group in early 2016. (*Id.* at ¶ 27.)

As to Palmer, Schmalfeldt's allegations concern Palmer's blog, which Schmalfeldt states is "a blog completely devoted to [Schmalfeldt's] personal destruction." (*Id.* at ¶ 29.) Palmer claims to use Schmalfeldt's own words, and Schmalfeldt alleges that "[w]hat she does not tell her readers is that she takes the words out of context and twists them to fit her mold." (*Id.*) Schmalfeldt alleges that Palmer wrote a blog post on January 16, 2016, in which she stated, in short, that if Schmalfeldt wanted to blame the "cult" for his wife's death, he needed to take responsibility as well, stating his wife begged him to stop harassing "[redacted]." (*Id.* at ¶ 29.)[1] Schmalfeldt alleges that his wife "never 'begged' [him] to 'stop harassing' anyone." (*Id.* at ¶ 30.) Schmalfeldt also references a December 2015 blog post in which Palmer admitted that she takes his words out of context "to make them more

---

[1] Schmalfeldt has two paragraphs numbered 29 in his amended complaint. This citation refers to the second paragraph 29.

entertaining to her readership." (*Id.* at ¶ 30.)[2] Finally, Schmalfeldt alleges that "[b]ecause of the actions of these named defendants and others, Plaintiff's online reputation has been permanently scarred." (*Id.* at ¶ 31.)

*Misappropriation of Name and Likeness*

Schmalfeldt's misappropriation of name and likeness claim centers around defendant Palmer's blog, which is titled using his name. (*Id.* at ¶ 43.) He also alleges that she "uses multiple copyrighted images of [him] on her blog," which she has altered to "further defame" him. (*Id.* at ¶ 44.) Schmalfeldt alleges that Palmer's blog has a prominent donations button. (*Id.* at ¶ 45.)

*False Light Invasion of Privacy*

The general basis for Schmalfeldt's false light invasion of privacy claim concerns several audio recordings of "three comedy sketches." (*Id.* at ¶ 35.) According to the complaint, Johnson has "publicly label[ed] Plaintiff as a child pornographer" based on these recordings. (*Id.* at ¶ 34.) (This allegation also appears to relate to Johnson's alleged contact with the management company for Schmalfeldt's apartment building.) Additionally, Schmalfeldt alleges that Palmer's website "defines [him] as 'the fevered ravings of lying, cry-bully Bill Schmalfeldt,'" and he denies he is any of those things. (*Id.* at ¶ 37.)[3] Schmalfeldt further alleges that Palmer filed for restraining orders in places she knows he will have trouble getting to. (*Id.* at ¶ 38.)

---

[2] There are also two paragraphs numbered 30 in Schmalfeldt's amended complaint. This citation is to the second paragraph numbered 30.
[3] There are two paragraphs numbered 37, and this citation refers to the second paragraph numbered 37.

4

## ANALYSIS

In their motion to dismiss, Johnson and Palmer argue that the case should be dismissed on several different grounds: for lack of subject matter jurisdiction; for lack of personal jurisdiction; for insufficient service of process; and for failure to state a claim upon which relief can be granted. Because I find that this Court lacks personal jurisdiction over the defendants, I will address only that issue.

As a preliminary matter, only the libel *per se* and misappropriation of likeness claims are considered here. Schmalfeldt's false light invasion of privacy claim is not a claim Wisconsin recognizes. While Wisconsin does recognize "invasion of privacy" as a tort, *see* Wis. Stat. § 995.50, it does not recognize a "false light invasion of privacy claim." *Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 929, 440 N.W.2d 548, 555 (1989) (noting that the invasion of privacy tort statute "does not provide a cause of action for placing a person in a false light in the public eye"); *see also Ladd v. Uecker*, 2010 WI App 28, ¶ 5, 323 Wis. 2d 798, 804, 780 N.W.2d 216, 218 (noting that the appellant acknowledged in her brief "that Wisconsin does not recognize 'false light invasion of privacy'").

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the burden of proof rests on the party asserting jurisdiction to make a *prima facie* showing supporting that assertion. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In deciding the dismissal motion, the court must accept as true all well-pleaded facts alleged in the complaint and also resolve in plaintiff's favor all disputes concerning relevant facts presented in the record. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

In diversity cases, a federal district court has personal jurisdiction over a party if a court of the state in which it sits would have such jurisdiction. *Heritage House Restaurants, Inc. v. Continental Funding Grp., Inc.*, 906 F.2d 276, 279 (7th Cir. 1990). In Wisconsin, this is a two-pronged inquiry. The first prong requires a court to determine whether the defendant falls within the grasp of Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Logan Products, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). The Wisconsin Supreme Court has determined that the long-arm statute "is to be liberally construed in favor of the exercise of jurisdiction." *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 391 (7th Cir. 1994) (citing *Schroeder v. Raich*, 89 Wis. 2d 588, 593, 278 N .W.2d 871 (1979)). The second inquiry requires a court to consider whether the exercise of jurisdiction over the defendant comports with the due process requirements of the Fourteenth Amendment of the United States Constitution. *Logan Products*, 103 F.3d at 52.

I will begin with the first inquiry. Wisconsin's long-arm statute contemplates that personal jurisdiction can be either general or specific. *Rasmussen v. General Motors Corp.*, 2011 WI 52, ¶ 15, 335 Wis. 2d 1, 803 N.W.2d 623. If a plaintiff can establish general jurisdiction over a nonresident defendant under Wis. Stat. § 801.05(1), "the defendant may be brought before Wisconsin courts for claims that are unrelated to the defendant's activities in Wisconsin." *Id.* Specific jurisdiction is more limited, and "the claim for relief for which personal jurisdiction is sought must be substantially connected to or arise out of the defendant's contacts with Wisconsin." *Id.* at ¶ 15. Here, Schmalfeldt contends that this court has specific jurisdiction under Wis. Stats. § 801.05(2) and § 801.05(4)(a).

Section 801.05(2) confers jurisdiction in "any action which may be brought under statutes of this state that specifically confer grounds for personal jurisdiction over the

defendant." Section 801.05(4)(a) provides that the court has personal jurisdiction "[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury . . . [s]olicitation or service activities were carried on within this state by or on behalf of the defendant." Schmalfeldt has not identified, and I have not found, any indication that his actions for libel and misappropriation of name or likeness authorize specific jurisdiction. Accordingly, Section 801.05(2) does not apply.

As to Section 801.05(4)(a), it confers jurisdiction when an injury occurs in this state because of a foreign action and "at the time of the injury . . . [s]olicitation or service activities were carried on within this state by or on behalf of the defendant." To implicate this section, Schmalfeldt "must show three jurisdictional facts: (1) an act committed outside the state by the defendant, (2) an injury to person or property within the state which is claimed to arise out of the foreign act, and (3) some additional contact such as solicitation activities [or service activities] carried out by the defendant which link the defendant to the state." *Knot Just Beads v. Knot Just Beads, Inc.*, 217 F. Supp. 2d 932, 934 (E.D. Wis. 2002). Assuming for purposes of this inquiry that Schmafeltd has met the first two factors, he fails on the third factor.

"In order for solicitation activities in Wisconsin to trigger personal jurisdiction, the solicitor must anticipate receiving a financial benefit from the solicitation." *Id.* (citing *Schimpf v. Gerald Inc.*, 2 F. Supp. 2d 1150, 1162 (E.D. Wis. 1998) (citing *Pavlic v. Woodrum*, 169 Wis. 2d 585, 592, 486 N.W.2d 533 (Ct. App. 1992)). As the *Knot Just Beads* court explained, the Wisconsin Supreme Court quoted with approval the following language from *Tilley v. Keller Truck & Implement Corp.*, 200 Kan. 641, 438 P.2d 128, 133–34 (1968), when

discussing the rationale behind exercising jurisdiction over those who solicit or provide service activities in Wisconsin:

> If the defendant advertises, solicits, or sells its product in the forum state it then has or can anticipate some direct or indirect financial benefit from the sale, trade, use or servicing of its products in the forum state. It is then subject to in personam jurisdiction. The particular product or service causing the injury need not be sold or performed in the forum state but the defendant must reasonably have or anticipate financial benefit from the sale, trade, use or servicing on its products in the foreign state.

Schmalfeldt has not alleged any facts that suggest that either Johnson or Palmer have engaged in solicitation or service activities in Wisconsin. Johnson's alleged contacts with Wisconsin include telephone calls and emails; Palmer's is a blog about Schmalfeldt. Section 801.05(4)(a), therefore, does not confer specific jurisdiction over the defendants.

Even if a provision of Wisconsin's long-arm statute applied, exercising jurisdiction over the defendants would violate due process. In determining whether exercising jurisdiction comports with due process, there are three essential requirements in this analysis: (1) the defendant must have purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); (2) the alleged injury must have arisen from the defendant's forum-related activities, *id.*; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The crucial inquiry is whether a defendant's contacts with the state are such that he should reasonably anticipate being haled into court. *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002).

Schmalfeldt relies on *Calder v. Jones*, 465 U.S. 783 (1984), a case in which the Supreme Court found that California had personal jurisdiction over a Florida-based newspaper when it was sued for committing libel against the plaintiff, to support his position that because Palmer and Johnson intended to cause a "tortious injury" in Wisconsin, Wisconsin has jurisdiction over the defendants. However, in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), the Supreme Court explained that it was more than just a defendant's intent to commit a tort against someone in a foreign jurisdiction that conferred jurisdiction. In *Walden*, the Supreme Court found that Nevada could not exercise jurisdiction over a defendant from Georgia based merely on the defendant's knowledge that his affidavit would cause harm to two plaintiffs in Nevada. *Id.* at 1125–26. As such, *Walden* reinforced the principle that the connections sufficient to establish personal jurisdiction must be to the forum, not to the injured plaintiff. The Court explained, "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Id.* at 1123–24. Thus, in *Walden*, "the Supreme Court rejected [the] theory" suggested in *Calder* "that, if a defendant knows that its intentional acts will cause effects in a state, then that state can exercise jurisdiction over the defendant." *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 Fed. Appx. 406, 408 (6th Cir. 2015).

Under this framework, it is clear that exercising personal jurisdiction over Palmer would be incongruous with due process. It is not enough that Palmer knew, or should have known, that her blog would cause injury in Wisconsin, and Schmalfeldt has alleged no other connection to or contact with Wisconsin. I also note that the Seventh Circuit has not adopted a special due process test for internet cases. "We have faced that problem on several occasions . . . and thus far it has appeared to use 'that the traditional due process inquiry [ ]

9
Case 2:15-cv-01516-NJ   Filed 07/01/16   Page 9 of 12   Document 47

is not so difficult to apply in cases involving internet contacts that courts need some sort of easier-to-apply categorical test.'" *Advanced Tactical Ordinancy Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (quoting *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 759 (7th Cir. 2010) (internal string citation omitted)). Moreover, the Seventh Circuit has added that courts should be cautious "in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citation omitted). "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, *but does not target*, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *Id.* at 559 (emphasis in original); *see also Salfinger v. Fairfax Media Ltd.*, 2016 WI App 17, 367 Wis. 2d 311, 876 N.W.2d 160 (determining that state courts do not have personal jurisdiction over a website that does not "target" the forum state).

As to defendant Johnson, he falls somewhere between the defendants in *Calder* and *Walden*. He, according to the complaint, made "several written and telephone[] contacts with the management of the apartment complex where Plaintiff dwells to 'warn' them about the 'child pornographer' in their midst" (Am. Compl., Docket # 6 at ¶ 15) and "also posted the names, home addresses, phone numbers and email addresses of the board members" of the management company that manages that property for the Catholic Sisters of Saint Francis of Assisi (*id.* at ¶ 16). He has done more than the defendants in *Walden*, whose only actions that could possibly be construed as targeting the forum was writing a false affidavit, but it does not rise to the level of the defendant in *Calder*, who distributed a widely-read

10

Case 2:15-cv-01516-NJ   Filed 07/01/16   Page 10 of 12   Document 47

newspaper in the forum state and also depended on people and information in the forum state to write the story itself.

"Emails and calls directed at the forum state can be meaningful enough to create personal jurisdiction," *United Airlines, Inc. v. Zaman*, No. 14 C 9214, 2015 WL 2011720, at *8 (N.D. Ill. Apr. 30, 2015) (citing *Walden*, 134 S. Ct. at 1122). However, Johnson's contact is not such meaningful contact. Several phone calls and emails to Schmalfeldt's apartment complex's management company are not substantial enough to permit a Wisconsin court to exercise jurisdiction over Johnson. For example, In *Bushelman v. Bushelman*, 2001 WI App 124, 246 Wis. 2d 317, 629 N.W.2d 795, the Wisconsin Court of Appeals found that due process would be violated by exercising jurisdiction over an out-of-state party to a divorce action, even though he made child support payments to Wisconsin as well telephone calls and sent letters to his children in Wisconsin. Johnson's contacts hardly compare to the out-of-state party's in *Bushelman*.

In determining whether exercising jurisdiction comports with due process, the Supreme Court has placed much emphasis on foreseeability. *Purdue Research Found.*, 338 F.3d at 781 (internal citations omitted). The defendant must "purposefully avail" itself to a particular jurisdiction, ensuring "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contact." *Burger King*, 471 U.S. at 475 (internal citations omitted). Though Johnson's contact with Wisconsin was not random, the nature and quality of the contact does not rise to the level of satisfying the requirement that being sued in Wisconsin should have been foreseeable to Johnson.

In sum, exercising jurisdiction over Palmer and Johnson would not comport with due process. Schmalfeldt has not shown that, with respect to the incident at issue, either

11

Case 2:15-cv-01516-NJ   Filed 07/01/16   Page 11 of 12   Document 47

Palmer or Johnson would have foreseen or been given fair warning that they could and would be sued in Wisconsin in relation to incidents underlying this lawsuit. Because I find that exercising jurisdiction would not comport with due process, I need not consider the remainder of the defendant's arguments for dismissal.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motions to dismiss for lack of personal jurisdiction (Docket # 11, 39) are **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 1st day of July, 2016.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge